Thomas M. Dempsey
Cal. Bar No. 43311
THE LAW OFFICES OF THOMAS M. DEMPSEY
433 N Camden Dr, Ste 370
Beverly Hills, CA 90210
Tel: 310-385-9600
Fax: 310-273-7679
tdempseylaw@aol.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLY LEMMON AND MICHAEL MORBY, as surviving parents of Hunter Morby (deceased); MICHAEL MORBY, as administrator of the estate of Hunter Morby (deceased); SAMANTHA AND MARLO BROWN, as surviving parents of Landen Brown (deceased); and MARLO BROWN, as the administrator of the estate of Landen Brown,<br><br>　　　　Plaintiffs,<br>　　vs.<br><br>SNAP, INC. (doing business in California as Snapchat, Inc.),<br><br>　　　　Defendant | Case No.: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## Introduction

1. This is a civil action for wrongful death, personal injury, and other damages arising out a car wreck that occurred on Cranberry Road in Walworth County, Wisconsin on May 28, 2017, in which Snapchat was a critical cause of the wreck.

## Parties, Jurisdiction, and Venue

2. Carly Lemmon and Michael Morby are residents of the State of Wisconsin and the parents of Hunter Morby, a deceased passenger in the wreck. They assert claims for wrongful death as the surviving parents of Hunter Morby, and Michael Morby also asserts, as administrator of the estate, claims for his son's personal injuries.

3. Samantha Brown and Marlo Brown are residents of the State of Wisconsin and were parents of Landen Brown, a deceased passenger in the wreck. They assert claims for wrongful death as the surviving parents of Landen Brown, and Marlo Brown also asserts, as administrator of the estate, claims for his son's personal injuries.

4. Snap, Inc. (doing business in California as Snapchat, Inc.) created, distributed, and maintains mobile technology products and services that were a critical cause of the automobile wreck.

5. Snap, Inc. is a United States corporation located at 63 Market Street, Venice, California. Snap, Inc. may be served through its California registered agent Corporation Service Company (doing business in California as CSC – Lawyers Incorporating Service) at 2710 Gateway Oaks Dr Ste 150N, Sacramento, CA 95833.

COMPLAINT - 2

6. This Court has diversity jurisdiction because the parties have diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 (a)(1).

7. Venue is proper in this Court because Snap, Inc. resides in this district. Alternatively or additionally, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Factual Allegations

8. **General Background.** Snap is a social media company that supplies consumers with products focused on mobile photos and videos. Snap's products allow users to create, upload, post, send, receive, share, and store digital content. Snap's primary social media product is its mobile application, Snapchat, which in turn has numerous products and features contained within it.

9. Once downloaded, Snapchat continues to download and install upgrades, updates, or other new features directly to its users.

10. Snapchat users also grant Snap and its business partners the unrestricted, worldwide, perpetual right and license to use their name, likeness, and voice.

11. For some time before May 28, 2017, Snap created and distributed, within the Snapchat app, a feature that allows users to record their real-life speed, including as a driver or passenger, and overlay that speed onto a mobile photo or video.

12. Snapchat users can then share, on social media, that mobile photo or video with their real-life speed as a "Snap," which is Snapchat's messaging product.

13. Snap rewards, in unknown, variable, and changing ways, users who consume Snapchat in excessive and dangerous ways. Such rewards include trophies, streaks, and social recognition. Snap knows or should know that its design has created extreme and addictive behaviors by its largely teenage and young-adult users. Indeed, Snap purposefully designed its products to encourage such behaviors.[1]

14. On or before May 28, 2017, Snap knew or should have known that it was motivating, incentivizing, or otherwise encouraging its users to drive at excessive, dangerous speeds in violation of traffic and safety laws.

15. Specifically, Snap knew or should have known that, prior to May 28, 2017, that many of its users have been driving, or were passengers in, cars at speeds of 100 MPH or more because they want to use the Snapchat to capture a mobile photo or video showing them hitting 100 MPH and then share the Snap with their friends.

16. This is a game for Snap and many of its users, the vast majority of whom are teenagers and young adults. Go as fast as you can until you hit 100 MPH, Snap a photo or video, and then share the 100-MPH-Snap on Snapchat. As Snapchat knows or should

---

[1] *See, e.g.*, http://www.detroitbadboys.com/2014/12/8/7355721/andre-drummond-snapchat-speeding; http://www.businessinsider.com/snapchat-score-perfect-example-of-what-ex-googler-calls-unethical-app-design-2016-5; http://www.washingtonpost.com/sf/style/2016/05/25/13-right-now-this-is-what-its-like-to-grow-up-in-the-age-of-likes-lols-and-longing/; https://medium.com/startup-grind/nir-eyal-why-you-are-addicted-to-facebook-slack-pinterest-468a86eb562; https://www.vice.com/en_us/article/vv5jkb/the-secret-ways-social-media-is-built-for-addiction; http://time.com/4049026/snapchat-live-stories/

have known, its users were putting themselves and others in harm's way in order to "capture a Snap."[2]

17.  Regardless of whether Snap intended to encourage dangerous speeding , Snap knew or should have known that it was, in fact, encouraging dangerous speeding, either by users while drivers or passengers, and that it was reasonably foreseeable that Snapchat would continue to motivate dangerous speeding. In other words, Snap did realize or should have realized that it was affecting the driving behavior of teenagers and young adults and was creating an unreasonable risk of harm to its users and the public.

18.  There are many examples of why Snap did realize or should have realized that it was affecting the driving behavior of its users and was creating an unreasonable risk of harm to its users and the public. Four such examples including the following. [3]

19.  **Online Petitions**. Before September 2015, a petition on www.change.org called on Snapchat to address its role in encouraging dangerous speeding

20.  **September 2015 Georgia Incident**. On September 10, 2015, Wentworth Maynard was catastrophically injured in Clayton County, Georgia in a motor vehicle

---

[2] *See, e.g.*, http://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/; http://www.youthforroadsafety.org/news-blog/news-blog-item/t/snapchat-and-driving-hellip-you-could-be-sending-your-last-snap; http://www.kmov.com/story/31407255/snapchat-video-possibly-linked-to-deadly-kansas-city-wreck; https://support.snapchat.com/en-US/a/filters; http://distracteddriveraccidents.com/the-most-dangerous-app-on-your-phone/

[3] This merely an illustrative example. Plaintiffs are not required to, nor do they assume the obligation to, plead *evidence* of Snapchat's actual or constructive knowledge.

collision involving Snapchat.

21. At or around 10:15 PM on September 10, 2015, Christal McGee was driving a white Mercedes Benz on Tara Boulevard in Clayton County, Georgia with Heather Leigh McCarty, Kaylan Henderson, and Henry Daryl Williams riding as passengers.

22. McGee pushed the speed of her Mercedes to above 100 miles per hour.

23. According to an affidavit from Heather McCarty, when McCarty realized they were accelerating at a rapid speed, she asked McGee to slow down. McGee responded that "she was just trying to get the car to 100 m.p.h. to post it on Snapchat. She said 'I'm about to post it.'"

24. While McGee was driving at dangerous speeds, a grey Mitsubishi Outlander, driven by Wentworth Maynard, entered Tara Boulevard going the same direction that McGee was heading at dangerous speeds.

25. Because she was driving at a dangerous speed, McGee either did not realize or could not react to the fact that the Mitsubishi had entered the road.

26. McGee's Mercedes then collided with a Mitsubishi Outlander driven by Wentworth Maynard.

27. In a lawsuit filed by Maynard against McGee and Snap, Maynard alleges that McGee wanted to share a Snap showing how fast she was driving, and she was driving at excessive speeds because of Snapchat.

28. Maynard claims Snapchat facilitated McGee's excessive speeding, including

that McGee was motivated to drive at an excessive speed to obtain recognition and to share her experience through Snapchat.

29. McGee was going approximately 107 MPH at impact with Maynard's car:

30. As a result of the collision Mr. Maynard has a permanent brain damage.

31. The Maynards have contended that the compulsive effect Snapchat had on McGee was so strong that, after the crash with the Maynards, McGee's first impulse was to Snap and share a photo of herself, which she captioned "Lucky to be alive."

32. **December 2015 Pennsylvania Incident.** In December 2015, news reports document that three young women near Philadelphia, Pennsylvania were encouraged by Snapchat to drive at excessive speeds, and as a result, they crashed into a parked tractor-trailer, and all three died.

33. The news report "examines a popular smart phone app that may have played a role in a deadly car crash. It's called Snapchat, and the victim's families say it was being used the night three young lives ended in December in a fiery Philadelphia car crash."[4]

34. "A witness on the scene said he could hear people screaming from inside the car, but he couldn't get to the vehicle due to the flames."[5]

35. **October 2016 Florida Incident**. In October of 2016, new reports document

---

[4] https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/
[5] *Id.*

that two young people were driving a Volkswagen near Tampa, Florida and using Snapchat. The couple tracked their speed to over 115 m.p.h. The couple lost control of their car and hit a minivan, filled with a family coming home from church. The van burst into flames. Five people died as a result of that wreck.

36. The incident "added fuel to criticism leveled at SnapChat." "'It incentivizes somebody to do something they know is not safe, but they do it anyway for the sake of the picture or video.'" "'It's just instigating the user to get up to a dangerous speed and then post it online.'"[6]

37. **Hunter Morby and Landon Brown's Death in May 2017**. Despite its knowledge, Snapchat chose not to properly address the dangers it created.

38. Shortly before 7 PM local time, on May 28, 2017, seventeen-year-old Jason Davis was driving on Cranberry Road in Walworth County, Wisconsin.

39. Hunter Morby and Landen Brown were passengers in the vehicle, with Landen sitting in the front passenger seat, and Hunter in the back.

40. Prior to the wreck at issue in this case, one or more of the boys had downloaded the Snapchat app to their mobile phones.

41. At some point before wreck, twenty-year-old Landen Brown opened his Snapchat app.

---

[6] https://www.tampabay.com/news/publicsafety/accidents/snapchat-video-appears-to-show-driver-going-115-mph-on-night-of-crash-that/2300400

42. Snapchat encouraged and facilitated the boys' excessive speeding.

43. They were motivated to drive at excessive speeds in order to obtain recognition and to share their speed through Snapchat.

44. Shortly before 7 PM on May 28, 2017, the car began accelerating to a speed significantly above of the speed limit.

45. One "Snap" captured the boys' speed at 123 miles per hour. They were driving at excessive speeds as motivated and encouraged by Snapchat.

46. Driving at an excessive speed, the car ran off the road and crashed into a tree. The car burst into flames, and all three boys were killed.

47. The collision and the resulting fire were so severe, the victims had to be identified by dental records.

48. Walworth County Sheriff investigators estimated speed of the vehicle was 113 miles per hour at the time of the crash.

49. On and before May 28, 2017, Snap knew or should have known that certain users, particularly teenagers and young adults, were driving at excessive speeds, as motivated by Snapchat, and creating an unnecessary danger of physical harm and death.

50. On and before May 28, 2017, Snap knew or should have known that wrecks had occurred due to the fact that Snapchat was encouraging dangerous speeding.

51. Despite Snap's knowledge of the danger of its product in encouraging driving at excessive speeds, Snap did not remove or restrict access to Snapchat such as

while traveling at dangerous speeds or otherwise properly address the danger it created.

52. Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent given the probability and seriousness of the danger of excessive speeding, the limited or non-existent usefulness of using Snapchat to capture driving at dangerous and illegal speeds, and the limited or non-existent burden on Snapchat to eliminate the risks.

53. Furthermore, given Snap's actual or constructive knowledge of the danger and the probability and seriousness of the danger, Snap's disclaimers – are inadequate, unreasonable, and knowingly ineffective.

## **Count 1 – Plaintiffs' Negligence Claims**

54. Plaintiffs incorporate the Factual Allegations by reference and in support of count one, their claim of negligence.

55. Snap owed a duty to use ordinary care in designing, maintaining, and distributing its products and services.

56. Snap breached that duty because, among other things, it did not remove, abolish, restrict access to, or otherwise use reasonable care to address the danger of dangerous speeding created by Snapchat. Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent, and its disclaimers are also inadequate, unreasonable, and knowingly ineffective.

57. As a result of Snap's negligence, Landen Brown and Hunter Morby were

killed and suffered personal injuries prior to their deaths.

58. Snap's acts render it liable to the Plaintiffs.

### Count 2 – Plaintiffs' Punitive Damages Claim

59. Plaintiffs incorporate the Factual Allegations and Count One by reference and in support of count two, their claim for punitive damages.

60. Because of Snap's willful misconduct, wantonness, or entire want of care raising the presumption of conscious indifference to the consequences, Plaintiffs ask that the jury award them punitive damages in order to penalize, punish, or deter Snap.

61. In particular, Snap's actual knowledge of prior dangerous wrecks and other knowledge of the danger is evidence of justifying an award of punitive damages.

### Request for Relief

62. Plaintiffs request the following relief:

   a) That process issue and Snap be served in accordance with law;

   b) That they be awarded a judgment against Snap, for the wrongful death of Landen Brown and Hunter Morby, for their personal injuries, and for any other compensatory damages in an amount determined by the enlightened conscience of a fair and impartial jury;

   c) That they have a trial by jury;

   d) That they be awarded punitive damages in an amount determined by the enlightened conscience of a fair and impartial jury; and

e) That they be granted such other and further relief as this Court may deem just and proper and as they are entitled to under the law.

### Demand for Jury Trial

63. Plaintiffs reiterate their demand for a jury trial on all issues so triable.

Dated: May 24, 2019

**/s/ Thomas M. Dempsey**

Thomas M. Dempsey
Cal. Bar No. 43311
THE LAW OFFICES OF THOMAS M. DEMPSEY
433 N Camden Dr, Ste 370
Beverly Hills, CA 90210
Tel: 310-385-9600
Fax: 310-273-7679
tdempseylaw@aol.com
Attorney for Plaintiffs

Daniel E. Selarz
Cal. Bar No. 287555
SELARZ LAW CORP.
11777 San Vicente Blvd, Ste 702
Los Angeles, CA 90049
Tel: 310-651-8685
Fax: 310-651-8681
dselarz@selarzlaw.com
Attorney for Plaintiffs