Thomas M. Dempsey (Cal. Bar No. 43311)
tdempseylaw@aol.com
THE LAW OFFICES OF THOMAS M. DEMPSEY
433 N Camden Dr, Ste 370
Beverly Hills, CA 90210
Tel: 310-385-9600
Fax: 310-273-7679

Naveen Ramachandrappa (Ga. Bar No. 422036)
*pro hac admitted*
ramachandrappa@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

Michael L. Neff (Ga. Bar No. 537180)
*pro hac admitted*
D. Dwayne Adams (Ga. Bar. No. 140406)
*pro hac admitted*
LAW OFFICE OF MICHAEL LAWSON NEFF PC
3455 Peachtree Rd NE, Ste 509
Atlanta, GA 30326
Tel: 404-531-9700
Fax: 404-531-9727

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLY LEMMON AND MICHAEL MORBY, as surviving parents of Hunter Morby (deceased); MICHAEL MORBY, as administrator of the estate of Hunter Morby (deceased); SAMANTHA AND MARLO BROWN, as surviving parents of Landen Brown (deceased), <br><br>     Plaintiffs, <br><br>   v. <br><br> SNAP INC. (doing business in California as Snapchat, Inc.), <br><br>     Defendant. | Case No. 2:19-cv-04504-MWF-KS <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** <br><br> Judge: Hon. Michael W. Fitzgerald <br> Date: October 28, 2019 <br> Time: 10:00 a.m. <br> Ctrm: 5A |

1807855.1

## **Table of Contents**

Introduction ................................................................................................... 1

Legal Standard .............................................................................................. 2

    1.    Snap Omits Important Principles From Its Statement Of The Legal Standard For A Motion To Dismiss. ............................................... 2

    2.    Snap Also Wrongly "Assumes" Wisconsin Law Applies And Did Not Properly Or Fully Satisfy Its Burden On Conflicts-Of-Law. ............. 3

Argument ....................................................................................................... 4

    1.    Because Snap Does Or Should Realize That Its Speed Filter Encourages Dangerous Speeding, Snap Has A Legal Duty To Use Ordinary Care To Address This Foreseeable Danger. ............................. 4

    2.    Similarly, Because Snap Does Or Should Realize That Its Speed Filter Encourages Dangerous Speeding, Snap's Negligence Is A Proximate Cause Of Plaintiffs' Injuries. ......................................... 9

    3.    Even If Wisconsin's Contributory-Negligence Bar Did Apply, This Court Could Not Decide, As A Matter Of Law, That Hunter Morby Or Landen Brown Is More At Fault Than Snap. ..................................... 15

    4.    Also, Even If Wisconsin's Other Public-Policy Limitations Did Apply, They Do Not Bar, As A Matter Of Law, Plaintiffs' Claims. ........ 17

    5.    Finally, Because Plaintiffs "Seek To Hold Snapchat Liable For Its Own Conduct," "CDA Immunity Does Not Apply." ............................. 19

**Conclusion** ............................................................................................... 22

1807855.1

1

## Table of Authorities

2

**Federal Court Cases**

3

*Anthony v. Yahoo, Inc.*,

4

421 F. Supp. 2d 1257 (N.D. Cal. 2006) ..................................................... 20

5

*Bell Atl. Corp. v. Twombly*,

6

550 U.S. 544 (2007) ........................................................................................ 2

7

*Bruno v. Quten Research Inst., LLC*,

8

280 F.R.D. 524 (C.D Cal. 2011) ............................................................ 3, 17

9

*Doe v. Internet Brands, Inc.*,

10

824 F.3d 846 (9th Cir. 2016) ....................................................................... 22

11

*Durkee v. C.H. Robinson Worldwide, Inc.*,

12

765 F. Supp. 2d 742 (W.D.N.C. 2011) ...................................................... 12

13

*Evans v. General Motors Corp.*,

14

359 F.2d 822 (7th Cir. 1966) ....................................................................... 14

15

*Fraley v. Facebook, Inc.*,

16

830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................................................... 20

17

*Huff v. White Motor Corp.*,

18

565 F.2d 104 (7th Cir. 1977) ....................................................................... 14

19

*Jewel v. NSA*,

20

673 F.3d 902 (9th Cir. 2011) ................................................................... 2, 13

21

*Meador v. Apple, Inc.*,

22

911 F.3d 260 (5th Cir. 2018) ....................................................................... 12

23

*Munguia v. Bekins Van Lines, LLC*,

24

11-CV-01134, 2012 WL 5198480 (E.D. Cal. Oct. 19, 2012) ................ 4, 15

25

*Schemel v. General Motors Corp.*,

26

384 F.2d 802 (7th Cir. 1967) ....................................................................... 14

27

28

*Sheppard v. David Evans & Assoc.*,

    694 F.3d 1045 (9th Cir. 2012) .................................................. 2, 3

*Snyder v. Enter. Rent-A-Car Co. of San Francisco*,

    392 F. Supp. 2d 1116 (N.D. Cal. 2005) .................................... 10

*Strassberg v. New Eng. Mut. Life Ins. Co.*,

    575 F.2d 1262 (9th Cir. 1978) ..................................................... 3

*Williams v. Gerber Prods.*,

    523 F.3d 934 (9th Cir. 2008) ............................................. 2, 8, 9

**State Court Cases**

*A. E. Inv. Corp. v. Link Builders, Inc.*,

    214 N.W.2d 764 (Wis. 1974) ....................................................... 4

*Alvarado v. Sersch*,

    662 N.W.2d 350 (Wis. 2003) ............................................... 17, 18

*Blahnik v. Dax*,

    125 N.W.2d 364 (Wis. 1963) ............................................... 16, 19

*Brunette v. Employers Mut. Liab. Ins. Co. of Wis.*,

    320 N.W.2d 43 (Wis. Ct. App. 1982)......................................... 16

*Christensen v. Super. Ct.*,

    820 P.2d 181 (Cal. 1991)........................................................... 17

*Coalition Against Distracted Driving v. Apple, Inc.*,

    No. B278992, 2018 WL 2016665 (Cal. Ct. App. May 1, 2018)............... 12

*Cobb v. Indian Springs, Inc.*,

    522 S.W.2d 383 (Ark. 1975) ............................................... 14, 15

*Coopman v. State Farm Fire & Cas. Co.*,

    508 N.W.2d 610 (Wis. Ct. App. 1993)................................... 17, 18

*Ehlinger by Ehlinger v. Snipes*,

    454 N.W.2d 754 (Wis. 1990) ..................................................... 10

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Ewart v. S. Cal. Gas. Co.*,
    46 Cal. Rptr. 631 (Cal. Ct. App. 1965) ........................................................ 9

*Farmers Ins. Grp. v. Cty. of Santa Clara*,
    906 P.2d 440 (Cal. 1995)............................................................................. 9

*Grossman v. Rockaway Twp.*,
    No. MRS-L-1173-18, 2019 WL 2649153
    (N.J. Super. Ct. June 10, 2019) ................................................................ 21

*Hart v. State*,
    249 N.W.2d 810 (Wis. 1977) ...................................................................... 9

*Hurtado v. Sup. Ct.*,
    522 P.2d 666 (Cal. 1974)................................................................... 3, 4, 15

*Lineaweaver v Plant Insulation Co.*,
    37 Cal. Rptr. 2d 902 (Cal. Ct. App. 1995) ................................................ 10

*Maynard v. Snapchat, Inc.*,
    816 S.E.2d 77 (Ga. Ct. App. 2018) ....................................... 3, 6, 20, 21, 22

*Modisette v. Apple, Inc.*,
    241 Cal. Rptr. 3d 209 (Cal. Ct. App 2018) ......................................... 11, 12

*Mohr v. St. Paul Fire & Marine Ins. Co.*,
    674 N.W.2d 576 (Wis. Ct. App. 2003)................................................. 18, 19

*Moning v. Alfono*,
    254 N.W.2d 759 (Mich. 1977) ............................................................ 12, 19

*Peters v. Menard, Inc.*,
    589 N.W.2d 395 (Wis. 1999) .................................................................... 16

*Scott v. Ford Motor Co.*,
    169 Cal. Rptr. 3d 823 (Cal. Ct. App. 2014) .............................................. 15

*Voigt v. Riesterer*,
    523 N.W.2d 133 (Wis. Ct. App. 1994)...................................................... 18

*Webb v. Special Elec. Co.*,

    370 P.3d 1022 (Cal. 2016)........................................................................... 9

*Weirum v. RKO Gen., Inc.*,

    539 P.2d 36 (Cal. 1975)........................................... 4, 5, 13, 14, 19

*Wiese v. Kenwel-Jackson Mach., Inc.*,

    346 N.W.2d 469 (Table), 1984 WL 180419 (Wis. Ct. App. 1984) ........... 19

**State Statutes**

Wis. Stat. § 895.045 ................................................................................ 16

**Secondary Sources**

5 Fed. Prac. & Proc. § 1356 ....................................................................... 2

Restatement 2d of Torts § 303 ................................................................ 4, 5

Make Blog Post,

    http://www.makeblogpost.com/2019/08/01/snapchat-trophies-and-

    achievements/ ..................................................................................... 7

6ABC News,

    https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-

    young-women/1196846/ ............................................................ 6, 7, 8, 13

Scientific American,

    https://blogs.scientificamerican.com/guest-blog/your-teens-brain-

    driving-without-the-brakes/ ..................................................................... 16

Medium,

    https://medium.com/invisible-illness/i-did-it-for-the-likes-

    a55fb30700c6 ....................................................................................... 7

Protect Young Eyes,

    https://protectyoungeyes.com/snapstreak-addiction-why-teens-cant-

    put-snapchat-down/ ................................................................................ 16

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

CBS This Morning,

     https://www.cbsnews.com/news/snapchat-speed-filter-growing-

     concern-car-crashes-distraction/.................................................................. 9

Knox News,

     https://www.knoxnews.com/story/opinion/columnists/angela-

     gosnell/2016/11/06/trending-dangers-snapchats-speed-

     filter/93160392/ ........................................................... 5, 6, 8, 13

Tampa Bay Times,

     https://www.tampabay.com/news/publicsafety/accidents/snapchat-

     video-appears-to-show-driver-going-115-mph-on-night-of-crash-

     that/2300400/ ..................................................................... 6, 7, 13

Vice,

     https://www.vice.com/en_us/article/vv5jkb/the-secret-ways-social-

     media-is-built-for-addiction .......................................................... 7

WBUR,

     https://www.wbur.org/hereandnow/2016/06/28/snapchats-speed-filter-

     car-crash ............................................................................. 7, 13

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## **Introduction**

Let us be clear about what this case is *not* about.

This case is not about distracted-driving, where the claim is that *mobile phones* themselves are dangerous products and a court is asked to regulate the *entire* mobile phone industry to avoid the risk that drivers may be distracted while they are texting. Nor is this case even about whether *Snapchat* is a dangerous product.

Instead, this case is about how the *Speed Filter* specifically is a grossly dangerous and useless product – one that has, for years, repeatedly and foreseeably caused fatal and near-fatal wrecks, while providing no social benefit and which could be removed altogether with no meaningful cost.

Yet, despite knowledge of a near-fatal crash in September 2015 in Georgia, three deaths from a crash in December 2015 in Pennsylvania, five deaths from a crash in October 2016 in Florida, and repeated calls from safety advocates and others to remove the Speed Filter, Snap has refused and has stubbornly continued to maintain the Speed Filter without regard for the consequences. Doc. 1 ¶¶ 18-36.

It should be no surprise then that the deadly consequences have also continued.

On May 28, 2017, three boys – Jason Davis (17-years-old), Hunter Morby (17-years-old), and Landen Brown (17-years-old) – were all burned to death in the inside of a car after they lost control going at speeds over 100 MPH, flew off the road, and crashed head-first into a tree. The crash and fire was so severe that they had to be identified by their dental records. *Id.* ¶ 47.

What prompted the boys to drive at such dangerous speeds?

The same thing that contributed to the September 2015 crash in Georgia, the December 2015 crash in Pennsylvania, the October 2016 crash in Florida, and many other incidents of dangerous speeding – the Speed Filter.

The Speed Filter "'incentivizes somebody to do something they know is not safe, but they do it anyway for the sake of the picture or video.'" *Id.* ¶ 36. As a result,

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Snap has knowingly created a dangerous game for "many of its users, the vast majority of whom are teenagers and young adults." *Id.* ¶ 16.

"Go as fast as you can until you hit 100 MPH," "Snap a photo or video," and "then share the 100-MPH-Snap on Snapchat." *Id.* The danger is not the Snap itself. Obviously, no one is harmed by the post.

Rather, the danger is the dangerous *speeding*. It is the influence that the *Speed* Filter has on teenage and young-adult drivers. It is "'**instigating the user to get up to a dangerous speed**,'" and it is that motivating effect and the foreseeably dangerous consequences that this case is about. *Id.* ¶ 36 (bolding added).

Of course, it is not for this Court, or even any party, to decide the role the Speed Filter has played in encouraging these deadly, high-speed collisions. Only a jury can decide this fact dispute, and that requires this Court to deny Snap's motion to dismiss and to allow the parties to proceed with merits discovery in action.

## **Legal Standard**

### **1.    Snap Omits Important Principles From Its Statement Of The Legal Standard For A Motion To Dismiss.**

On a motion to dismiss, courts "must accept all factual allegations of the complaint as true" and "draw all reasonable inferences in favor" of the complaint. *Jewel v. NSA*, 673 F.3d 902, 907 (9th Cir. 2011). As such, courts also "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.*

Moreover, "[t]he motion to dismiss is not a procedure" for deciding "a contest" about "the facts or the substantive merits." *Williams v. Gerber Prods.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting 5 Fed. Prac. & Proc. § 1356); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (noting that courts may not dismiss because they believe "the [claimant] will fail to find evidentiary support"). "[A] claim [need only] be 'plausible,'" and "even a 'short and plain' statement can state a claim." *Sheppard v.*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1  *David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012).

2      Snap's omission of these principles is important because nearly every ground

3  Snap advances involves disputed fact and substantive merits. In particular, whether

4  Snap does or should realize that its Speed Filter encourages dangerous speeding by

5  teenagers and young adults is a disputed issue that only a jury can resolve.

6  **2.  Snap Also Wrongly "Assumes" Wisconsin Law Applies And Did Not**

7        **Properly Or Fully Satisfy Its Burden On Conflicts-Of-Law.**

8      "[E]ven in cases involving foreign elements," courts in California "should be

9  expected, as a matter of course, to apply ... the law of the forum." *Hurtado v. Super.*

10  *Ct.*, 522 P.2d 666, 670 (Cal. 1974). Therefore, if a party contends that some other law

11  should apply to an issue, it is that party's "burden to show that the [other] law ... rather

12  than California law, should apply." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D.

13  524, 539 (C.D Cal. 2011). The party must show that "there is an actual conflict" and

14  "convince this Court of 'material' differences in the law." *Id.*

15      Here, other than for comparative fault, Snap has not even tried to satisfy its

16  burden on conflicts-of-law. In fact, Snap even says that it merely "**assumes** Wisconsin

17  law applies" and admits that "Wisconsin and California law [other than comparative

18  fault] **do not materially differ** regarding the arguments raised herein." Doc. 31 at 16,

19  15 (bolding added). And because Snap has not "articulated any argument" and

20  expressly admits no material conflicts exist, Snap has "not met [its] burden" and this

21  Court must apply California law. *Bruno*, 280 F.R.D. at 540.

22      Even as to comparative fault, Snap has not shown a "true conflict" or that any

23  alleged "comparative impairment" requires use of Wisconsin law. *Strassberg v. New*

24  *Eng. Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978). The "out-of-state

25  wrongful-death car-accident cases" on which Snap relies do not involve a *California*

26  resident-defendant, Doc. 31 at 15, which has insisted it can be sued only in *California*,

27  *see, e.g.*, *Maynard v. Snapchat, Inc.*, 816 S.E.2d 77, 81 (Ga. Ct. App. 2018), and says

28  1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

that "the laws of California" govern claims by its users, Doc. 33-3 at 13.

And when faced with claims against California resident-defendants, courts have held that California's interest "in allowing pure comparative fault damages outweighs" another state's interest "in limiting comparative fault damages." *Munguia v. Bekins Van Lines, LLC*, 11-CV-01134, 2012 WL 5198480, at *7 (E.D. Cal. Oct. 19, 2012) (formatting altered), *adopted* by 2012 WL 5511749 (E.D. Cal. Nov. 14, 2012); *see also id.* (finding that "California courts are reluctant to impose foreign laws that restrict a plaintiff's ability to recover damages" unless the defendants are "residents of ... the foreign state"); *Hurtado*, 522 P.2d at 670 (holding that, because the plaintiffs were "the Mexican residents," "not the defendants," "Mexico has no interest in applying its limitation of damages"). The same is true here.

<u>Argument</u>

**1.      Because Snap Does Or Should Realize That Its Speed Filter Encourages Dangerous Speeding, Snap Has A Legal Duty To Use Ordinary Care To Address This Foreseeable Danger.**

The law imposes a duty on every person "to use ordinary care to prevent others from being injured as the result of their conduct." *Weirum v. RKO Gen., Inc.*, 539 P.2d 36, 39 (Cal. 1975); *see A. E. Inv. Corp. v. Link Builders, Inc.*, 214 N.W.2d 764, 766 (Wis. 1974) (same). Moreover, "foreseeability of the risk" is a "primary consideration" for "duty." *Weirum*, 539 P.2d at 39. And "[w]hile duty is a question of law, **foreseeability is a question of fact for the jury**." *Id.* (bolding added).

As a result, "[a]n act is negligent" if a person "realizes or should realize that it is likely to affect" "the conduct" of a "third person" "in such a manner as to create an unreasonable risk of harm" to another person. Restatement 2d of Torts § 303. "The [person] may not intend the third person to act in any particular way." *Id.*, cmt. d. Still, the person's "negligence lies in the fact" that they do or "should realize that [their] conduct may cause the third person so to act." *Id.* Especially where "the third person's

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

act is done in response to the stimulus ... created by the defendant's conduct," the law "require[s] the actor to **realize the tendency of human beings to act improperly**." *Id.* (bolding added); *see Weirum*, 539 P.2d at 39 (same).

Here, Plaintiffs' allegations easily invoke Snap's legal duty. Plaintiffs allege that "Snap knew or should have known that, prior to May 28, 2017," many of its teenage and young-adult users had been "driving, or were passengers in, cars at speeds of 100 MPH or more" because they specifically want a "100-MPH-Snap." Doc. 1 ¶¶ 15-16. Regardless of "whether Snap intended to encourage dangerous speeding," Snap "knew or should have known that it was, in fact, encouraging dangerous speeding" and "that it was reasonably foreseeable that Snapchat would continue to motivate dangerous speeding." *Id.* ¶ 17. In other words, "Snap did realize or should have realized that it was affecting the driving behavior of teenagers and young adults," yet it did not use ordinary care to address this "unreasonable risk of harm." *Id.*

Faced with these clear allegations, Snap first argues that "Plaintiffs provide no factual support" for the allegations that "the Filter foreseeably incentivizes or encourages speeding." Doc. 31 at 28. However, just because Snap *disagrees* with Plaintiffs' allegations does not make them "conclusory allegations." *Id.*

As an initial matter, Plaintiffs allege the *precise way* in which Snapchat is linked to dangerous speeding. It is a "game for Snap and many of its users, the vast majority of whom are teenagers and young adults." Doc. 1 ¶ 16. "Go as fast as you can until you hit 100 MPH," "Snap a photo or video," and "then share **the 100-MPH-Snap** on Snapchat." *Id.* (bolding added).

Of course, the 100-MPH Snap is not some theoretical danger; Plaintiffs allege that it is an *empirical* fact which Snap knows to have occurred over and over. *See* Knox News, "Trending: The Dangers of Snapchat's Speed Filter"[1] ("This is

---

[1] https://www.knoxnews.com/story/opinion/columnists/angela-gosnell/2016/11/06/trending-dangers-snapchats-speed-filter/93160392/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

horrifying, but it isn't the first incident in which Snapchat's speed filter has been called into question after a car accident.").

In September 2015, Christal McGee (18-years-old) crashed into the back of another car in Georgia, resulting in severe brain damage to the victim. Doc. 1 ¶ 29. Just before the crash, Christal said "'she was just trying to get the car to **100 m.p.h.** to post it on Snapchat.'" *Id.* ¶ 32 (bolding added); *Maynard*, 816 S.E.2d at 79 (same).

In December 2015, Amonie Barton (early 20s) crashed into a parked truck in Pennsylvania, resulting in her death and her two passengers' deaths. *Id.* ¶ 23. One passenger was reportedly "'a big fan of Snapchat,'" had posted their speed earlier in the day, and surveillance video showed "the car flying down Torresdale Avenue." 6ABC News, "Did Snapchat Play Role In Deaths of 3 Young Women?";[2] *see id.* (reporting "others ... using the filter to brag about their speed, including ... nearly **106 miles per hour**," statements by Temple University students that "'I saw like **120 miles per hour**'" and "[p]eople go **100** down the Schuylkill") (bolding added).

In October 2016, Pablo Cortes III (22-years-old) crashed into a minivan in Florida, resulting in his death, his passenger's death, and three deaths in the minivan. Doc. 1 ¶ 35. Video reportedly shows "[a] speed registers across the screen – first 82.6 mph, then **115.6 mph**." Tampa Bay Times, "Snapchat Video Appears to Show Driver Going 115 MPH on Night of Crash That Killed 5."[3] (bolding added).

And Plaintiffs not only allege the precise way it happens and that it is an empirical fact, they also allege *why* it happens. As one columnist explains, "looking at the speedometer in your car isn't as much fun" as "capturing the car accelerating on camera and then sharing with all your friends." Knox News, *infra*. This means that, as one consumer safety writer explains, "'[i]t incentivizes somebody to do something

---

[2] https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/
[3] https://www.tampabay.com/news/publicsafety/accidents/snapchat-video-appears-to-show-driver-going-115-mph-on-night-of-crash-that/2300400/

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

they know is not safe, **but they do it anyway for the sake of the picture or video**.'"
Tampa Bay Times, *infra* (bolding added); Doc. 1 ¶ 36 (same).

In the parlance of our times, "**I did it for the likes**." Medium, "Invisible Illness," (bolding added) (a boy explaining why he was "eating Tide pods while being recorded").[4] For Snap's users, it is about "the need to capture the perfect moment just at the right time" and "they want to get that certain speed up" – *i.e.*, the 100-MPH-Snap. WBUR, "Does Snapchat's Speed Filter Encourage Reckless Driving?"[5]

After incorrectly asserting that Plaintiffs' allegations are conclusory, Snap then makes a series of fact arguments: Snap allegedly does not "reward[] its users" for "high speeds"; does not expressly "direct[] users to 'go faster'"; and "warns first-time users" – "'Please, DO NOT Snap and drive" – and repeats it "at speeds above 15 m.p.h. Doc. 31 at 28. But only a jury can decide each of these disputed facts.

As Plaintiffs allege, "Snap rewards [its users], in **unknown**, **variable, and changing ways**." Doc. 1 ¶ 13 (bolding added). "All the achievements and trophies in Snapchat are unknown to users," and "[y]ou don't even know about the achievement until you unlock it." Make Blog Post, "Snapchat Trophies."[6] And so for Snap to tell a *court* there are no high-speed rewards is meaningless. Snap's teenage and young-adult *users* do not know that, and the fun of figuring out what you might win is precisely Snapchat's appeal. Vice, "Your Addiction to Social Media Is No Accident."[7] ("The easiest way to understand this ... is by imagining a slot machine.").

Similarly, while Snap may not intend for its product to tell users to "'go faster,'" nonetheless, this is the *exact* message its users receive. Doc. 31 at 28. After learning that her dead daughter's "'speed was on the phone from the app,'" one

---

[4] https://medium.com/invisible-illness/i-did-it-for-the-likes-a55fb307000c6
[5] https://www.wbur.org/hereandnow/2016/06/28/snapchats-speed-filter-car-crash
[6] http://www.makeblogpost.com/2019/08/01/snapchat-trophies-and-achievements/
[7] https://www.vice.com/en_us/article/vv5jkb/the-secret-ways-social-media-is-built-for-addiction

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

mother aptly remarked that "'it's really horrible'" that "there is something out there to tell them '**Hey go faster**.'" 6ABC News, *infra* (bolding added).

And as for Snap's alleged warnings, they simply do not apply here, given the specific facts. Plaintiffs do not allege that the *driver* was using Snapchat, and so any alleged warning "'Please, DO NOT Snap and drive'" was never violated. Doc. 31 at 28. In other words, no one did "Snap and drive." *Id.*

Rather, Plaintiffs allege that a *passenger* was using Snapchat, and this precise *passenger* problem with Snap's alleged warnings has been known for years:

> If Snapchat actively discourages their community from using the filter while driving, then when are they supposed to use it? Was the filter created to be used by passengers only? There's no way to monitor that but **even if that is the case, drivers are still ultimately going to be persuaded to top out their speed**, hence creating a dangerous situation either way.

Knox News, *infra* (bolding added).

Regardless, Plaintiffs also allege that any do-not-Snap-and-drive warnings are "inadequate, unreasonable, and knowingly ineffective." Doc. 1 ¶ 53. Among other things, it is inadequate to provide the alleged do-not-Snap-and-drive warning only "when a user **first** opened the [Speed] Filter" – no matter how many years might pass from that first use or other circumstances. Doc. 33 ¶ 6 (bolding added).

Meanwhile, the form of the alleged 15-mph do-not-Snap-and-drive warning is facially unreasonable. The don't-Snap-and-drive language appears only in the bottom right-hand corner, in small font, in a color that blends in with the background, and the word "DRIVE" is obscured by the blue "**Send To**" button – a telling indicator of what is important to Snap. Doc. 33-2 at 2 (bolding added).

Again, only a jury can decide these disputed facts, and a court cannot substitute its judgment based "on its own review" of the alleged warnings. *Williams*, 552 F.3d at

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

938; *see Webb v. Special Elec. Co.*, 370 P.3d 1022, 1036 (Cal. 2016) ("This inquiry will typically raise questions of fact for the jury ...."); CBS This Morning, "Is The Snapchat Speed Filter Encouraging Reckless Driving?"[8] (statements by consumer safety writer that Snap's alleged warnings are "not enough").

Finally, Snap argues that, "[e]ven if it was *possible* that users would ignore Snap's warnings," "Plaintiffs cannot establish that it was *probable* users would do so." Doc. 31 at 28. But, to start, "'foreseeable' means a level of probability which would lead a prudent person to take effective precautions." *Farmers Ins. Grp. v. Cty. of Santa Clara*, 906 P.2d 440, 448 (Cal. 1995). Indeed, the focus should not be on "whether the injury to be foreseen as a probability or as a possibility," but rather on whether "a reasonably prudent person" would "subject others to a particular risk." *Ewart v. S. Cal. Gas. Co.*, 46 Cal. Rptr. 631, 636 (Cal. Ct. App. 1965). Moreover, the word probability "does not mean that the mathematical probability" must be "greater than 50 per cent." *Hart v. State*, 249 N.W.2d 810, 815 n.4 (Wis. 1977).

In any event, regardless of how it is stated, Plaintiffs' allegations expressly satisfy the rule of foreseeability. As set forth above, because incidents of fatal and near-fatal crashes caused by Snapchat have *repeatedly* occurred in the past, the risk is clearly more than possible. Rather, the risk has materialized *in fact* numerous times, and in light of the repeated occurrences, it is absurd for Snap to claim that, as a matter of law, it is a merely "possible" that its users will "take snaps of themselves speeding." Doc. 31 at 28. Clearly, that is something Snap's users do.

## 2.   Similarly, Because Snap Does Or Should Realize That Its Speed Filter Encourages Dangerous Speeding, Snap's Negligence Is A Proximate Cause Of Plaintiffs' Injuries.

The law on causation is that "a cause in fact is something that is a substantial

---

[8]   https://www.cbsnews.com/news/snapchat-speed-filter-growing-concern-car-crashes-distraction/

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

factor in bringing about the injury." *Lineaweaver v. Plant Insulation Co.*, 37 Cal. Rptr. 2d 902, 905 (Cal. Ct. App. 1995). But "the word 'substantial' should not be weighted too heavily." *Id.* After all, "[t]he substantial factor standard" was "formulated to **aid plaintiffs** as a **broader rule** of causality." *Id.* (bolding added). The phrase "substantial factor" means that a person's conduct "has such an effect in producing the harm" that "a reasonable person" would regard it as a cause, "using that word in the popular sense." *Ehlinger by Ehlinger v. Snipes*, 454 N.W.2d 754, 758 (Wis. 1990).

Moreover, a person who "negligently creates a dangerous condition" may be liable "even though another cause is also a substantial factor." *Id.* As a result, "[t]here may be more than one substantial causative factor," and a person's negligence "**need not be the sole or primary factor**." *Id.* at 758-59 (bolding added). And "[w]ether [an] intervening act" is "foreseeable" and, thus, "does not constitute a superseding cause" is, generally, "a question of fact" for the jury. *Snyder v. Enter. Rent-A-Car Co. of San Francisco*, 392 F. Supp. 2d 1116, 1128 (N.D. Cal. 2005).

Here too, Plaintiffs' allegations easily state that Snap's negligence is a proximate cause. Again, Plaintiffs allege that Snap "knew or should have known" that "it was, in fact, encouraging dangerous speeding," either by users while driving or as passengers, and that "it was reasonably foreseeable that Snapchat would continue to motivate dangerous speeding." Doc. 1 ¶ 17. Specifically, prior to May 28, 2017, Snap knew that repeated fatal and near-fatal "wrecks had occurred" because "Snapchat was encouraging dangerous speeding." *Id.* ¶ 50. In sum, whether intended or not, "Snapchat encouraged and facilitate the boys' excessive speeding" and is "a critical cause of the wreck" here. *Id.* ¶¶ 42, 1.

In response, Snap makes three arguments, all of which ignore the specific nature of Plaintiffs' claims and misstate the relevant law.

*First*, citing a series of *distracted*-driving cases where the plaintiffs claimed that *mobile phones* themselves are dangerous products, Snap says that courts have held

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

that "device manufacturers" are not the cause of a crash that "results from a driver's misuse of their products while driving." Doc. 31 at 17.

But Plaintiffs do not claim that mobile phones are dangerous products or even that Snapchat itself is necessarily a dangerous product. Rather, the *Speed Filter* specifically is the danger – one that has, for years, repeatedly and foreseeably caused fatal and near-fatal wrecks, while providing *no social benefit* and which could be removed altogether with *no meaningful cost*. The same obviously cannot be said for mobile phones – which do provide social benefits and could not be modified or removed altogether without substantial costs.

Moreover, Plaintiffs do not claim that Jason Davis (the driver) was distracted from the road because of his "misuse of [Snap's] products while driving." *Id.* Rather, the Speed Filter encouraged Davis to drive at *dangerous* speeds because he wanted to obtain validation on social media with a 100-MPH-Snap. Through the Speed Filter, Snap had knowingly created a dangerous game for Davis to play. And Davis played the game without even violating Snap's alleged do-not-Drive-and-snap rule. Davis was not using Snapchat while driving; one of his passengers was. Doc. 1 ¶ 41.

These specific fact allegations – *i.e.*, the *Speed Filter* is the danger, not mobile phones or even Snapchat itself, and the Speed Filter encouraged dangerous *speeding*, not distracted driving – make Plaintiffs' claims materially distinguishable from the cases cited by Snap. In none of Snap's cases, did the plaintiffs have targeted claims like those here. Instead, those cases involve attempts by plaintiffs to have courts regulate the entire mobile phone industry.

For example, in *Modisette v. Apple, Inc.*, 241 Cal. Rptr. 3d 209 (Cal. Ct. App 2018), the California Court of Appeals described the plaintiffs' claims as follows:

> The facts and documents cited by the Modisettes about **"distracted driving"** confirm how broadly they construe the scope of the duty owed to them by Apple. Essentially, the Modisettes argue that **cell-phone**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

> **manufacturers owe a duty to all individuals injured by drivers who
> were distracted by using the phones** while driving if the cell-phone
> manufacturer had available the technology to disable use of the phone
> while the user is driving.

*Id.* at 223 (bolding and underlining added).

Another example, in *Coalition Against Distracted Driving v. Apple, Inc.*, No.
B278992, 2018 WL 2016665 (Cal. Ct. App. May 1, 2018), the California Court of
Appeals described plaintiff's claims as follows:

> In the prayer for relief, plaintiffs sought a "permanent injunction
> requiring Defendants to fund an effective and **ongoing national public
> education campaign** through one or more third parties, effectively
> explaining the risks of using a smartphone or smartwatches [while]
> driving, especially the Apple Watch and other smartwatches, **in an
> amount not less than $1 billion annually**."

*Id.* at *1 (bolding and underlining added).[9]

Here, Plaintiffs make no claims that "cell-phone manufacturers owe a duty to
all individuals injured by drivers who were distracted," for an annual "$1 billion"
public education campaign, or for anything else similarly grandiose. *Modisette*, 241
Cal. Rptr. at 151.

And where plaintiffs make specific claims like Plaintiffs make here, courts
readily recognize the distinction between such claims and broader ones. *See, e.g.*,
*Moning v. Alfono*, 254 N.W.2d 759, 771 (Mich. 1977) ("The issue ... is not whether
slingshots should be manufactured," but "**the narrower question**" of "whether

---

[9] The other cases cited by Snap are similarly distinguished. *See, e.g.*, *Durkee v. C.H.
Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 750 (W.D.N.C. 2011) (finding that
the crash "was caused by the **driver's inattention**," "**not any element of the design
... that has been alleged**"); *Meador v. Apple, Inc.*, 911 F.3d 260, 263 (5th Cir. 2018)
(claiming that the "**iPhone 5**" was the cause of the injuries) (bolding added in both).

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

marketing slingshots directly to children" is "unreasonable."); *Weirum*, 539 P.2d at 41 ("The giveaway contest was **no commonplace** invitation," but was "a competitive scramble" and was "intensified by the **live broadcast** which accompanied the pursuit.") (bolding added in both).

*Second*, Snap says that Plaintiffs fail to plead a "direct causal connection" because they do "not allege that the driver, Davis, used the Filter" and merely allege that "Brown, a passenger, opened Snapchat at some unspecified time prior to the accident." Doc. 31 at 18-19.

Yet, Snap provides no reason why causation requires Davis to have used the Speed Filter while driving. The motivating effect of the Speed Filter has nothing to do with whether the *driver* is using Snapchat. It is about "the need to capture the perfect moment just at the right time" and "they want to get that certain speed up" – *i.e.*, the 100-MPH-Snap – regardless of who captures the Snap. WBUR, *infra*.

And Snap does or should realize, from multiple prior incidents, that this is a foreseeable use of the Speed Filter. In at least, two separate fatal crashes, it is reported that it was a *passenger* who was using the Speed Filter prior to the crash. *See* 6ABC News, *infra*; Tampa Bay Times, *infra*. And, again, it has been known for years that, "even if [passengers are using the Speed Filter]," "drivers are still ultimately going to be persuaded to top out their speed." Knox News, *infra*.

Meanwhile, Snap's argument that the complaint should be dismissed because Plaintiffs do not specify exactly how many minutes and seconds between when Brown "opened Snapchat" and the crash occurred is similarly meritless. Doc. 31 at 19. Whether the use of Snapchat was or was not too far removed from the crash is a fact dispute only a jury can decide. On a motion to dismiss, this Court must "draw all reasonable inferences" regarding this dispute in favor of the complaint. *Jewel*, 673 F.3d at 907. Similarly, this Court must "'presume that general allegations embrace those specific facts necessary to support the claim.'" *Id.* And even if the Court could

1   find otherwise, Plaintiffs can, in good faith, amend the complaint to allege that the
2   crash occurred "within minutes" of the 123-MPH-Snap.

3       *Third*, Snap says that "courts have **flatly** rejected" "'encouragement liability,'"
4   "holding **fast** to the rule" that "the driver is solely responsible for reckless driving."
5   Doc. 31 at 20 (bolding added). But Snap's own cases contradict this assertion.

6       For example, in *Schemel v. General Motors Corp.*, 384 F.2d 802 (7th Cir.
7   1967), only *one* judge actually rejected encouragement liability.

8       In his concurrence, Judge Cumming confirmed that he joined in dismissal only
9   because he felt "bound by ... *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir.
10  1966)" and because "the complaint **does not** charge that defendant's advertising"
11  caused the dangerous speeding. *Id.* at 804-05 (bolding added). As set forth above,
12  Plaintiffs do properly allege that the Speed Filter caused the speeding here, and
13  therefore Judge Cumming's concurring opinion would not apply here.

14      Meanwhile, in his dissent, Judge Kiley found that whether GM "encouraged
15  [the driver] through its advertising" to drive "at speeds in excess of 100 [MPH]" is "a
16  question for the jury as to the reasonableness of [GM's] design." *Id.* at 809. And this
17  Court is obviously entitled to follow Judge Kiley's dissent as persuasive.

18      Of course, even courts in the Seventh Circuit should and must follow Judge
19  Kiley's dissenting opinion. That is because the Seventh Circuit later *overruled* the
20  *Evans* precedent upon which *Schemel* is based and expressly said we "**<u>acknowledge</u>
21  <u>Judge Kiley's foresight</u>**." *Huff v. White Motor Corp.*, 565 F.2d 104, 109 (7th Cir.
22  1977) (bolding and underlining added); *see also id.* at 106 n.1 ("Insofar as the decision
23  in *Schemel* rests on *Evans*, it is overruled along with *Evans*.").

24      Moreover, *Schemel* is just one example; there are many other cases where
25  judges and courts recognize encouragement-liability, despite the driver's negligence.
26  *See, e.g.*, *Weirum*, 539 P.2d at 40 (holding that, "[i]t was foreseeable that defendant's
27  youthful listeners" would "disregard the demands of highway safety"); *Cobb v. Indian*

28

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*Springs, Inc.*, 522 S.W.2d 383, 387 (Ark. 1975) (holding that "[a] jury could have found" that the driver would not have "driven the car at a high speed" "except for the suggestion made" and therefore the defendant's "encouragement was a substantial factor in causing the [injuries]").

3. **Even If Wisconsin's Contributory-Negligence Bar Did Apply, This Court Could Not Decide, As A Matter Of Law, That Hunter Morby Or Landen Brown Is More At Fault Than Snap.**

As set forth in the statement of the legal standard, Snap has not shown a "true conflict" or that any alleged "comparative impairment" requires application of Wisconsin's contributory-negligence bar. When faced with claims against California resident-defendants, courts have held that California's interest "in allowing pure comparative fault damages outweighs" another state's interest "in limiting comparative fault damages." *Munguia*, 2012 WL 5198480, at *9. Indeed, courts have rejected several damages limitations from other states for claims against California resident-defendants. *See, e.g.*, *Hurtado*, 522 P.2d at 670 (rejecting foreign law "limiting damages for wrongful death"); *cf. Scott v. Ford Motor Co.*, 169 Cal. Rptr. 3d 823, 834 (Cal. Ct. App. 2014) (rejecting "Michigan's ban on punitive damages").

Because California's pure comparative-fault rule applies here, Snap's argument that "Plaintiffs were more negligent than Snap" is legally irrelevant. Doc. 31 at 21. Even if Plaintiffs were more negligent than Snap, that would not bar their claims, and the Court should reject this argument without further analysis.

However, even if Wisconsin's contributory-negligence bar did apply, this Court still could not decide, as a matter of law, that Morby or Brown is more negligent than Snap. At the outset, Snap misstates the contributory-negligence analysis under Wisconsin law. Snap says that "Davis, Morby, and Brown were more negligent than Snap." *Id.* Yet, no Plaintiff makes claims for Davis (the driver), and so his alleged negligence is irrelevant in comparing Plaintiffs and Snap.

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1    Similarly, Morby's and Brown's alleged negligence must be compared,
2    separately, with Snap's negligence. The Wisconsin statute provides that "[t]he
3    negligence of **the** plaintiff shall be measured **separately** against the negligence of
4    **each** person found to be causally negligent," and contributory negligence does not bar
5    recovery "if that negligence was not greater than the negligence of the person against
6    whom recovery is sought." Wis. Stat. § 895.045 (bolding added).

7    In any event, regardless of whether viewed separately or combined, only a jury
8    could decide whether Morby's and Brown's alleged negligence is greater than Snap's
9    negligence. "Even when **not** confronted with the youth" of the plaintiffs,
10   "comparative negligence peculiarly lies within the province of the jury." *Blahnik v.*
11   *Dax*, 125 N.W.2d 364, 368 (Wis. 1963) (bolding added).

12   But, here, the young age of Morby (17-years-old) and Brown (20-years-old) is
13   especially important, given the unique vulnerability of teenagers and young adults to
14   Snapchat specifically and their relative inability to control risk-taking behavior. *See*
15   Protect Young Eyes, "Snapstreak Addiction. Why Teens Can't Put Snapchat Down";[10]
16   Scientific American, "Your Teen's Brain: Driving Without the Brakes,"[11] (explaining
17   that, "[b]ased on the stage of their brain development," "teenagers are more likely to
18   act on impulse" and "engage in more serious risk-taking behavior").

19   None of the cases cited by Snap remotely establish that this Court could decide
20   this intensely disputed fact issue as a matter of law. Two of the cases involve
21   *extraordinary* facts, such as a shop-lifter "who chose to take off running," "chose the
22   route," "chose to continue running despite the guards' requests that he stop," and
23   "who chose to [jump] into the river." *Peters v. Menard, Inc.*, 589 N.W.2d 395, 406
24   (Wis. 1999); *see Brunette v. Employers Mut. Liab. Ins. Co. of Wis.*, 320 N.W.2d 43,

25   
26   [10] https://protectyoungeyes.com/snapstreak-addiction-why-teens-cant-put-snapchat-
     down/
27   [11] https://blogs.scientificamerican.com/guest-blog/your-teens-brain-driving-without-
     the-brakes/
28   1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

44 (Wis. Ct. App. 1982) (involving a driver who fled police, "ran numerous stop signs" and then "avoided [a] roadblock and left the city limits"). And the only case with any relevance here confirms that the issue "is a disputed issue of fact" for a jury. *Coopman v. State Farm Fire & Cas. Co.*, 508 N.W.2d 610, 614 (Wis. Ct. App. 1993).

**4.     Also, Even If Wisconsin's Other Public-Policy Limitations Did Apply, They Do Not Bar, As A Matter Of Law, Plaintiffs' Claims.**

As set forth in the statement of the legal standard, Snap has not even tried to satisfy its burden of showing why Wisconsin's other public-policy limitations should apply here. Because Snap has not "articulated any argument," *Bruno*, 280 F.R.D. at 540, this Court must apply California law.

Under California law, "exceptions" to "liability for negligence are recognized only when **clearly**" compelled by public policy. *Christensen v. Super. Ct.*, 820 P.2d 181, 189 (Cal. 1991) (bolding added). And because Snap does not identify any California public-policy limitation that clearly compels an exception to the rule of liability for negligence, the Court should reject this argument without further analysis.

However, even if Wisconsin's other public-policy limitations did apply, this Court still could not decide, at this *early* stage, that Plaintiffs' claims are barred. As the Wisconsin Supreme Court has instructed, "the better practice" is to "submit the case to the jury" before deciding whether "public policy" precludes liability. *Alvarado v. Sersch*, 662 N.W.2d 350, 355 (Wis. 2003). Only "where the facts are **simple**" and the public policy questions have been "**fully presented**" may a court "preclude liability before trial." *Id.* (bolding added).

Here, the facts are anything but simple, and the public policy questions have not been fully presented. One of the key disputed facts is whether Snap realizes or should realize that its Speed Filter encourages dangerous speeding by teenagers and young adults. And because "foreseeability" implicates both "negligence" and "[p]ublic policy factors," it plays a "dual role" and the Court would be "aided by the facts that

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

[are] brought to light during the jury trial." *Id.*

Even in cases involving "the tort liability of property managers" for "apartment inspections," the Wisconsin Supreme Court has found reversible error to bar "liability before trial." *Id.* at 356. If apartment inspections present facts complex enough to require a jury trial, then *a fortiori* the effect of a specific feature of a social media app on teenagers and young adults certainly requires a jury trial.

Moreover, each of Snap's three arguments regarding Wisconsin's other public-policy limitations are merely restatements of their negligence arguments.

*First*, Snap says that Plaintiffs' injuries are "too remote" and Davis's speeding is a "superseding cause." Doc. 31 at 25. But, "[i]f a third person intervenes, the causal connection is not automatically severed." *Voigt v. Riesterer*, 523 N.W.2d 133, 137 (Wis. Ct. App. 1994). If the third person's actions were a "foreseeable consequence," then the "causal connection [is] not automatically severed." *Id.* at 138.

In other words, Snap's argument about remoteness and superseding cause is the same as Snap's argument that Plaintiffs fail to allege causation. And as set forth above, because Snap realizes or should realize that its Speed Filter encourages dangerous speeding, Snap's negligence is a proximate cause of Plaintiffs' injuries.

In fact, even the cases cited by Snap recognize that focusing on a person's lack of "management or control of the [subject] vehicle **unnecessarily confines the issue.**" *Coopman*, 508 N.W.2d at 614 (bolding added). Where a person has encouraged speeding, their "**lack of management or control over [the] vehicle cannot immunize**" them from liability for "negligent conduct." *Id.* (bolding added).

*Second*, Snap says that "allowing recovery" here "would expose all sorts of companies to far-reaching tort liability" for "users' misuse of their products." Doc. 31 at 25 (formatting altered). However, it is a foundational rule of modern tort law that companies have "the duty to foresee all reasonable uses **and misuses**" and "the resulting **foreseeable dangers**." *Mohr v. St. Paul Fire & Marine Ins. Co.*, 674 N.W.2d

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

576, 589 (Wis. Ct. App. 2003) (bolding added).

Here as well, Snap's argument about liability for misuse is the same as Snap's arguments that Plaintiffs fail to allege duty.  And as set forth above, because Snap realizes and or should realize that its Speed Filter encourages dangerous speeding, Snap has a legal duty to use ordinary care to address this *foreseeable* danger.

Moreover, where *specific* products create unreasonable danger, courts routinely reject the argument that the recognition of "a duty" will "lead to unwarranted extensions of liability." *Weirum*, 539 P.2d at 40. Such arguments suffer from "a myopic view of the facts presented," and they rely on strained analogies that bear "little resemblance" to the claims made. *Id.*; *see Moning*, 254 N.W.2d at 774 (finding "a qualitative difference" between "slingshots and other projectile 'toys'" and "baseball equipment and bicycles").

*Third*, Snap says that allowing "recovery here would be 'wholly out of proportion' to Snap's alleged culpability." Doc. 31 at 26. Yet, "comparative negligence peculiarly lies within the province of the jury," *Blahnik*, 125 N.W.2d at 368, especially "where the negligence of each party" is different in "character," *Wiese v. Kenwel-Jackson Mach., Inc.*, 346 N.W.2d 469 (Table), 1984 WL 180419, at *2 (Wis. Ct. App. 1984).

Once again, Snap's argument about proportionality is the same as Snap's argument about comparative fault. And as set forth above, this Court cannot decide, as a matter of law, that Morby or Brown is more negligent than Snap.

**5.    Finally, Because Plaintiffs "Seek To Hold Snapchat Liable For Its Own Conduct," "CDA Immunity Does Not Apply."**

As another district court in this Circuit has explained:

**No case of which this court is aware has immunized a defendant from allegations that it created tortious conduct**. In fact, th[e] cases have acknowledged that the CDA "'would not immunize [a defendant]**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

with respect to any information [it] developed or created entirely by itself
....' .... One need look no further than the face of the statute to see why.
The CDA only immunizes 'information provided by another information
content provider.'"

*Anthony v. Yahoo, Inc.*, 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006) (emphasis
altered and citations omitted).

Here, Plaintiffs seek to hold Snap liable only for its *own* content. Snap, on its
own and without anyone else, created the Speed Filter, and *its* Speed Filter
encouraged the dangerous speeding that killed Hunter Morby and Landen Brown. The
tortious content at issue is the Speed Filter itself.

Meanwhile, Plaintiffs do not seek to hold Snap liable for any user content. After
all, Morby and Brown were not injured by an offensive or defamatory post by a user
on Snapchat. Rather, Morby and Brown died because they were in a high-speed crash,
and the dangerous speeding was motivated by Snap's Speed Filter.

When presented with similar allegations by injured parties that the defendants
themselves created the tortious content, courts have consistently held that the CDA
does not bar the claims. *See, e.g.*, *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801
(N.D. Cal. 2011) (finding that the defendant "ignores the nature of Plaintiffs'
allegations," "which accuse Defendant not of publishing tortious content," "but rather
of creating and developing [tortious] content").

In fact, the exact arguments made here by Snap have already been expressly
rejected by an appellate court reviewing whether the CDA immunizes Snap from
liability for its Speed Filter. In *Maynard v. Snapchat, Inc.*, 816 S.E.2d 77 (Ga. Ct.
App. 2018), the Georgia Court of Appeals found that the CDA did not apply because
the plaintiffs "**seek to hold Snapchat liable for its own conduct**," *i.e,* "the creation
of the Speed Filter." *Id.* at 81 (bolding added).

In response, Snap tries to avoid *Maynard* in two ways, both of which fail.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

*First*, in *Maynard*, no post was actually finished by anyone in the vehicle before the crash. Christal McGee said "'I'm about to post it," but then she crashed into the back of the Maynards' car before she could hit send. *Id.* at 79. Based on that fact, Snap then argues that, because Landen Brown did successfully post to Snapchat before the crash, *Maynard* is distinguishable.

But Snap misses the point entirely. The reason the CDA did not apply in *Maynard* and does not apply here is because the *posts* are not the basis for the claims. Neither the plaintiffs in *Maynard* nor Plaintiffs here were injured by any post. They were injured by the dangerous speeding encouraged by the Speed Filter, and whether a post was or was not sent before the crash has nothing to do with their injuries.

This is confirmed by the reasoning used by the Georgia Court of Appeals. In distinguishing many of the same cases Snap cites here, it explained that:

> In *Barnes*, *Fields*, and *Backpage.com*, **the publication of a third-party user's post caused the harm**, and the claims depended on the content of the posts themselves. In the instant case, on the other hand, there was no third party content uploaded to Snapchat at the time of the accident **and the Maynards do not seek to hold Snapchat liable for publishing a Snap by a third-party that utilized the Speed Filter.**

*Id.* at 80 (bolding and underlining added, citations omitted).

It is further confirmed by the only other court, thus far, to have analyzed how the CDA may apply to Snapchat:

> *Maynard* **dealt with affirmative conduct by Snapchat** in the interface of the application's design that allowed a "filter" to be utilized by a third-party. **The filter, of which Snap was the author, had a direct correlation to the incident** which resulted in serious personal injury suffered by the plaintiff in that case**.**

*Grossman v. Rockaway Twp.*, No. MRS-L-1173-18, 2019 WL 2649153, at *14 (N.J.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Super. Ct. June 10, 2019) (bolding added).

Were there any remaining question on this issue, this Court need only consider the absurdity of Snap's position. According to Snap, the CDA provides immunity here because Brown hit send before they crashed into a tree, whereas the CDA would provide no immunity here if they had crashed into the tree before Brown hit send. Snap cannot identify any relevant purpose of the CDA that would be served by this immaterial distinction. That is because the CDA has nothing to do with whether a post is *made* but rather on whether the claim depends on the *content* of the post.

*Second*, Snap argues that "*Maynard* was wrongly decided" because the CDA "broadly" applies to liability for any "publication decisions." Doc. 31 at 35 n.8, 31.

But binding Ninth Circuit precedent rejects this over-broad approach to CDA immunity, and it is the same authority upon which the Georgia Court of Appeals persuasively relied in *Maynard*. As the Ninth Circuit Court explains, "[p]ublishing activity is a but-for cause of just about everything [Snap] is involved in." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016). "**It is an internet publishing business**." *Id.* (bolding added). Yet, "Congress has not" given a "get-out-of-jail-free card" for "businesses that publish user content on the internet." *Id.*

Because Snap itself created the Speed Filter, and Plaintiffs seek to hold Snap liable only for the Speed Filter and not for the user content of any post, *Maynard* was correctly decided and the CDA does not immunize Snap here.

## Conclusion

For those reasons, this Court should deny Snap's motion to dismiss.

1807855.1

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1    Dated: September 30, 2019

2    **/s/ Naveen Ramachandrappa**

3

4    Thomas M. Dempsey (Cal. Bar No. 43311)
     tdempseylaw@aol.com
5    THE LAW OFFICES OF THOMAS M. DEMPSEY
     433 N Camden Dr, Ste 370
6    Beverly Hills, CA 90210
     Tel: 310-385-9600
7    Fax: 310-273-7679

8    Naveen Ramachandrappa (Ga, Bar No. 422036)
     *pro hac admitted*
9    ramachandrappa@bmelaw.com
     BONDURANT, MIXSON & ELMORE, LLP
10   1201 W Peachtree St NW, Ste 3900
     Atlanta, GA 30309
11   Tel: 404-881-4100
     Fax: 404-881-4111

12   Michael L. Neff (Ga. Bar No. 537180)
     *pro hac admitted*
13   D. Dwayne Adams (Ga. Bar. No. 140406)
     *pro hac admitted*
14   LAW OFFICE OF MICHAEL LAWSON NEFF PC
     3455 Peachtree Rd NE, Ste 509
15   Atlanta, GA 30326
     Tel: 404-531-9700
16   Fax: 404-531-9727

17   Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

1807855.1

Signature Page

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**