UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)          **Date:  October 30, 2019**
Title:      Carly Lemmon et al. v. Snap, Inc.

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                      Court Reporter:
          Rita Sanchez                       Not Reported

          Attorneys Present for Plaintiff:   Attorneys Present for Defendant:
          None Present                       None Present

**Proceedings (In Chambers):**        ORDER RE: MOTION TO DISMISS
                                      COMPLAINT [31]; DEFENDANT'S
                                      REQUEST FOR JUDICIAL NOTICE [32]

     Before the Court is Defendant Snap Inc.'s ("Snap") Motion to Dismiss
Complaint, filed on August 2, 2019.  (Docket No. 31).  On September 30, 2019,
Plaintiffs Carly Lemmon, et al. filed an Opposition.  (Docket No. 36).  On October 14,
2019, Defendant filed a Reply.  (Docket No. 40).

     The Court has read and considered the papers filed in connection with the
Motion, and held a hearing on October 28, 2019.

     For the reasons discussed below, the Motion is **GRANTED *with leave to
amend***.  Plaintiffs have not sufficiently alleged that there is a causal connection
between Defendant's Speed Filter and the car accident.  Moreover, as alleged, it is not
clear whether their claim is barred under the Communications Decency Act because
they have not sufficiently established that the Speed Filter is content-neutral.

## I.    BACKGROUND

     Plaintiffs commenced this action on May 23, 2019.  (Complaint (Docket No. 1)).

     The Complaint alleges the following facts, which the Court takes as true and
construes in the light most favorable to Plaintiffs.  *See, e.g.*, *Schueneman v. Arena
Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle
that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No. CV 19-4504-MWF (KSx)**          **Date: October 30, 2019**

Title:      Carly Lemmon et al. v. Snap, Inc.

Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

This is a civil action arising out of a car accident that occurred on May 28, 2017. (Compl. ¶ 1). Shortly before 7 p.m., seventeen-year-old Jason Davis was driving on Cranberry Road in Walworth County, Wisconsin. (*Id.* ¶ 38). Hunter Morby and Landen Brown were passengers in the vehicle. (*Id.* ¶ 39). The car crashed into a tree, and all three boys were killed. (*Id.* ¶ 45). Plaintiffs allege that Snapchat was a critical cause of the accident. (*Id.* ¶ 1).

Prior to the accident at issue in this case, one or more of the boys had downloaded the Snapchat app to their mobile phones. (*Id.* ¶ 40). At some point before the accident, twenty-year-old Landen Brown opened his Snapchat app. (*Id.* ¶ 41). Shortly before 7 p.m., the car accelerated to a speed significantly above the speed limit. (*Id.* ¶ 44). One "Snap" captured the passengers' speed as 123 miles per hour. (*Id.* ¶ 45). Driving at an excessive speed, the car ran off the road and crashed into a tree. (*Id.* ¶ 46). The car burst into flames, and all three passengers were killed. (*Id.*). Walworth County Sheriff investigators estimated speed of the vehicle was 113 miles per hour at the time of the crash. (*Id.* ¶ 48). Plaintiffs allege that the passengers were motivated to drive at excessive speeds in order to obtain recognition and to share their speed through Snapchat, and that Snapchat encouraged and facilitated the boys' excessive speeding. (*Id.* ¶¶ 42, 43).

Carly Lemmon and Michael Morby are residents of Wisconsin and the parents of Hunter Morby. (*Id.* ¶ 2). They assert claims for wrongful death as the surviving parents of Hunter Morby. (*Id.*). Michael Morby also asserts, as administrator of the estate, claims for his son's personal injuries. (*Id.*).

Samantha Brown and Marlo Brown are residents of Wisconsin and the parents of Landen Brown. (*Id.* ¶ 3). They assert claims for wrongful death as the surviving parents of Landen Brown. (*Id.*). Marlo Brown also asserts, as administrator of the estate, claims for his son's personal injuries. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No. CV 19-4504-MWF (KSx)**                **Date:  October 30, 2019**

Title:      Carly Lemmon et al. v. Snap, Inc.

Snap is a corporation located in California.  (*Id.* ¶ 4).  It is a social media company that supplies consumers with products focused on mobile photos and videos.  (*Id.* ¶ 8).  Snap's products allow users to create, upload, post, send, receive, share, and store digital content.  (*Id.*).  Snap's primary social media product is its mobile application, Snapchat, which in turn has numerous products and features contained within it.  (*Id.*).

Once downloaded, Snapchat continues to download and install upgrades, updates, or other new features directly to its users.  (*Id.* ¶ 9).  For some time before May 28, 2017, Snap created and distributed, within the Snapchat app, a feature that allows users to record their real-life speed, including as a driver or passenger, and overlay that speed onto a mobile photo or video.  (*Id.* ¶ 11).  Snapchat users can then share, on social media, that mobile photo or video with their real-life speed as a "Snap," which is Snapchat's messaging product.  (*Id.* ¶ 12).

Snap rewards, in unknown, variable, and changing ways, users who consumer Snapchat in excessive and dangerous ways.  (*Id.* ¶ 13).  Such rewards include trophies, streaks, and social recognition.  (*Id.*).  Snap knows or should know that its design has created extreme and addictive behaviors by its largely teenage and young-adult users, and indeed, has purposefully designed its products to encourage such behavior.  (*Id.*).

Snap knew or should have known that, prior to May 28, 2017, many of its users have been driving, or were passengers in, cars at speeds of 100 m.p.h. or more because they want to use Snapchat to capture a mobile photo or video showing them hitting 100 m.p.h. and then share the Snap with their friends.  (*Id.* ¶ 15).  Plaintiffs allege that this is a game for Snap and many of its users, the vast majority of whom are teenagers and young adults.  (*Id.* ¶ 16).  Specifically, Plaintiffs provide the following explanation of the game: "Go as fast as you can until you hit 100 m.p.h., Snap a photo or video, and then share the 100-MPH-Snap on Snapchat."  (*Id.*).

Regardless of whether Snap intended to encourage dangerous speeding, Snap knew or should have known that it was, in fact, encouraging dangerous speeding, either by users while drivers or passengers.  (*Id.* ¶ 17).  Moreover, it was reasonably foreseeable that Snapchat would continue to motivate dangerous speeding.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)                    Date:  October 30, 2019**
Title:      Carly Lemmon et al. v. Snap, Inc.

Plaintiffs provide four illustrative examples of why Snap realized or should have realized that it was affecting the driving behavior of its users.  (*Id.* ¶ 18).

First, before September 201, a petition on www.change.org called on Snapchat to address its role in encouraging dangerous speeding.  (*Id.* ¶ 19).

Second, on September 10, 2015, Wentworth Maynard was catastrophically injured in Clayton County, Georgia, in a motor vehicle collision involving Snapchat.  (*Id.* ¶ 20).  In a lawsuit filed by Maynard against Christal McGee and Snap, Maynard alleges that McGee wanted to share a Snap showing how fast she was driving and she was driving at excessive speeds because of Snapchat.  (*Id.* ¶ 27).  McGee was going approximately 107 m.p.h. at impact with Maynard's car.  (*Id.* ¶ 29).  Maynard claims Snapchat facilitated McGee's excessive speeding because McGee was motivated to drive at an excessive speed to obtain recognition and to share her experience through Snapchat.  (*Id.* ¶ 28).

Third, in December 2015, a news report documented that three young women near Philadelphia, Pennsylvania were encouraged by Snapchat to drive at excessive speeds, and as a result, they crashed into a parked tractor-trailer.  (*Id.* ¶ 32).  All three died.  (*Id.*).  According to the news report, the victim's families say that Snapchat was used on the night of the car crash.  (*Id.* ¶ 33).

Fourth, in October 2016, a news report documented that two young people were driving near Tampa, Florida and using Snapchat.  (*Id.* ¶ 35).  The couple tracked their speed to over 115 m.p.h.  (*Id.*).  The couple lost control of their car and hit a minivan.  (*Id.*).  Five people died as a result of that car crash.  (*Id.*).

Despite its knowledge, Snap chose not to properly address the dangers it created.  (*Id.* ¶ 37).  Snap also did not remove or restrict access to Snapchat while users travelled at dangerous speeds or otherwise properly addressed the danger it created.  (*Id.* ¶ 51).  Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent given the probability and seriousness of the danger of excessive speeding, the limited or non-existent usefulness of using Snapchat to capture driving at dangerous and illegal speeds, and the limited or non-existent burden on Snapchat to eliminate the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)          Date:  October 30, 2019**
Title:      Carly Lemmon et al. v. Snap, Inc.

risks.  (*Id.* ¶ 52).  Furthermore, given Snap's actual or constructive knowledge of the danger, Snap's disclaimers are inadequate, unreasonable, and knowingly ineffective. (*Id.* ¶ 53).

Based on the following allegations, Plaintiffs bring a claim for negligence and seeks punitive damages.  (*Id.* ¶¶ 54-61).

## II.    <u>LEGAL STANDARD</u>

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)                 Date:  October 30, 2019**
Title:       Carly Lemmon et al. v. Snap, Inc.

amended) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the
Complaint indicate that there are two alternative explanations, only one of which
would result in liability, "plaintiffs cannot offer allegations that are merely consistent
with their favored explanation but are also consistent with the alternative explanation.
Something more is needed, such as facts tending to exclude the possibility that the
alternative explanation is true, in order to render plaintiffs' allegations plausible."
*Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

## III.  **DISCUSSION**

### A.  **Request for Judicial Notice**

Along with his Motion, Defendant filed a Request for Judicial Notice ("RJN")
on August 2, 2019.  (Docket No. 32).  On September 30, 2019, Plaintiffs filed an
Opposition.  (Docket No. 37).  On October 14, 2019, Defendant filed a Reply.  (Docket
No. 39).

Under Rule 12(d) of the Federal Rules of Civil Procedure, if the Court considers
matters outside the pleadings in ruling on a motion to dismiss that motion must be
converted into one for summary judgment. Fed. R. Civ. P. 12(d).  As a general rule, "a
district court may not consider any material beyond the pleadings in ruling on a Rule
12(b)(6) motion."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An
exception to this general rule exists for (1) materials that are attached to or necessarily
relied upon in the complaint, and (2) matters of public record.  *Id.* at 688-89.

In the RJN, Defendant requests that the Court take judicial notice of three
documents: (1) Snapchat's pop-up warning that appeared on or before May 28, 2017,
when a user first opened the speedometer-function filter on the app (the "Speed Filter")
(Docket No. 33-1); (2) Snapchat's pop-up warning that appeared on or before May 28,
2017, when a user exceeded 15 m.p.h. while using the Filer (Docket No. 33-2); and (3)
Snap, Inc.'s Terms of Service in effect on or before May 28, 2017 (Docket No. 33-3).

Defendant argues that the three documents are incorporated by reference in
Plaintiff's Complaint because Plaintiffs allege in the complaint that "Snap's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  October 30, 2019
Title:      Carly Lemmon et al. v. Snap, Inc.

disclaimers—are inadequate, unreasonable, and knowingly ineffective" but does not describe any of the warnings.  (Compl. ¶¶ 53, 56).  Defendant also asserts that the authenticity of the warnings are not in question because the concurrently filed declaration attests to the fact that these were these warnings in effect and that would have appeared on the version of the Snapchat app at issue here at the time of the accident.  (RJN at 3; Declaration of Phong Le ("Le Decl.") ¶¶ 6-8 (Docket No. 33)).

Plaintiffs oppose the RJN.  Plaintiffs first argue that Plaintiffs' claims do not depend on any of the documents, and thus, are not incorporated by reference.  (Opp. to RJN at 1).  Plaintiffs also raise objections to each individual document.  As to the first two documents, Plaintiffs argue that Le does not have personal knowledge of what actually appeared on the Snapchat app and further assert that they "have good-faith reasons to question Snap's beliefs as to what should have appeared in its app versus what actually appeared in its app." (*Id.* at 1).  Plaintiffs also object to the Court taking judicial notice of Snap's Terms of Service because Le does not identify how and when the users agree the terms and whether it is done in a legal manner.  (*Id.* at 2).

Plaintiffs' objections are overruled for these reasons:

***First***, Snapchat's warnings have been incorporated by reference because the complaint challenges their adequacy.  As Defendant correctly points out, courts routinely incorporate warnings in such a situation.  *See e.g., Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1214 (N.D. Cal. 2014) ("[The plaintiff] directly challenges the sufficiency of the FDA-approved warnings and the contents of those warnings are thus incorporated in his complaint."); *Altman v. HO Sports Co., Inc.*, No. 1:09-CV-1000 AWI (SMS), 2009 WL 4163512, at *8 (E.D. Cal. Nov. 23, 2009) (taking judicial notice of a warning label because "[the plaintiff] does not sufficiently question the authentication of the warning" and "the warning itself forms the basis for one of [the plaintiff's] strict liability theories.").

***Second***, Plaintiffs' challenge of the authenticity of Snapchat's pop-up warnings is not persuasive.  "Authenticity for incorporation by reference means the same thing as it does in Federal Rule of Evidence 901: whether a document is what its proponent claims it is." *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, No. SA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**                    **Date:  October 30, 2019**
Title:       Carly Lemmon et al. v. Snap, Inc.

CV 15-0736-DOC (DFMx), 2016 WL 6892140, at *23 (C.D. Cal. Nov. 22, 2016) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012)). Objections to incorporation by reference must be on legally cognizable grounds. *See Davis*, 691 F.3d at 1161 (holding that a party's objection to incorporation by reference because he had not seen the documents before was not related to authenticity and was therefore not a valid objection).

Here, Defendant has adequately established authenticity of the three documents. Along with the RJN, Defendant produced a declaration by Phong Le, who is a software engineering manager at Snap and has personal knowledge of Snapchat app, including its Speed Filter and the Snap's Terms of Service.  (Le Decl. ¶¶ 2-4).  He also declared that he has personal knowledge of the warnings that appear when the Filer is opened by the Snapchat user, including the warning that appeared on version 10.9 of the app, which was the version that Plaintiff Brown had on May 28, 2017.  (*Id.* ¶ 5).  He further declared that the screenshots provided as Exhibits A and B are "true and correct copy of a screen shot" of the warnings that appear when a user first opened the [Speed] Filter or when a user's speed exceeded 15 m.p.h. on Snapchat version 10.9.  (*Id.* ¶¶ 6, 7).  He also declared that all Snapchat users must agree to Snap's Terms of Service before using the Snapchat app.  (*Id.* ¶ 8).

The Le Declaration is sufficient to authenticate the documents under Federal Rule of Evidence 901.  *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1154 (C.D. Cal. 2002) (declarations that printouts were "true and correct" copies of internet pages, "in combination with circumstantial indicia of authenticity (such as the dates and web addresses)" would support reasonable juror belief that documents are what proponent claims).

Therefore, The RJN is **GRANTED**.  The Court will take judicial notice of the three documents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**                **Date:  October 30, 2019**
Title:     Carly Lemmon et al. v. Snap, Inc.

### B.    Choice of Law

As a threshold matter, the parties dispute which state's substantive law should apply in this matter.

"In diversity jurisdiction cases, such as this one, [courts] apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015) (internal quotation marks and citation omitted).  Plaintiffs brought the action in the Central District of California.  Accordingly, California's choice-of-law governs.

California applies the governmental interest approach.  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87, 105 Cal. Rptr. 3d 378 (2010).  "In brief outline, the governmental interest approach generally involves three steps."  *Id.*  "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different."  *Id.*  "Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists."  *Id.*  "Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state [citation] and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied."  *Id.* (internal quotation marks and citation omitted).

Here, the parties disagree on whether California law or Wisconsin law should apply under the governmental interest approach.  However, at the hearing, both parties agreed that this choice-of-law dispute does not materially affect the Court's analysis for the purposes of deciding this motion because the two state laws are substantially same for the two elements of negligence currently at issue: duty and causal connection.

Accordingly, the Court does not determine which state's substantive law applies for the negligence claim at this stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**              **Date:  October 30, 2019**
Title:      Carly Lemmon et al. v. Snap, Inc.

### C.      Failure to Allege a Negligence Claim

Defendant argues that Plaintiffs have failed to state a negligence claim.  To
prevail on a claim for negligence, a plaintiff must prove four elements: "(1) [a] duty of
care on the part of the defendant; (2) a breach of that duty; (3) a causal connection
between the conduct and the injury; and (4) an actual loss or damage as a result of the
injury."  *Martindale v. Ripp*, 246 Wis. 2d 67, 89, 629 N.W.2d 698 (2001).

Here, Defendant argues that Plaintiffs have failed to adequately allege that
Defendant owed a duty and that there was a causal connection between the Speed
Filter and the accident.

### 1.      Duty

Under Wisconsin law, "all persons have a duty of reasonable care to refrain from
those acts that unreasonably threaten the safety of others."  *Smaxwell v. Bayard*, 274
Wis. 2d 278, 298, 682 N.W.2d 923 (2004).  "This duty arises 'when it can be said that
it was foreseeable that his act or omission to act may cause harm to someone.'"  *Id.*
(citation omitted).  "Thus, the existence of a duty hinges upon foreseeability."  *Id.*

Here, Defendant argues that it owes no duty as a matter of law because it was
not reasonably foreseeable that providing users with the Speed Filter would result in
harm.  (Mot. at 17).  According to Defendant, the Speed Filter is a tool that functions
as a speedometer; it simply overlays a user's speed on a snap that the user can share.
(*Id.*).  Although Plaintiffs allege that the Speed Filter incentivizes and encourages
speeding as part of a "game" between Snap and its users, Defendant argues that
Plaintiffs provide no factual support for these conclusions.  (*Id.* at 18).  To the extent
that Plaintiffs allege that a handful of accidents occurred relating to the app, Defendant
also argues that such evidence is not sufficient to establish more than a bare possibility
of injury given that Snapchat is an app with several hundred million users.  (Reply at
19).  According to Defendant, this is particularly so because it provided express
warnings of potential harm.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  October 30, 2019
Title:      Carly Lemmon et al. v. Snap, Inc.

In response, Plaintiffs argue that they have alleged the precise way in which Snapchat is linked to dangerous speeding; that it is a "game for Snap and many of its users, the vast majority of whom are teenagers and young adults" to snap and share the "100-MPH-Snap." (Compl. ¶ 16).  In addition, Plaintiffs assert that the Complaint include allegations relating to at least three other fatal or near-fatal car accidents that occurred because a driver or a passenger wanted to take a Snap with a high speed. (Opp. at 6-7 (citing Compl. ¶¶ 20-36)).

Moreover, Plaintiffs argue that Snap's warnings are not applicable here because Plaintiffs do not allege that the driver was using Snapchat.  Instead, the passenger was the one who was attempting to snap.  Accordingly, Plaintiffs argue that Snap's warning of "Please, DO NOT Snap and drive" was never violated.  (Opp. at 8).  Furthermore, Plaintiffs assert that they have alleged that any do-not-Snap-and drive warnings are "inadequate, unreasonable, and knowingly ineffective."  (*Id.* (citing SAC ¶ 53)).  Although not alleged in the Complaint, Plaintiffs argue in their Opposition that the warnings are not adequate because it only is provided when the user opens the Speed Filter and the language "Don't snap and drive" appears only in the bottom right-hand corner in small font, in a color that blends in with the background.  (*Id.*).

Taking all inferences in favor of Plaintiffs, the Court cannot determine that the harm from the Speed Filter was not foreseeable as a matter of law.  Plaintiffs allege that it was a "game" for Snap and its users to snap and share a 100 m.p.h. Snap.  Plaintiffs further assert that accidents have occurred as a result of users attempting to capture such a Snap.  Therefore, this is not a situation where there is only "bare possibility of injury." *Grube v. Moths*, 56 Wis. 2d 424, 433, 202 N.W.2d 261 (1972).  Moreover, although Defendant argues that Snapchat's warnings make the harm less foreseeable, Plaintiffs challenge such an assertion because the warnings only cautioned against a driver from using Snapchat and because the warnings were inadequate.  These are factual questions that the Court cannot determine as a matter of law.

Accordingly, the Court concludes that Plaintiffs have sufficiently alleged a duty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                   Date:  October 30, 2019
Title:      Carly Lemmon et al. v. Snap, Inc.

## 2.    Causal Connection

"The test of cause-in-fact is whether the negligence was a 'substantial factor' in producing the injury." *Cefalu v. Cont'l W. Ins. Co.*, 285 Wis. 2d 766, 774–75, 703 N.W.2d 743 (2005) (citation omitted).  "The phrase, 'substantial factor,' denotes that the conduct has such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular sense." *Id.*  "There may be several substantial factors in any given case." *Id.*  "To prove that a tortfeasor's negligence was a substantial factor in producing a plaintiff's injuries, it must be shown that there was an 'unbroken sequence of events' where the negligence of the tortfeasor was actively operating at the time of the accident which produced the plaintiff's injury." *Id.* (citation omitted).

Defendant argues that Plaintiffs fail to allege that the Speed Filter was a substantial factor in causing the accident for several reasons.  (Mot. at 7).  First, Defendant argues that Davis's reckless speeding—not Snap's provision of the Speed Filter—caused the crash.  (*Id.* (citing Compl. ¶¶ 44, 46)).  Applying this principle, Defendant asserts that courts consistently have held that device manufacturers and app developers are not the cause of an accident where the harm results from a driver's misuse of their products while driving.  (*Id.* at 7 (citing cases)).  Second, Defendant argues that the Complaint does not allege sufficient facts of the causal connection between the Speed Filter and the accident.  (*Id.* at 8).  Defendant notes that the Complaint does not allege that the Speed Filter was active on anyone's phone at the time of incident; rather, it merely alleges that Brown, a passenger, opened Snapchat at some unspecified time prior to the accident and that at some point, a snap was taken showing a speed of 123 m.p.h.  (*Id.* at 8-9 (citing Compl. ¶¶ 44-45)).

Defendant also argues that Plaintiffs cannot establish liability based on the encouragement liability theory.  Defendant asserts that the Speed Filter is a neutral speedometer that merely allows a user to record and share his or her speed on Snapchat, and Plaintiffs do not allege any facts to support their claim that Snap "encouraged" excessive speeding here.  (*Id.* at 9).  Defendant reiterated this argument at the hearing.  And even if Plaintiffs could allege in sufficient detail that the Speed Filter encourages speeding, Defendant argues that courts have rejected such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)            Date:  October 30, 2019**

Title:      Carly Lemmon et al. v. Snap, Inc.

"encouragement liability" against manufacturers and held that the driver is solely responsible for reckless driving.  (*Id.* at 10).

In response, Plaintiffs note that there may be more than one substantial causative factor, and a persons' negligence need not be the sole primary factor.  (Opp. at 10).  Moreover, Plaintiffs argue that the cases Defendant cites in support of its claim that device manufacturers and app developers are not the cause of an accident are inapposite.  According to Plaintiffs, those are distracted driving cases where the plaintiffs claimed that mobile phone themselves are dangerous products; courts have held in such situations that device manufacturers are not the cause of a crash that results from a driver's misuse of their products while driving.  (Opp. at 10-11).  In contrast, Plaintiffs argue that they are not claiming that mobile phones or that Snapchat are necessarily dangerous; rather, the Speed Filter specifically is the danger.

Plaintiffs also argue that they can plead a direct causal connection even if they do not allege that the driver Davis used the Speed Filter; according to Plaintiffs, the issue is about the need to capture the 100-MPH-Snap regardless of who captures the Snap.  (Opp. at 13).  Plaintiffs further argue that they do not need to specify how much time passed between when Brown opened Snapchat and when the crash occurred; Plaintiffs argue that whether the use of Snapchat was or was not too far removed from the crash is a fact dispute.  (*Id.*).  Finally, Plaintiffs rebut Defendant's assertion that they cannot establish encouragement liability as a matter of law.  (*Id.* at 14).  Contrary to what Defendant has asserted, Plaintiffs assert that there are many cases where courts have recognized encouragement-liability despite the driver's negligence.  (*Id.*).  At the hearing, Defendant reiterated that this situation warrants a finding of encouragement liability because the Speed Filter is the driving force behind the users' decisions to speed.

Although it is a close call, the Court agrees with Defendant.  As a preliminary matter, Plaintiffs have not alleged sufficient details to demonstrate that the Speed Filter was used close in time to the accident.  Although Plaintiffs suggest in their Opposition that the crash occurred "within minutes" of the Snap, Plaintiffs acknowledge that they have not made such an allegation in the Complaint.  (*See* Opp. at 14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                Date:  October 30, 2019
Title:       Carly Lemmon et al. v. Snap, Inc.

Moreover, although Plaintiffs can allege liability based on the encouragement theory, they have not alleged sufficient facts to establish that Defendant actually encouraged speeding.  *See Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 47, 539 P.2d 36 (1975) (upholding a finding of negligence against a radio station because its broadcast of a giveaway contest "generate[d] a competitive pursuit on public streets, [which was] accelerated by repeated importuning by radio to be the very first to arrive at a particular destination.").  Although Plaintiffs hint that Defendant have encouraged the users to speed by providing certain "rewards, in unknown, variable and changing ways," such an allegation is too vague and speculative.

Because the Court concludes that Plaintiffs have not sufficiently alleged a causal connection, it does not examine whether Plaintiffs failed to adequately allege a negligence claim for additional reasons.

### D.    **Communications Decency Act**

Defendant additionally argues that Plaintiffs' claim fails because it is barred by the Communications Decency Act ("CDA").  (Mot. at 19).

CDA provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1) (emphasis added).  "The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (internal quotations omitted).

The Ninth Circuit provides a three-prong test for Section 230 immunity.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009).  Immunity from liability exists for "(1) provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider."  *Id.* at 1100-01.  "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed."  *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**              **Date:  October 30, 2019**
Title:       Carly Lemmon et al. v. Snap, Inc.

Here, Plaintiffs only challenge the third prong.  Plaintiffs argue that they are not seeking to hold Defendant liable for another's content, but rather Defendant's own content, the Speed Filter.  (Opp. at 20).  Not surprisingly, Plaintiffs rely heavily on *Maynard v. Snapchat, Inc.*, 346 Ga. App. 131, 816 S.E. 2d 77 (Ga. Ct. App. 2018), which examined this exact issue and held that CDA immunity does not apply.

In *Maynard*, the plaintiffs brought an action against Snapchat, Inc. for negligence and loss of consortium to recover for injuries from a car accident that allegedly resulted from the use of Snapchat's Speed Filter.  *Id.*  at 131.  The trial court granted Snapchat's motion to dismiss because the CDA provided the defendant with immunity for its Speed Filter.  *Id.* at 133.  The Georgia Court of Appeals disagreed that the CDA provided the defendant with such immunity because the plaintiffs "d[id] not seek to hold Snapchat liable for publishing a Snap by a third-party that utilized the Speed Filter."  *Id.* at 136.  "Rather, [the plaintiffs] [sought] to hold Snapchat liable for its own conduct, principally for the creation of the Speed Filter and its failure to warn users that the Speed Filter could encourage speeding and unsafe driving practices."  *Id.* In fact, the plaintiffs pointed out that the other driver, Heather McGee, had not made an actual post to Snapchat prior to the car accident because she hit the plaintiff's car before she was able to post on Snapchat.  *Id.* at 132.  Therefore, the court held that "CDA immunity does not apply because there was no third-party user content published."  *Id.* at 136.

In response, Plaintiffs' arguments are belied by their Complaint; Plaintiffs' own complaint targets Defendant's decision to allow users to publish third-party content using the Filter rather than merely the Filter itself.  (Reply at 21).  Second, Defendant argues that *Maynard* is distinguishable because the court's analysis there focused on the fact that no Snap was published.  (*Id.* at 23).  Finally, to the extent that *Maynard* held that Defendant can be held liable for the Speed Filter, Defendant argues that this argument is foreclosed by the Ninth Circuit's decision *Dyroff*, which held that a plaintiff cannot "plead around" the CDA by challenging features – like the Speed Filter—as "content" themselves.  (*Id.* at 24).

In *Dyroff*, the plaintiff brought an action against an operator of the Experience Project website after her son died from heroin overdose.  934 F.3d at 1094.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  October 30, 2019
Title:       Carly Lemmon et al. v. Snap, Inc.

district court held that the defendant was immune from liability under Section 230 of the CDA, and the Ninth Circuit affirmed.  *Id.*  Experience Project was a social networking website made up of various online communities or groups where users anonymously shared their experiences and posted and answered questions.  *Id.*  The site did not limit or promote the types of experiences users shared.  *Id.*  The website allowed users to register anonymously, and recommended users to join certain groups based on the content of their posts and other attributes and sent email notifications when a user posted content to a group.  *Id.*  The plaintiff's son posted in a "heroin-related group" regarding where to purchase heroin, received an email notification regarding his post, and ultimately connected off the site to purchase heroin.  *Id.* at 1095.

The plaintiff in *Dyroff* argued that the CDA did not apply because she was trying to hold the website for its own "content" – namely, the recommendation and notification functions.  *Id.* at 1096.  The Ninth Circuit disagreed.  The court determined that the defendant "did not create content on Experience Project, in whole or in part" and that "its functions, including recommendations and notifications, were content-neutral tools used to facilitate communications."  *Id.*  In doing so, the court distinguished this case from *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

In *Roommates.com*, the Ninth Circuit held that Section 230 did not immunize a website, which matched people renting rooms with people looking for somewhere to live, from claims that it violated federal and state housing anti-discrimination laws by requiring subscribers to disclose, using dropdown menus and checkboxes, their sex, sexual orientation, and family status.  *Dyroff*, 934 F.3d at 1098 (citing *Roommates.com*, 521 F.3d at 1161-2, 1165).  However, Roommates.com affirmatively required users to disclose information related to protected classes through discriminatory questions and answer choices.  *Roommates.com*, 521 F.3d at 1169.

In contrast, the defendant in *Dyroff* did not require that users disclose that they were looking for heroin or other illegal drugs; rather, they were given something along the lines of blank text boxes.  *Dyroff*, 934 F.3d at 1099.  In other words, the plaintiff was "unable to allege that [the defendant] materially contributed to the content posted

CIVIL MINUTES—GENERAL                                                    16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No. CV 19-4504-MWF (KSx)**                    **Date: October 30, 2019**

Title:       Carly Lemmon et al. v. Snap, Inc.

on Experience Project that led to [the plaintiff's son's] death" by "requir[ing] users to post specific content, mak[ing] suggestions regarding the content of potential user post, or contribut[ing] to making unlawful or objectionable user posts." *Id*. Accordingly, the Ninth Circuit held that the defendant was entitled to immunity under Section 230 as a publisher of third-party context.

Here, the critical issue is whether the Speed Filter should be considered content-neutral or not. In other words, the parties dispute whether the Speed Filter is more like dropdown menus and checkboxes, which affirmatively requires subscribers to disclose certain content, or more like a blank text boxes, which imposes no similar restrictions. At the hearing, Plaintiffs argued that the Speed Filter is more like the former because it is the filter itself that is encouraging people to speed and capture a high-speed Snap. Defendant emphasized, however, that the Speed Filter is a content-neutral tool that merely allows people to measure and share the speed in a lot of harmless settings – such as on a plane or on a train. Based on the facts alleged, the Court cannot determine the issue as a matter of law. Because the Court is granting Plaintiffs leave to amend, however, they are encouraged to further explain how the Speed Filter itself is encouraging users to speed and snap such content.

## IV.    **CONCLUSION**

For the reasons discussed above, Defendant's Motion is **GRANTED** *with leave to amend*.

Plaintiffs may file a First Amended Complaint on or before **November 18, 2019**. Defendant shall file a response by no later than **December 2, 2019**.

IT IS SO ORDERED.