Thomas M. Dempsey (Cal. Bar No. 43311)
tdempseylaw@aol.com
THE LAW OFFICES OF THOMAS M. DEMPSEY
433 N Camden Dr, Ste 370
Beverly Hills, CA 90210
Tel: 310-385-9600
Fax: 310-273-7679

Naveen Ramachandrappa (Ga. Bar No. 422036)
*pro hac admitted*
ramachandrappa@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

Michael L. Neff (Ga. Bar No. 537180)
*pro hac admitted*
D. Dwayne Adams (Ga. Bar. No. 140406)
*pro hac admitted*
LAW OFFICE OF MICHAEL LAWSON NEFF PC
3455 Peachtree Rd NE, Ste 509
Atlanta, GA 30326
Tel: 404-531-9700
Fax: 404-531-9727

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLY LEMMON AND MICHAEL MORBY, as surviving parents of Hunter Morby (deceased); MICHAEL MORBY, as administrator of the estate of Hunter Morby (deceased); SAMANTHA AND MARLO BROWN, as surviving parents of Landen Brown (deceased),<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC. (doing business in California as Snapchat, Inc.),<br><br>Defendant. | Case No. 2:19-cv-04504-MWF-KS<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Table of Contents**

Introduction ........................................................................................................... 1

Parties, Jurisdiction, And Venue .......................................................................... 2

Factual Allegations ............................................................................................... 3

Count 1 – Negligence ......................................................................................... 11

Count 2 – Punitive Damages .............................................................................. 11

Request For Relief .............................................................................................. 12

Demand For Jury Trial ....................................................................................... 12

**Introduction**

1. This is a civil action against Snap, Inc., in which Cary Lemmon, Michael Morby, Samantha Brown, and Marlo Brown assert claims for negligence and punitive damages against Snap for its mobile phone application, known as Snapchat, and specifically, the Snapchat Speed Filter.

2. The claims in this action are not about distracted-driving, where the claim is that mobile phones themselves are dangerous and requests that the entire mobile phone industry be dramatically overhauled to avoid the risk that drivers may be distracted while they are texting.

3. Rather, the claims here are about how the Speed Filter in particular is a grossly dangerous and useless product – one that has, for years, repeatedly and foreseeably caused fatal and near-fatal wrecks, while providing no social benefit and which could be removed altogether with no meaningful cost.

4. Yet, despite knowledge of a near-fatal crash in September 2015 in Georgia, three deaths from a crash in December 2015 in Pennsylvania, five deaths from a crash in October 2016 in Florida, and repeated calls from safety advocates and others to remove the Speed Filter, Snap has refused and has stubbornly continued to maintain the Speed Filter without regard for the consequences.

5. It should be no surprise then that the deadly consequences continue.

6. On May 28, 2017, three boys – Hunter Morby (17-years-old), Landen Brown (20-years-old), and Jason Davis (17-years-old) – were all burned to death in the inside of a car after they lost control going at speeds over 100 MPH, flew off the road, and crashed head-first into a tree. The crash and fire was so severe that they had to be identified by their dental records.

7. What prompted the boys to drive at such dangerous speeds?

8. The same thing that contributed to the September 2015 crash in Georgia, the December 2015 crash in Pennsylvania, the October 2016 crash in Florida, and

**AMENDED COMPLAINT**

many other incidents of dangerous speeding – the Speed Filter.

9. "[They] were 'Snapping' their speed. The miles per hour feature, included on the Snapchat app, allows users to post videos, in some cases showing their dangerous pace."[1]

10. The Speed Filter "incentivizes somebody to do something they know is not safe, but they do it anyway for the sake of the picture or video."[2]

11. As one college student explains, "'[y]ou want to see how fast you can get, so when you get to open lanes, you just kick it.'"[3]

12. As a result, Snap has knowingly created a dangerous game for many of its users, the vast majority of whom are teenagers and young adults.

13. Go as fast as you can until you hit 100 MPH, Snap a photo or video, and then share the 100-MPH-Snap on Snapchat.

14. The danger is not the Snap itself. Obviously, no one is harmed by the post. Rather, the danger is the speeding.

15. The danger is influence that Snapchat has on teenage and young-adult drivers. It is "instigating the user to get up to a dangerous speed,"[4] and it is that motivating effect and the foreseeably dangerous consequences that this case is about.

16. For those reasons, and the wrongful deaths, personal injuries, and other losses they have suffered because of the deaths of their young sons, the surviving parents of Hunter Morby and Landon Brown have brought this civil action.

## Parties, Jurisdiction, And Venue

---

[1] https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/
[2] https://www.tampabay.com/news/publicsafety/accidents/snapchat-video-appears-to-show-driver-going-115-mph-on-night-of-crash-that/2300400
[3] https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/.
[4] *Id.*

17. Carly Lemmon and Michael Morby are residents of Wisconsin and the parents of Hunter Morby, a deceased passenger in the wreck. They assert claims for wrongful death as the surviving parents of Hunter Morby, and Michael Morby also asserts, as administrator of the estate, claims for his son's personal injuries.

18. Samantha Brown and Marlo Brown are residents of Wisconsin and were parents of Landen Brown, a deceased passenger in the wreck. They assert claims for wrongful death as the surviving parents of Landen Brown, and Marlo Brown also asserts, as administrator of the estate, claims for his son's personal injuries.

19. Snap, Inc. (doing business in California as Snapchat, Inc.) created, distributed, and maintains mobile technology products and services that were a critical cause of the automobile wreck that killed Hunter Morby and Landen Brown.

20. Snap, Inc. is a United States corporation, with its headquarters located at 2772 Donald Douglas Loop North, Santa Monica, CA 90405. Snap, Inc. was originally served through its California registered agent Corporation Service Company (doing business in California as CSC – Lawyers Incorporating Service) at 2710 Gateway Oaks Dr Ste 150N, Sacramento, CA 95833. Snap, Inc. is and can now be served through its counsel of record for this action, Jonathan Blavin, MUNGER, TOLLES & OLSON LLP, 560 Mission St, 27th Fl, San Francisco, CA 94105-2907.

21. The Court has diversity jurisdiction because the parties have diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (a)(1).

22. Venue is proper in this Court because Snap, Inc. resides in this district. Alternatively or additionally, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim – *i.e.*, the negligence involving the initial design and continued use of the Speed Filter – occurred in this district.

23. For the same reason, California law may govern many parts of the claims asserted in this action.

**Factual Allegations**

3 of 12
**AMENDED COMPLAINT**

24. **General Background**. Snap is a social media company that supplies consumers with products focused on mobile photos and videos. Snap's products allow users to create, upload, post, send, receive, share, and store digital content. Snap's primary social media product is its mobile application, Snapchat, which in turn has numerous products and features contained within it.

25. For some time before May 28, 2017, Snap created and distributed, within the Snapchat app, a feature that allows users to record their real-life speed, including as a driver or passenger, and overlay that speed onto a mobile photo or video. This feature is known as the Speed Filter.

26. Snapchat users can then share, on social media, that mobile photo or video with their real-life speed as a "Snap," which is Snapchat's messaging product.

27. Snap rewards, in unknown, variable, and changing ways, users who consume Snapchat in excessive and dangerous ways. Such rewards include trophies, streaks, and social recognition. Snap knows or should know that its design has created extreme and addictive behaviors by its largely teenage and young-adult users. Indeed, Snap knowingly or purposefully designed its products to encourage such behaviors.[5]

28. "All the achievements and trophies in Snapchat are unknown to users," and "[y]ou don't even know about the achievement until you unlock it."[6]

---

[5] http://www.detroitbadboys.com/2014/12/8/7355721/andre-drummond-snapchat-speeding;
http://www.businessinsider.com/snapchat-score-perfect-example-of-what-ex-googler-calls-unethical-app-design-2016-5;
http://www.washingtonpost.com/sf/style/2016/05/25/13-right-now-this-is-what-its-like-to-grow-up-in-the-age-of-likes-lols-and-longing/;
https://medium.com/startup-grind/nir-eyal-why-you-are-addicted-to-facebook-slack-pinterest-468a86eb562;
https://www.vice.com/en_us/article/vv5jkb/the-secret-ways-social-media-is-built-for-addiction;
http://time.com/4049026/snapchat-live-stories/
[6] http://www.makeblogpost.com/2019/08/01/snapchat-trophies-and-achievements/

**AMENDED COMPLAINT**

29. However, Snap's teenage and young-adult users do not know that, and the fun of figuring out what you might win is precisely Snapchat's appeal.

30. "The easiest way to understand this ... is by imagining a slot machine."[7]

31. In other words, even if Snap does not actually reward its teenage and young-adult users any prizes or rewards or trophies for recording a 100-MPH-Snap, Snap's users do not know that. Many of them believe that they will be rewarded by recording a 100-MPH or faster Snap, or at the very least, they want to find out if they will be so rewarded and so they drive at excessive speeds to see what will happen.

32. On or before May 28, 2017, Snap knew or should have known that it was motivating, incentivizing, or otherwise encouraging its users to drive at excessive, dangerous speeds in violation of traffic and safety laws.

33. Specifically, Snap knew or should have known that, prior to May 28, 2017, that many of its users have been driving, or were passengers in, cars at speeds of 100 MPH or more because they want to use the Snapchat to capture a mobile photo or video showing them hitting 100 MPH and then share the Snap with their friends.

34. This is a game for Snap and many of its users, the vast majority of whom are teenagers and young adults. Go as fast as you can until you hit 100 MPH, Snap a photo or video, and then share the 100-MPH-Snap on Snapchat. As Snapchat knows or should have known, its users were putting themselves and others in harm's way in order to "capture a Snap."[8]

---

[7] https://www.vice.com/en_us/article/vv5jkb/the-secret-ways-social-media-is-built-for-addiction
[8] http://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/; http://www.youthforroadsafety.org/news-blog/news-blog-item/t/snapchat-and-driving-hellip-you-could-be-sending-your-last-snap; http://www.kmov.com/story/31407255/snapchat-video-possibly-linked-to-deadly-kansas-city-wreck; https://support.snapchat.com/en-US/a/filters;

**AMENDED COMPLAINT**

1  35. "[L]ooking at the speedometer in your car isn't as much fun" as
2  "capturing the car accelerating on camera and then sharing with all your friends."[9]

3  36. Snapchat "'incentivizes somebody to do something they know is not safe,
4  but they do it anyway for the sake of the picture or video.'"[10]

5  37. In the parlance of our times, they do it "for the likes."

6  38. For Snap's users, it is "the need to capture the perfect moment just at the
7  right time" and "they want to get that certain speed up" – i.e., the 100-MPH-Snap.[11]

8  39. Regardless of whether Snap intended to encourage dangerous speeding,
9  Snap knew or should have known that it was, in fact, encouraging dangerous
10 speeding, either by users while drivers or passengers, and that it was reasonably
11 foreseeable that Snapchat would continue to motivate dangerous speeding. In other
12 words, Snap did realize or should have realized that it was affecting the driving
13 behavior of teenagers and young adults and was creating an unreasonable risk of harm
14 to its users and the public.

15 40. As a result, even if Snap may not intend for its product to tell users to
16 "'go faster,'" nonetheless, this is the exact message its users receive. After learning
17 that her dead daughter's "'speed was on the phone from the app,'" one mother aptly
18 remarked that "'it's really horrible'" that "there is something out there to tell them
19 'Hey go faster.'"[12]

---

http://distracteddriveraccidents.com/the-most-dangerous-app-on-your-phone/
[9]https://www.knoxnews.com/story/opinion/columnists/angela-gosnell/2016/11/06/trending-dangers-snapchats-speed-filter/93160392/
[10]https://www.tampabay.com/news/publicsafety/accidents/snapchat-video-appears-to-show-driver-going-115-mph-on-night-of-crash-that/2300400
[11] https://www.wbur.org/hereandnow/2016/06/28/snapchats-speed-filter-car-crash
[12]http://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/;
http://www.youthforroadsafety.org/news-blog/news-blog-item/t/snapchat-and-driving-hellip-you-could-be-sending-your-last-snap;
http://www.kmov.com/story/31407255/snapchat-video-possibly-linked-to-deadly-

41. There are many examples of why Snap did realize or should have realized that it was affecting the driving behavior of its users and was creating an unreasonable risk of harm to its users and the public.

42. "This is horrifying, but it isn't the first incident in which Snapchat's speed filter has been called into question after a car accident."[13]

43. Four such examples including the following.[14]

44. **Online Petitions**. Before September 2015, a petition on www.change.org called on Snapchat to address its role in encouraging dangerous speeding.

45. **September 2015 Georgia Incident**. On September 10, 2015, Wentworth Maynard was catastrophically injured in Clayton County, Georgia in a motor vehicle collision involving Snapchat.

46. At or around 10:15 PM on September 10, 2015, Christal McGee was driving a white Mercedes Benz on Tara Boulevard in Clayton County, Georgia with Heather Leigh McCarty, Kaylan Henderson, and Henry Daryl Williams riding as passengers.

47. McGee pushed the speed of her Mercedes to above 100 miles per hour.

48. According to an affidavit from Heather McCarty, when McCarty realized they were accelerating at a rapid speed, she asked McGee to slow down. McGee responded that "she was just trying to get the car to 100 m.p.h. to post it on Snapchat. She said 'I'm about to post it.'"

49. While McGee was driving at dangerous speeds, a grey Mitsubishi

---

kansas-city-wreck;
https://support.snapchat.com/en-US/a/filters;
http://distracteddriveraccidents.com/the-most-dangerous-app-on-your-phone/
[13] https://www.knoxnews.com/story/opinion/columnists/angela-gosnell/2016/11/06/trending-dangers-snapchats-speed-filter/93160392/
[14] This merely an illustrative example. Plaintiffs are not required to, nor do they assume the obligation to, plead *evidence* of Snap's knowledge.

Outlander, driven by Wentworth Maynard, entered Tara Boulevard going the same direction that McGee was heading at dangerous speeds.

50. Because she was driving at a dangerous speed, McGee either did not realize or could not react to the fact that the Mitsubishi had entered the road.

51. McGee's Mercedes then collided with a Mitsubishi Outlander driven by Wentworth Maynard.

52. In a lawsuit filed by Maynard against McGee and Snap, Maynard alleges that McGee wanted to share a Snap showing how fast she was driving, and she was driving at excessive speeds because of Snapchat.

53. Maynard claims Snapchat facilitated McGee's excessive speeding, including that McGee was motivated to drive at an excessive speed to obtain recognition and to share her experience through Snapchat.

54. McGee was going around 107 MPH at impact with Maynard's car:

55. As a result of the collision Maynard has a permanent brain damage.

56. Maynard contends that the compulsive effect Snapchat had on McGee was so strong that, after the crash with the Maynards, McGee's first impulse was to Snap and share a photo of herself, which she captioned "Lucky to be alive."

57. **December 2015 Pennsylvania Incident**. In December 2015, news reports document that three young women near Philadelphia, Pennsylvania were encouraged by Snapchat to drive at excessive speeds, and as a result, they crashed into a parked tractor-trailer, and all three died.

58. The news report "examines a popular smart phone app that may have played a role in a deadly car crash. It's called Snapchat, and the victim's families say it was being used the night three young lives ended in December in a fiery Philadelphia car crash."[15]

---

[15] https://6abc.com/technology/did-snapchat-play-role-in-deaths-of-3-young-women/1196846/

**AMENDED COMPLAINT**

59. "A witness on the scene said he could hear people screaming from inside the car, but he couldn't get to the vehicle due to the flames."[16]

60. **October 2016 Florida Incident**. In October of 2016, new reports document that two young people were driving a Volkswagen near Tampa, Florida and using Snapchat. The couple tracked their speed to over 115 m.p.h. The couple lost control of their car and hit a minivan, filled with a family coming home from church. The van burst into flames. Five people died as a result of that wreck.

61. The incident "added fuel to criticism leveled at SnapChat." "'It incentivizes somebody to do something they know is not safe, but they do it anyway for the sake of the picture or video.'" "'It's just instigating the user to get up to a dangerous speed and then post it online.'"[17]

62. **Hunter Morby and Landon Brown's Death in May 2017**. Despite its knowledge, Snap chose not to properly address the dangers it created.

63. Shortly before 7 PM local time, on May 28, 2017, seventeen-year-old Jason Davis was driving on Cranberry Road in Walworth County, Wisconsin.

64. Hunter Morby and Landen Brown were passengers in the vehicle, with Landen sitting in the front passenger seat, and Hunter in the back.

65. Prior to the wreck at issue in this case, one or more of the boys had downloaded the Snapchat app to their mobile phones.

66. At some point before the wreck, twenty-year-old Landen Brown opened his Snapchat app.

67. Snap encouraged and facilitated the boys' excessive speeding. Alternatively or additionally, Snap realized or should have realized that the boys were being motivated to drive at excessive speeds because of Snapchat.

---

[16] *Id.*

[17] https://www.tampabay.com/news/publicsafety/accidents/snapchat-video-appears-to-show-driver-going-115-mph-on-night-of-crash-that/2300400

68. Shortly before 7 PM on May 28, 2017, the car began accelerating to a speed significantly above of the speed limit.

69. One "Snap" captured the boys' speed at 123 miles per hour.

70. "[W]ithin minutes" of the 123-MPH-Snap, the car ran off the road and crashed into a tree.  The car burst into flames, and all three boys were killed.

71. The collision and the resulting fire were so severe, the victims had to be identified by dental records.

72. Walworth County Sheriff investigators estimated speed of the vehicle was 113 miles per hour at the time of the crash.

73. On and before May 28, 2017, Snap knew or should have known that certain users, particularly teenagers and young adults, were driving at excessive speeds, as motivated by Snapchat, and creating an unnecessary danger of physical harm and death.

74. On and before May 28, 2017, Snap knew or should have known that wrecks had occurred because Snapchat was encouraging dangerous speeding.

75. Despite Snap's knowledge of the danger of its product in encouraging driving at excessive speeds, Snap did not remove or restrict access to Snapchat while traveling at dangerous speeds or otherwise properly address the danger it created.

76. Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent given the probability and seriousness of the danger of excessive speeding, the limited or non-existent usefulness of using Snapchat to capture driving at dangerous and illegal speeds, and the limited or non-existent burden on Snapchat to eliminate the risks.

77. Furthermore, given Snap's actual or constructive knowledge of the danger and the probability and seriousness of the danger, Snap's disclaimers – are inadequate, unreasonable, and knowingly ineffective.

78. Among other things, "[i]f Snapchat actively discourages their community

**AMENDED COMPLAINT**

from using the filter while driving, then when are they supposed to use it? Was the filter created to be used by passengers only? There's no way to monitor that but even if that is the case, drivers are still ultimately going to be persuaded to top out their speed, hence creating a dangerous situation either way."[18]

79. In short, Snap's disclaimers and alleged warnings are "not enough." "[The] steps that should be taken are probably to take down some of these filters like the speed filter that doesn't really serve a direct purpose other than to have a user climb in excessive speed and capture it on video."[19]

## Count 1 – Negligence

80. Plaintiffs incorporate the Factual Allegations by reference and in support of count one, their claim of negligence.

81. Snap owed a duty to use ordinary care in designing, maintaining, and distributing its products and services.

82. Snap breached that duty because, among other things, it did not remove, abolish, restrict access to, or otherwise use reasonable care to address the danger of dangerous speeding created by Snapchat. Snap's initial and continued design decisions regarding Snapchat are unreasonable and negligent, and its disclaimers are also inadequate, unreasonable, and knowingly ineffective.

83. As a result of Snap's negligence, Landen Brown and Hunter Morby were killed and suffered personal injuries prior to their deaths.

84. Snap's acts render it liable to the Plaintiffs.

## Count 2 – Punitive Damages

85. Plaintiffs incorporate the Factual Allegations and Count One by reference

---

[18] https://www.knoxnews.com/story/opinion/columnists/angela-gosnell/2016/11/06/trending-dangers-snapchats-speed-filter/93160392/
[19] https://www.cbsnews.com/news/snapchat-speed-filter-growing-concern-car-crashes-distraction/

and in support of count two, their claim for punitive damages.

86. Because of Snap's willful misconduct, wantonness, or entire want of care raising the presumption of conscious indifference to the consequences, Plaintiffs ask that the jury award them punitive damages in order to penalize, punish, or deter Snap.

87. In particular, Snap's actual knowledge of prior dangerous wrecks and other knowledge of the danger is evidence of justifying an award of punitive damages.

## **Request For Relief**

88. Plaintiffs request the following relief: (a) that the summons and service of summons already performed continue to be recognized as lawful and valid; (b) that they be awarded a judgment against Snap, for the wrongful death of Landen Brown and Hunter Morby, for their personal injuries, and for any other compensatory damages in an amount determined by the enlightened conscience of a fair and impartial jury; (c) that they have a trial by jury; (d) that they be awarded punitive damages in an amount determined by the enlightened conscience of a fair and impartial jury; and (e) that they be granted such other and further relief as this Court may deem just and proper and as they are entitled to under the law.

## **Demand For Jury Trial**

89. Plaintiffs reiterate their demand for a jury trial on any issue so triable.

Dated: November 18, 2019

**/s/ Naveen Ramachandrappa**

Thomas M. Dempsey (Cal. Bar No. 43311)
tdempseylaw@aol.com
THE LAW OFFICES OF THOMAS M. DEMPSEY
433 N Camden Dr, Ste 370
Beverly Hills, CA 90210
Tel: 310-385-9600
Fax: 310-273-7679

Naveen Ramachandrappa (Ga, Bar No. 422036)
*pro hac admitted*
ramachandrappa@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

Michael L. Neff (Ga. Bar No. 537180)
*pro hac admitted*
D. Dwayne Adams (Ga. Bar. No. 140406)
*pro hac admitted*
LAW OFFICE OF MICHAEL LAWSON NEFF PC
3455 Peachtree Rd NE, Ste 509
Atlanta, GA 30326
Tel: 404-531-9700
Fax: 404-531-9727

Attorneys for Plaintiffs