UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

**Case No.**  CV 19-4504-MWF (KSx)          **Date:**  February 25, 2020
**Title:**      Carly Lemmon, et al. v. Snap, Inc.

**Present:**  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                              Court Reporter:
Rita Sanchez                               Not Reported

Attorneys Present for Plaintiff:           Attorneys Present for Defendant:
None Present                               None Present

**Proceedings (In Chambers):**   ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT [50]

Before the Court is Defendant Snap Inc.'s ("Snap") Motion to Dismiss the First Amended Complaint (the "Motion"), filed on December 16, 2019.  (Docket No. 50). On January 13, 2020, Plaintiffs Carly Lemmon, et al. filed an Opposition.  (Docket No. 56).  On January 27, 2020, Defendant filed a Reply.  (Docket No. 57).

The Court has read and considered the papers filed in connection with the Motion, and held a hearing on February 10, 2020.

For the reasons discussed below, the Motion is **GRANTED *without leave to amend***.  Plaintiff's claim is barred under the Communications Decency Act because the Speed Filter is a content neutral tool.

## I.     BACKGROUND

Plaintiffs commenced this action on May 23, 2019.  (Complaint (Docket No. 1)). Plaintiffs filed a First Amended Complaint ("FAC") on November 18, 2019.  (Docket No. 47).

The FAC alleges the following facts, which the Court takes as true and construes in the light most favorable to Plaintiffs.  *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the

---

**CIVIL MINUTES—GENERAL**                                            1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)**          **Date:  February 25, 2020**
**Title:     Carly Lemmon, et al. v. Snap, Inc.**

light most favorable' to the plaintiff") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

On May 28, 2017, seventeen-year-old Jason Davis was driving on Cranberry Road in Walworth County, Wisconsin.  (*Id.* ¶ 63).  Seventeen-year-old Hunter Morby and twenty-year-old Landen Brown were passengers in the vehicle.  (*Id.* ¶¶ 6, 64).  The car crashed into a tree, and all three boys were killed.  (*Id.* ¶¶ 6, 70).  Plaintiffs allege that Defendant's Speed Filter prompted the boys to drive at such dangerous speed.  (*Id.* ¶¶ 7, 8).

Prior to the accident at issue, one or more of the boys had downloaded Snapchat to their mobile phones.  (*Id.* ¶ 65).  At some point before the accident, twenty-year-old Brown opened his Snapchat app.  (*Id.* ¶ 66).  Shortly before 7:00 p.m., the car began accelerating to a speed significantly above the speed limit, and one "Snap" captured the boys' speed at 123 miles per hour.  (*Id.* ¶ 69).  "[W]ithin minutes" of the 123-MPH-Snap, the car ran off the road and crashed into a tree.  (*Id.* ¶ 70).  Walworth County Sheriff investigators estimated the speed of the vehicle to be 113 miles per hour at the time of the crash.  (*Id.* ¶ 72).  Plaintiffs allege that Snapchat was a critical cause of the accident.  (*Id.* ¶ 19).

Carly Lemmon and Michael Morby are residents of Wisconsin and the parents of Hunter Morby.  (*Id.* ¶ 17).  They assert claims for wrongful death as the surviving parents of Hunter Morby.  (*Id.*).  Michael Morby also asserts, as administrator of the estate, claims for his son's personal injuries.  (*Id.*).

Samantha Brown and Marlo Brown are residents of Wisconsin and the parents of Landen Brown.  (*Id.* ¶ 18).  They assert claims for wrongful death as the surviving parents of Landen Brown.  (*Id.*).  Marlo Brown also asserts, as administrator of the estate, claims for his son's personal injuries.  (*Id.*).

Snap is a corporation headquartered in California.  (*Id.* ¶ 20).  It is a social media company that supplies consumers with products focused on mobile photos and videos.  (*Id.* ¶ 24).  Snap's products allow users to create, upload, post, send, receive, share, and store digital content.  (*Id.*).  Snap's primary social media product is its mobile

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)          **Date:** February 25, 2020
**Title:**     Carly Lemmon, et al. v. Snap, Inc.

application, Snapchat, which in turn has numerous products and features contained within it. (*Id.*).

For some time before May 28, 2017, Snap created and distributed, within the Snapchat app, a feature that allows users to record their real-life speed, including as a driver or passenger, and overlay that speed onto a mobile photo or video. (*Id.* ¶ 25). This feature is known as the Speed Filter. (*Id.*). Snapchat users can then share, on social media, that mobile photo or video with their real-life speed as a "Snap," which is Snapchat's messaging product. (*Id.* ¶ 26).

Snap rewards, in unknown, variable, and changing ways, users who consume Snapchat in excessive and dangerous ways. (*Id.* ¶ 27). Such rewards include trophies, streaks, and social recognition. (*Id.*). Snap knows or should know that its design has created extreme and addictive behaviors by its largely teenage and young-adult users, and indeed, has purposefully designed its products to encourage such behavior. (*Id.*). All of the achievements and trophies in Snapchat are unknown to users, and users do not even know about the achievement until they unlock it. (*Id.* ¶ 28). The fun of figuring out what you might win is Snapchat's appeal. (*Id.* ¶ 29). In other words, even if Snap does not actually reward its teenage and young-adult users any prizes or rewards or trophies for recording a 100-MPH-Snap, Snap's users do not know that. (*Id.* ¶ 31). Many of them believe that they will be rewarded by recording a 100-MPH or faster Snap, or at the very least, they want to find out if they will be so rewarded. (*Id.*).

Snap knew or should have known that, prior to May 28, 2017, many of its users were drivers of, or passengers in, cars driven at speeds of 100 m.p.h. or more because they wanted to use Snapchat to capture a mobile photo or video showing them hitting 100 m.p.h. and then share the Snap with their friends. (*Id.* ¶ 33). Plaintiffs allege that this is a game for Snap and many of its users, the vast majority of whom are teenagers and young adults. (*Id.* ¶ 34). Specifically, Plaintiffs provide the following explanation of the game: "Go as fast as you can until you hit 100 m.p.h., Snap a photo or video, and then share the 100-MPH-Snap on Snapchat." (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 19-4504-MWF (KSx)           **Date:** February 25, 2020
**Title:**     Carly Lemmon, et al. v. Snap, Inc.

Regardless of whether Snap intended to encourage dangerous speeding, Snap knew or should have known that it was, in fact, encouraging dangerous speeding, either by users while drivers or passengers. (*Id.* ¶ 39). Even if Snap may not have intended for its product to tell users to "go faster," Plaintiffs allege that this is nonetheless the exact message its users receive. (*Id.* ¶ 40). Plaintiffs provide four illustrative examples of why Snap did realize or should have realized that it was affecting the driving behavior of its users. (*Id.* ¶ 41).

First, before September 2015, a petition on www.change.org called on Snapchat to address its role in encouraging dangerous speeding. (*Id.* ¶ 44).

Second, on September 10, 2015, Wentworth Maynard was catastrophically injured in Clayton County, Georgia, in a motor vehicle collision involving Snapchat. (*Id.* ¶ 20). On that day, Christal McGee was driving in Georgia with three other passengers. (*Id.* ¶ 46). McGee was going approximately 107 m.p.h. when she impacted Maynard's car. (*Id.* ¶ 54). Maynard claims Snapchat facilitated McGee's excessive speeding because McGee was motivated to drive at an excessive speed to obtain recognition and to share her experience through Snapchat. (*Id.* ¶ 53).

Third, in December 2015, a news report documented that three young women near Philadelphia, Pennsylvania, were encouraged by Snapchat to drive at excessive speeds, and as a result, they crashed into a parked tractor-trailer. (*Id.* ¶ 57). All three died. (*Id.*). According to the news report, the victims' families say that Snapchat was used on the night of the car crash. (*Id.* ¶ 58).

Fourth, in October 2016, a news report documented that two young people were driving near Tampa, Florida, and using Snapchat. (*Id.* ¶ 60). The couple tracked their speed to over 115 m.p.h. (*Id.*). The couple lost control of their car and hit a minivan. (*Id.*). Five people died as a result of that car crash. (*Id.*).

Despite its knowledge of the danger of its product in encouraging driving at excessive speeds, Snap did not remove or restrict access to Snapchat while traveling at dangerous speeds or otherwise properly address the danger it created. (*Id.* ¶ 75).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 19-4504-MWF (KSx) | Date:  February 25, 2020 |
| Title:     Carly Lemmon, et al. v. Snap, Inc. | |

Furthermore, Snap's warnings disclaimers are inadequate, unreasonable, and ineffective.  (*Id.* ¶¶ 77-79).

Based on the following allegations, Plaintiffs bring a claim for negligence and seeks punitive damages.  (*Id.* ¶¶ 80-87).

## II.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-4504-MWF (KSx) | **Date:** | February 25, 2020 |
| **Title:** | Carly Lemmon, et al. v. Snap, Inc. | | |

Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Id.* at 996–97; *see also Somers*, 729 F.3d at 960.

### III. <u>DISCUSSION</u>

#### A. <u>Request for Judicial Notice</u>

Along with its Motion, Defendant filed a Request for Judicial Notice ("RJN") on December 16, 2019. (Docket No. 51). On January 13, 2020, Plaintiffs filed an Opposition. (Docket No. 56). On January 27, 2020, Defendant filed a Reply. (Docket No. 58).

Under Rule 12(d) of the Federal Rules of Civil Procedure, if the Court considers matters outside the pleadings in ruling on a motion to dismiss that motion must be converted into one for summary judgment. Fed. R. Civ. P. 12(d). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An exception to this general rule exists for (1) materials that are attached to or necessarily relied upon in the complaint, and (2) matters of public record. *Id.* at 688-89.

In the RJN, Defendant requests that the Court take judicial notice of six documents. (*See* RJN at 1).

The first three documents relate to warnings and terms of service: (1) Snapchat's pop-up warning that appeared on or before May 28, 2017, when a user first opened the Speed Filter (Docket No. 33-1); (2) Snapchat's pop-up warning that appeared on or before May 28, 2017, when a user exceeded 15 m.p.h. while using the Speed Filter (Docket No. 33-2); and (3) Snap's Terms of Service in effect on or before May 28, 2017 (Docket No. 33-3). The Court has previously taken judicial notice of the three documents because they were incorporated by reference in Plaintiff's Complaint. (*See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-4504-MWF (KSx) | **Date:** | February 25, 2020 |
| **Title:** | Carly Lemmon, et al. v. Snap, Inc. | | |

Docket No. 44 at 6-8). For the reasons stated in the Court's prior order, the Court determines that the three documents are incorporated by reference in Plaintiff's FAC.

The next three documents are several articles that are quoted or referenced in the FAC. (Docket Nos. 53-1, 53-2, 53-3). Defendant asserts that Plaintiffs repeatedly refer to these articles and rely on them to support their argument that Defendant is liable for the accident here. (RJN at 4). Therefore, Defendant argues that the three articles are subject to judicial notice. (*Id.*).

In response, Plaintiffs do not dispute that they cited to the three articles. (Opp. to RJN at 1). Instead, they assert that there is no basis or reason for taking judicial notice of the articles because the Court is not deciding facts on a motion to dismiss. (*Id.*). The Court agrees with Plaintiffs with respect to these three articles; because the Court need not rely on the three articles in ruling on this Motion, the request for judicial notice with respect to the three articles is denied as moot.

Therefore, the RJN is **GRANTED** *in part* with respect to the terms of use and warnings and **DENIED** *in part* with respect to the three articles.

### B. Communications Decency Act

Defendant argues that Plaintiffs' claim fails because it is barred by the Communications Decency Act ("CDA"). (Mot. at 19-25).

CDA provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). "The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016) (internal quotations omitted).

The Ninth Circuit provides a three-prong test for Section 230 immunity. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009). Immunity from liability exists for "(1) provider or user of an interactive computer service (2) whom a plaintiff seeks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  February 25, 2020
Title:    Carly Lemmon, et al. v. Snap, Inc.

to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Id.* at 1100-01.  "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

As before, Plaintiffs appear to concede that the first two prongs apply and only challenge the third prong.  They argue that they are not seeking to hold Defendant liable for another's content, but rather Defendant's own content, namely the Speed Filter.  (Opp. at 22).  Therefore, Plaintiffs argue that the Court need not look at whether the Speed Filter is a "neutral tool."  (*Id.* at 23).  In response, Defendant argues that Speed Filter is not "content in and of [itself]," but is a content-neutral tool that facilitates the communication and content of others.  (Reply at 19).

As a preliminary matter, the Court rejects Plaintiffs' argument that the Court need not examine whether the Speed Filter is a neutral tool in light of the Ninth Circuit's decision in *Dyroff*.  There, the plaintiff similarly argued that the CDA did not apply to her claims because she was trying to hold the defendant website liable for its own "content" – namely, the recommendation and notification functions.  934 F.3d at 1096.  The Ninth Circuit rejected the plaintiff's argument because it determined that the defendant "did not create ***content*** on [the website], in whole or in part."  *Id.* (emphasis added).  Instead, the court held that the defendant's "functions, including recommendations and notifications, were ***content-neutral tools*** used to facilitate communications."  *Id.* (emphasis added).  In other words, the Court cannot simply presume that the Speed Filter *is* "content" because Plaintiffs allege that it is; rather, the Court must determine whether the Speed Filter is a "content-neutral tool" or "content."

In *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* (*Roommates*), the Ninth Circuit explained that a website operator does not become liable as an "information content provider" merely by "augmenting the content [of online material] generally." 521 F.3d 1157, 1167–68 (9th Cir. 2008) (en banc).  Rather, the website must contribute "***materially . . . to its alleged unlawfulness.***"  *Id.* at 1167-68 (emphasis added).  A website does not so "contribute" when it merely provides third parties with "***neutral tools***" to create web content, even if the website knows that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-4504-MWF (KSx) | Date: | February 25, 2020 |
| Title: | Carly Lemmon, et al. v. Snap, Inc. | | |

the third parties are using such tools to create illegal content. *See, e.g., id.* at 1169; *id.* at 1169, n. 24 (noting that where a plaintiff brings a claim "based on a website operator's passive acquiescence in the misconduct of its users," the website operator generally will be immune "even if the users committed their misconduct using tools of general availability provided by the website operator").

With this backdrop, the Ninth Circuit examined whether CDA immunity applied to three "functions" performed by the defendant Roommate, which operated a website designed to match people renting out spare rooms with people looking for a place to live. *Id.* at 1161, 1164-74. ***First***, Roommate posed questions about sex, family status, and sexual orientation to prospective subscribers, and the subscribers were required to answer these questions as a condition of using Roommate's service. *Id.* at 1164. The Ninth Circuit held that CDA immunity did not apply to this function because Roommate created the questions and choice of answers and forced subscribers to answer them. *Id*. ***Second***, Roommate developed and displayed the subscribers' discriminatory preferences. *Id.* at 1165. Although Roommate's subscribers provided the information at issue, Roommate developed, in part, the information because it required subscribers to provide the information as a condition of accessing its services and provided a limited set of pre-populated answers through drop-down menus. *Id.* at 1166. The Ninth Circuit therefore concluded that CDA immunity also did not apply to this function. *Id.* ***Third***, Roommate published the subscribers' discriminatory statements displayed in the "Additional Comments" section. *Id.* at 1173. Because Roommate presented "a blank text box," did not provide any specific guidance as to what the comments should contain, and did not urge subscribers to input discriminatory preferences, the Ninth Circuit determined that Roommate was not responsible, in whole or in part, for the development of this function. *Id.* at 1173-74.

In *Dyroff*, the Ninth Circuit further elaborated on this standard. There, the plaintiff brought an action against an operator of the "Experience Project" website after her son died from a heroin overdose. 934 F.3d at 1094. The website allowed users to register anonymously, recommended users to join certain groups based on the content of their posts and other attributes, and sent email notifications when a user posted content to a group. *Id.* The plaintiff's son posted in a "heroin-related group" regarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)          **Date:** February 25, 2020
**Title:** Carly Lemmon, et al. v. Snap, Inc.

---

where to purchase heroin, received an email notification regarding his post, and ultimately connected off the site to purchase heroin from a contact he made on the site. *Id.* at 1095.

The plaintiff argued that the CDA did not apply because she was trying to hold the website operator liable for its own "content" – namely, the recommendation and notification functions. *Id.* at 1096. Specifically, the plaintiff alleged that these features:

> (1) allowed users to traffic anonymously in illegal, deadly narcotics and to create groups dedicated to their sale and use; (2) steered users to additional groups dedicated to the sale and use of narcotics; (3) sent users alerts to posts within groups that were dedicated to the sale and use of narcotics; (4) permitted users to remain active accountholders despite evidence that they openly engaged in drug trafficking and that law enforcement had undertaken related investigations; and (5) demonstrated antipathy toward law enforcement efforts to stop illegal activity on Experience Project.

*Id.* at 1095.

The Ninth Circuit disagreed with the plaintiff. It held that the website operator was "immune from liability under the CDA because its functions, including recommendations and notifications, were content-neutral tools used to facilitate communications." *Id.* at 1096. In reaching this determination, the Circuit reasoned that the functions "most resemble the 'Additional Comments' features in *Roommates.com* in that Experience Project users . . . were not required to disclose that they were looking for heroin or other illegal drugs." *Id.* at 1099. "The recommendation and notification functions helped facilitate this user-to-user communication, but it did not materially contribute, as Plaintiff argues, to the alleged unlawfulness of the content." *Id*. In other words, because the "[p]laintiff cannot and does not plead that Ultimate Software ***required*** users to post specific content, ***made suggestions*** regarding the content of potential user posts, or ***contributed to making unlawful or objectionable user posts***[,] Ultimate Software [was] entitled to immunity

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 19-4504-MWF (KSx) | **Date:** | February 25, 2020 |
| **Title:** | Carly Lemmon, et al. v. Snap, Inc. | | |

under the plain terms of Section 230 and case law as a publisher of third-party content." *Id.* (emphasis added).

Applying this standard, district courts have held that the CDA does not protect website operators when "*it* created the tortious content." *Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1262–63 (N.D. Cal. 2006) (emphasis in original) (no CDA immunity where the defendant allegedly created false dating profiles to retain customers); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011) (no CDA immunity where the "[p]laintiffs allege[d] that Facebook create[d] content by deceptively mistranslating members' actions, such as clicking on a 'Like' button on a company's page, into the words 'Plaintiff likes [Brand],' and further combining that text with Plaintiff's photograph, the company's logo, and the label 'Sponsored Story.'"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1044 (N.D. Cal. 2014) (no CDA immunity where Plaintiffs alleged that Apple's iOS Human Interface Guidelines encouraged data theft and where the guidelines contained "several suggestions that do, on their face, appear to encourage the practices Plaintiffs complain of in this case").

In contrast, other courts have determined that CDA immunity applies where the website merely provides a framework that could be utilized for proper or improper purposes by the user. *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (CDA immunity applies to a dating website even though some of the content was formulated in response to the website's questionnaire because "the ***selection of the content was left exclusively to the user***") (emphasis added); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (CDA immunity applies where the plaintiff alleged that Google's suggestion tool, which used an algorithm to suggest specific keywords to advertisers, caused advertisers to post unlawful advertisements more frequently); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1269 (D.C. Cir. 2019) ("the defendants' translation of information that comes from the scam locksmiths' webpages – in particular, exact street addresses – into map pinpoints" does not take the defendants beyond the scope of section 230 immunity; "[t]he underlying information is entirely provided by the third party, and the choice of presentation does not itself convert the search engine into an information content provider").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | | |
|---|---|---|
| **Case No.** | CV 19-4504-MWF (KSx) | **Date:** February 25, 2020 |
| **Title:** | Carly Lemmon, et al. v. Snap, Inc. | |

The Court concludes that the Speed Filter is a neutral tool, which can be utilized for both proper and improper purposes. The Speed Filter is essentially a speedometer tool, which allows Defendant's users to capture and share their speeds with others. The Speed Filter can be used at low or high speeds, and Defendant does not require any user to Snap a high speed. While Plaintiffs allege that some users believe that they will be rewarded by recording a 100-MPH or faster Snap, they do not allege that Snap actually rewards its users for doing so. In fact, when a user first opens the Speed Filter, a warning appears on the app stating "Please, DO NOT Snap and drive." (RJN, Ex. A). When a user's speed exceeds 15 m.p.h., another similar warning appears on the app. (RJN, Ex. B). While a user might use the Speed Filter to Snap a high number, the selection of this content (or number) appears to be entirely left to the user, and based on the warnings, capturing the speed while driving is in fact discouraged by Defendant.

Plaintiffs argue that this case can be distinguished from other cases where CDA immunity applied because Plaintiffs are not seeking to hold Defendant liable for "any user content." (Opp. at 22). Plaintiffs reiterated this argument at the hearing. However, central to Plaintiffs' claim is that the users are using the Speed Filter to ***capture and share*** a 100-MPH or higher number Snap, *i.e.*, to create user content. (*See, e.g.*, FAC ¶ 33 ("Snap knew or should have known that, prior to May 28, 2017, that many of its users have been driving, or were passengers in, cars at speeds of 100 MPH or more because they want to use the Snapchat to ***capture*** a mobile photo or video showing them hitting 100 MPH and then ***share*** the Snap with their friends.); *id.* ¶ 35 ("'[L]ooking at the speedometer in your car isn't as much fun' as '***capturing*** the car accelerating on camera and then ***sharing*** with all your friends.'")). The Court cannot ignore the fact that the content itself, the 100-MPH-Snap (or other high-speed Snaps) is at the crux of Plaintiffs' claims. In other words, despite Plaintiffs' assertions to the contrary, it appears that Plaintiffs are seeking to hold Defendant responsible for failing to regulate what the users post through the Speed Filter; if the users were not motivated to capture their high speeds for content, they would not speed.

Moreover, the Court cannot meaningfully distinguish the situation here from other cases, which have similarly rejected the plaintiff's efforts to plead around the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)          **Date:** February 25, 2020
**Title:** Carly Lemmon, et al. v. Snap, Inc.

CDA requirement by alleging that the website's features promoted the users to engage in illegal conduct. *See, e.g., Jane Doe No. 1 v. Backpage.com, LLC,* 817 F.3d 12, 22 (1st Cir. 2016) ("We hold that claims that a website facilitates illegal conduct through its posting rules necessarily treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)."); *see also Roommates*, 521 F.3d at 1169 ("If an individual uses an ordinary search engine to query for a 'white roommate,' the search engine has not contributed to any alleged unlawfulness in the individual's conduct; providing *neutral* tools to carry out what may be unlawful or illicit searches does not amount to 'development' for purposes of the immunity exception.") (emphasis in original).

Plaintiffs also argued that the harm here was not caused by any user content. (Opp. at 24). However, as Defendant notes, this fact is not determinative. For example, in *Doe II v. MySpace Inc.*, the California Court of Appeal held that the "CDA applies even when the alleged harm actually resulted from conduct that occurred outside of the information exchanged, whether that information was actionable or not." 175 Cal. App. 4th 561, 573, 96 Cal. Rptr. 3d 148 (2009). Therefore, even though the plaintiffs there were harmed offline when they were sexually assaulted by people they met through the website, the court held that CDA immunity applied. Similarly, the Court concludes that CDA immunity applies even if Plaintiffs here were harmed by the users' conduct of speeding.

The Court is also guided by the Ninth Circuit, which has instructed courts to apply CDA broadly. "Websites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that ***something*** the website operator did encouraged the illegality." *Roommates*, 521 F.3d at 1174 (emphasis in original). "Such close cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Id.* In other words, "[w]here it is ***very clear*** that the website directly participates in developing the alleged illegality—as it is clear here with respect to Roommate's questions, answers and the resulting profile pages—immunity will be lost." *Id.* (emphasis added). "But in cases of ***enhancement by implication or***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

| | |
|---|---|
| Case No. CV 19-4504-MWF (KSx) | Date: February 25, 2020 |
| Title: Carly Lemmon, et al. v. Snap, Inc. | |

*development by inference*—such as with respect to the 'Additional Comments' here—section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Id.* at 1174-75 (emphasis added).

Based on Plaintiffs' allegations, the Court cannot conclude that "it is very clear" that the Defendant "directly participated" in developing the alleged illegality. For example, Plaintiffs do not allege that Defendant asked its users to capture a Snap with a high speed or even suggested that they should do so. Instead, Plaintiffs' allegations appear to amount to "enhancement by implication or development by inference" – that the Speed Filter impliedly suggested to users that they should Snap a 100-MPH-Snap. However, in such a close scenario, the Ninth Circuit has held that section 230 immunity applies.

The Court recognizes this outcome is inconsistent with the Georgia Court of Appeal's decision, which held that CDA immunity does not apply to the Speed Filter. *See Maynard v. Snapchat, Inc.*, 346 App. 131, 816 S.E. 2d 77 (Ga. Ct. App. 2018). However, because the *Maynard* court did not examine or apply any of the Ninth Circuit case law relating to the application of CDA immunity to "neutral tools," the Court does not find the holding in *Maynard* to be persuasive.

Because the Court concludes that CDA immunity applies, the Court need not examine whether Plaintiffs' claim should be dismissed on additional grounds.

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Defendant's Motion is **GRANTED**. Ordinarily, the Court would grant leave to amend, but here the facts relating to CDA immunity are undisputed and any amendment would be futile. Accordingly, the Motion is **GRANTED** *without leave to amend*, and the action is **DISMISSED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)          **Date:** February 25, 2020

**Title:** Carly Lemmon, et al. v. Snap, Inc.

    This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment. Local Rule 58-6.

    IT IS SO ORDERED.