**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLY LEMMON; MICHAEL MORBY, as surviving parents of Hunter Morby (deceased); SAMANTHA BROWN; MARLO BROWN, as surviving parents of Landen Brown (deceased),<br><br>                          *Plaintiffs-Appellants*,<br><br>                    v.<br><br>SNAP, INC., doing business in California as Snapchat, Inc.,<br>                          *Defendant-Appellee.* | No. 20-55295<br><br>D.C. No.<br>2:19-cv-04504-<br>MWF-KS<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 11, 2021
San Francisco, California

Filed May 4, 2021

Before:  Kim McLane Wardlaw and Carlos T. Bea, Circuit
Judges, and James David Cain, Jr.,* District Judge.

Opinion by Judge Wardlaw

---

* The Honorable James David Cain, Jr., United States District Judge
for the Western District of Louisiana, sitting by designation.

## SUMMARY[**]

### Communications Decency Act

The panel reversed the district court's judgment dismissing on the ground of immunity under the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), an amended complaint brought against Snap, Inc., a social media provider.

Plaintiffs are the surviving parents of two boys who died in a high-speed accident, and they alleged that Snap, Inc. encouraged their sons to drive at dangerous speeds and caused the boys' deaths through its negligent design of its smartphone application Snapchat. The district court held that the CDA barred the plaintiffs' claim because it sought to treat Snap, Inc. "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

To determine whether § 230(c)(1) applied to immunize Snap, Inc. from the plaintiffs' claims, the panel applied the three-prong test set forth in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). As to the first prong, the parties did not dispute that Snap, Inc. was a provider of an "interactive computer service." As to the second prong, the panel held that the plaintiffs' claim did not treat Snap, Inc. as a "publisher or speaker" because the plaintiffs' claims turned on Snap, Inc.'s design of Snapchat. Plaintiffs' negligent design lawsuit treated Snap, Inc. as a products manufacturer,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

accusing it of negligently designing a product (Snapchat) with a defect (the interplay between Snapchat's reward system and its Speed Filter); thus, the duty that Snap, Inc. allegedly violated sprung from its distinct capacity as a product designer. The duty to design a reasonably safe product was fully independent of Snap, Inc.'s role in monitoring or publishing third-party content. As to the third prong, the panel held that plaintiffs had not relied on "information provided by another information content provider." In short, Snap, Inc. was sued for the predictable consequences of designing Snapchat in such a way that it allegedly encouraged dangerous behavior. Accordingly, the panel concluded that Snap, Inc. did not enjoy immunity from this suit under § 230(c)(1) of the CDA.

The panel declined to affirm the district court's decision on the alternative ground that the plaintiffs failed to plead adequately in their amended complaint the causation element of their negligent design claim.

The panel reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal, and remanded for further proceedings.

## COUNSEL

Naveen Ramachandrappa (argued), Bondurant Mixson & Elmore LLP, Atlanta, Georgia, for Plaintiffs-Appellants.

Jonathan H. Blavin (argued) and Rosemarie T. Ring, Munger Tolles & Olson LLP, San Francisco, California; John B. Major and Anne K. Conley, Munger Tolles & Olson LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Carly Lemmon, Michael Morby, Samantha Brown, and Marlo Brown ("the Parents") are the surviving parents of two boys who died in a tragic, high-speed car accident. They sued Snap, Inc. ("Snap"), a social media provider, alleging that it encouraged their sons to drive at dangerous speeds and thus caused the boys' deaths through its negligent design of its smartphone application Snapchat. We must decide whether the district court correctly dismissed that action when it concluded that the Communications Decency Act ("CDA") barred the Parents' claim because it sought to treat Snap "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

We conclude that, because the Parents' claim neither treats Snap as a "publisher or speaker" nor relies on "information provided by another information content provider," Snap does not enjoy immunity from this suit under § 230(c)(1). We therefore reverse the district court's Rule 12(b)(6) dismissal of the Parents' lawsuit and remand for further proceedings.

## I.

Because the district court dismissed this action pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept as true the allegations contained in the Parents' amended complaint and view them in the light most favorable to the Parents. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1096 (9th Cir. 2019).

A.

According to the Parents' amended complaint, Jason Davis (age 17), Hunter Morby (age 17), and Landen Brown (age 20) were driving down Cranberry Road in Walworth County, Wisconsin at around 7:00 p.m. on May 28, 2017. Jason sat behind the wheel, Landen occupied the front passenger seat, and Hunter rode in the back seat. At some point during their drive, the boys' car began to speed as fast as 123 MPH. They sped along at these high speeds for several minutes, before they eventually ran off the road at approximately 113 MPH and crashed into a tree. Tragically, their car burst into flames, and all three boys died.

Shortly before the crash, Landen opened Snapchat, a smartphone application, to document how fast the boys were going. Snapchat is a social media platform that allows its users to take photos or videos (colloquially known as "snaps") and share them with other Snapchat users. To keep its users engaged, Snapchat rewards them with "trophies, streaks, and social recognitions" based on the snaps they send. Snapchat, however, does not tell its users how to earn these various achievements.

The app also permits its users to superimpose a "filter" over the photos or videos that they capture through Snapchat at the moment they take that photo or video. Landen used one of these filters—the "Speed Filter"—minutes before the fatal accident on May 28, 2017. The Speed Filter enables Snapchat users to "record their real-life speed." An example

6                             Lemmon v. Snap

of the digital content that a Snapchat user might create with this filter is portrayed below.



A Snapchat user could also "overlay" the above information onto a mobile photo or video that they previously captured.

Many of Snapchat's users suspect, if not actually "believe," that Snapchat will reward them for "recording a 100-MPH or faster [s]nap" using the Speed Filter. According to plaintiffs, "[t]his is a game for Snap and many of its users" with the goal being to reach 100 MPH, take a photo or video with the Speed Filter, "and then share the 100-MPH-Snap on Snapchat."

Snapchat allegedly knew or should have known, before May 28, 2017, that its users believed that such a reward system existed and that the Speed Filter was therefore incentivizing young drivers to drive at dangerous speeds. Indeed, the Parents allege that there had been:  a series of news articles about this phenomenon; an online petition that "called on Snapchat to address its role in encouraging dangerous speeding"; at least three accidents linked to Snapchat users' pursuit of high-speed snaps; and at least one other lawsuit against Snap based on these practices.  While Snapchat warned its users against using the Speed Filter while driving, these warnings allegedly proved ineffective. And, despite all this, "Snap did not remove or restrict access to Snapchat while traveling at dangerous speeds or otherwise properly address the danger it created."

B.

On May 23, 2019, Hunter's and Landen's parents filed this negligent design lawsuit against Snap.  Snap moved to dismiss the Parents' initial complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), contending that the Parents had failed to allege a plausible negligence claim and that the Communications Decency Act immunized it from liability.  The district court agreed and dismissed the Parents' first complaint for failure to allege "a causal connection between Defendant's Speed Filter and the car accident" and because it was "not clear whether their

claim is barred under the [CDA]." However, it granted leave to amend so that the Parents could cure these deficiencies.

On November 18, 2019, the Parents filed an amended complaint, which Snap moved to dismiss on the same grounds as before. This time, the district court granted the motion to dismiss solely on the basis of immunity under 47 U.S.C. § 230(c)(1). Because it concluded that the CDA rendered Snap immune from the Parents' claim, it did not address Snap's argument that the Parents had again failed to plead causation adequately. The district court denied further leave to amend, and entered a final judgment on February 25, 2020. The Parents then filed this timely appeal.

## II.

We review de novo both the district court's order dismissing the Parents' claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and any questions of statutory interpretation that informed that decision. *Dyroff*, 934 F.3d at 1096. The Parents' amended complaint will survive at this stage if it states "a plausible claim for relief," *i.e.*, if it permits "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). This standard requires determining whether the CDA bars the Parents' claim as pleaded in the amended complaint. *See id.*

## III.

In 1996, when the internet was young and few of us understood how it would transform American society, Congress passed the CDA. *See* 47 U.S.C. § 230. That act "provide[d] internet companies with immunity from certain claims" in order "'to promote the continued development of the Internet and other interactive computer services.'" *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676,

681 (9th Cir. 2019) (quoting 47 U.S.C. § 230(b)(1)). Specifically, Congress commanded that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[1] 47 U.S.C. § 230(c)(1); *see also id.* § 230(e)(3) (explicitly preempting any state or local law inconsistent with this section). Though somewhat jargony, this provision shields from liability those individuals or entities that operate internet platforms, to the extent their platforms publish third-party content.

To determine whether § 230(c)(1) applies here—and thus immunizes Snap from the Parents' claim—we apply the three-prong test set forth in *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). Snap thus enjoys CDA immunity only if it is "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff*, 934 F.3d at 1097 (quoting *Barnes*, 570 F.3d at 1100–01). We examine each of these questions in turn.

A.

The parties do not dispute that Snap is a provider of an "interactive computer service," and we agree that Snap qualifies as one given the CDA's "expansive" definition of

---

[1] The statute defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2). Meanwhile, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3).

that term.  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (citation omitted); *see also Barnes*, 570 F.3d at 1101.  According to the amended complaint, the Snapchat application permits its users to share photos and videos through Snap's servers and the internet.  Snapchat thus necessarily "enables computer access by multiple users to a computer server," 47 U.S.C. § 230(f)(2), and Snap, as the creator, owner, and operator of Snapchat, is therefore a "provider" of an interactive computer service.  *Id.* § 230(f)(3).

### B.

The second *Barnes* question asks whether a cause of action seeks to treat a defendant as a "publisher or speaker" of third-party content.[2]  *Dyroff*, 934 F.3d at 1097; *Barnes*, 570 F.3d at 1100.  We conclude that here the answer is no, because the Parents' claim turns on Snap's design of Snapchat.

In this particular context, "publication" generally "involve[s] reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."  *HomeAway*, 918 F.3d at 681 (citation omitted).  A

---

[2] The district court and the parties have, at various times, suggested that this aspect of the *Barnes* test is undisputed.  Having parsed the Parents' arguments and citations before both our court and the district court, we do not agree.  Though those arguments could have benefited from greater analytic exposition, the Parents have sufficiently preserved this issue for our review.  In any event, it is within our discretion to reach this issue.  *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (noting we may exercise our discretion in this regard when "the issue presented is purely one of law and . . . does not depend on the factual record developed below" (citation omitted)).  We exercise that discretion here, given that Snap addressed this issue both in its answering brief and before the district court.

defamation claim is perhaps the most obvious example of a claim that seeks to treat a website or smartphone application provider as a publisher or speaker, but it is by no means the only type of claim that does so. *Barnes*, 570 F.3d at 1101–02; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016). Thus, regardless of the type of claim brought, we focus on whether "the duty the plaintiff alleges" stems "from the defendant's status or conduct as a publisher or speaker." *Barnes*, 570 F.3d at 1107.

Here, the Parents seek to hold Snap liable for its allegedly "unreasonable and negligent" design decisions regarding Snapchat. They allege that Snap created: (1) Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive system within Snapchat that encouraged its users to pursue certain unknown achievements and rewards. The Speed Filter and the incentive system then supposedly worked in tandem to entice young Snapchat users to drive at speeds exceeding 100 MPH.

The Parents thus allege a cause of action for negligent design—a common products liability tort. This type of claim rests on the premise that manufacturers have a "duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public." Lewis Bass, *Prods. Liab.: Design & Mfg. Defects* § 2.5 (2d ed., Sept. 2020 Update). Thus, a negligent design action asks whether a reasonable person would conclude that "the reasonably foreseeable harm" of a product, manufactured in accordance with its design, "outweigh[s] the utility of the product." *Merrill v. Navegar, Inc.*, 28 P.3d 116, 125 (Cal. 2001) (citation omitted); *see also Morden v. Cont'l AG*, 611 N.W.2d 659, 674 (Wis. 2000) (explaining that the relevant "duty of care requires manufacturers to foresee all reasonable uses and misuses and the consequent foreseeable

dangers" of their products "and to act accordingly" (citation omitted)).[3]

The duty underlying such a claim differs markedly from the duties of publishers as defined in the CDA. Manufacturers have a specific duty to refrain from designing a product that poses an unreasonable risk of injury or harm to consumers. *See* Dan B. Dobbs et al., *Dobbs' Law of Torts* § 478 (2d ed., June 2020 Update). Meanwhile, entities acting solely as publishers—*i.e.*, those that "review[] material submitted for publication, perhaps edit[] it for style or technical fluency, and then decide[] whether to publish it," *Barnes*, 570 F.3d at 1102—generally have no similar duty. *See Dobbs' Law of Torts* § 478.

It is thus apparent that the Parents' amended complaint does not seek to hold Snap liable for its conduct as a publisher or speaker. Their negligent design lawsuit treats Snap as a products manufacturer, accusing it of negligently designing a product (Snapchat) with a defect (the interplay between Snapchat's reward system and the Speed Filter). Thus, the duty that Snap allegedly violated "springs from" its distinct capacity as a product designer. *Barnes*, 570 F.3d at 1107. This is further evidenced by the fact that Snap could have satisfied its "alleged obligation"—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that

---

[3] The parties have agreed that the tort law of either California or Wisconsin governs in this case. *See generally* Restatement (Second) of Torts § 398 (1965) ("A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.").

Snapchat's users generate.  *Internet Brands*, 824 F.3d at 851.
Snap's alleged duty in this case thus "has nothing to do with"
its editing, monitoring, or removing of the content that its
users generate through Snapchat.  *Id.* at 852.

To the extent Snap maintains that CDA immunity is
appropriate because the Parents' claim depends on the ability
of Snapchat's users to use Snapchat to communicate their
speed to others, it disregards our decision in *Internet Brands*.
That Snap allows its users to transmit user-generated content
to one another does not detract from the fact that the Parents
seek to hold Snap liable for its role in violating its distinct
duty to design a reasonably safe product.  As in *Internet
Brands*, Snap "acted as the 'publisher or speaker' of user
content by" transmitting Landen's snap, "and that action
could be described as a 'but-for' cause of [the boys']
injuries."  824 F.3d at 853.  This is unsurprising:  Snap "is
an internet publishing business.  Without publishing user
content, it would not exist."  *Id.*  But though publishing
content is "a but-for cause of just about everything" Snap
is involved in, that does not mean that the Parents' claim,
specifically, seeks to hold Snap responsible in its capacity as
a "publisher or speaker."  *Id.*  The duty to design a
reasonably safe product is fully independent of Snap's role
in monitoring or publishing third-party content.[4]

---

[4] Nor would proving causation through the snap that Landen sent
shortly before his death implicate § 230(c)(1) immunity, because the
Parents do not fault Snap for publishing that photo message.  Instead,
that snap merely suggests, as circumstantial evidence, that the alleged
negligent design of Snapchat had the very causal effect that the Parents'
otherwise allege.  By contrast, we note that the Parents would not be
permitted under § 230(c)(1) to fault Snap for publishing other Snapchat-
user content (*e.g.*, snaps of friends speeding dangerously) that may have
incentivized the boys to engage in dangerous behavior.  For attempting

Because the Parents' claim does not seek to hold Snap responsible as a publisher or speaker, but merely "seek[s] to hold Snapchat liable for its own conduct, principally for *the creation* of the Speed Filter," § 230(c)(1) immunity is unavailable. *Maynard v. Snapchat, Inc.*, 816 S.E.2d 77, 81 (Ga. Ct. App. 2018) (emphasis added).

C.

CDA immunity is also unavailable in this case because the Parents' negligent design claim does not turn on "information provided by another information content provider." *Barnes*, 570 F.3d at 1101.

By its plain terms, and as the last part of the *Barnes* test recognizes, § 230(c)(1) cuts off liability only when a plaintiff's claim faults the defendant for information provided by third parties. 47 U.S.C. § 230(c)(1). Thus, internet companies remain on the hook when they create or develop their own internet content. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). And they also may face liability to the extent they are "'responsible . . . in part, for the creation or the development of' the offending content" on the internet. *Id.* at 1162 (quoting 47 U.S.C. § 230(f)(3)); *see also Kimzey*, 836 F.3d at 1269 (asking whether a defendant "ma[de] a material contribution to the creation or development of [the] content" underlying a given claim).

---

to hold Snap liable using such evidence would treat Snap as a publisher of third-party content, contrary to our holding here. *See* Section III.C. *infra*.

This case presents a clear example of a claim that simply does not rest on third-party content. Snap indisputably designed Snapchat's reward system and Speed Filter and made those aspects of Snapchat available to users through the internet. *See Roommates*, 521 F.3d at 1168 (noting that the word "develop" in the CDA connotes "making usable or available"). And the Parents' negligent design claim faults Snap solely for Snapchat's architecture, contending that the app's Speed Filter and reward system worked together to encourage users to drive at dangerous speeds.

Notably, the Parents do not fault Snap in the least for publishing Landen's snap. Indeed, their amended complaint fully disclaims such a reading of their claim: "The danger is not the Snap [message using the Speed Filter] itself. Obviously, no one is harmed by the post. Rather, the danger is the speeding." AC ¶ 14. While we need not accept conclusory allegations contained in a complaint, we must nonetheless read the complaint in the light most favorable to the Parents. *See Dyroff*, 934 F.3d at 1096. And this statement reinforces our own reading of the Parents' negligent design claim as standing independently of the content that Snapchat's users create with the Speed Filter.

To sum up, even if Snap is acting as a publisher in releasing Snapchat and its various features to the public, the Parents' claim still rests on nothing more than Snap's "own acts." *Roommates*, 521 F.3d 1165. The Parents' claim thus is not predicated on "information provided by another information content provider." *Barnes*, 570 F.3d at 1101.

Each of Snap's novel attempts to expand CDA immunity beyond these straightforward principles is to no avail. To start, while providing content-neutral tools does not render an internet company a "creator or developer" of the downstream content that its users produce with those tools,

our case law has never suggested that internet companies enjoy absolute immunity from all claims related to their content-neutral tools. *See Dyroff*, 934 F.3d at 1099; *Kimzey*, 836 F.3d at 1269–70; *Roommates*, 521 F.3d at 1175. To the contrary, "[t]he [CDA] was not meant to create a lawless no-man's-land on the Internet." *Roommates*, 521 F.3d at 1164. Those who use the internet thus continue to face the prospect of liability, even for their "neutral tools," so long as plaintiffs' claims do not blame them for the content that third parties generate with those tools.

Next, the Parents' allegations concerning the Speed Filter and Snapchat's reward system are not a creative attempt to plead around the CDA. In the cases where such creative pleading has posed a concern, the plaintiff's claims, at bottom, depended on a third party's content, without which no liability could have existed. *See Dyroff*, 934 F.3d at 1096 (alleging defendant developed content because its website's "recommendation and notification functions were 'specifically designed to make subjective, editorial decisions about users based on their posts'"); *Kimzey*, 836 F.3d at 1269 (alleging defendant developed content when it integrated a third party's defamatory review "into its own 'advertisement' or 'promotion' on Google" using its "unique star-rating system"). However, as already explained, the Parents' claim does not depend on what messages, if any, a Snapchat user employing the Speed Filter actually sends. This is thus not a case of creative pleading designed to circumvent CDA immunity.

Last, Snap misunderstands the import of our statement in *Dyroff* that a website's "tools meant to facilitate the communication and content of others" were "not content in and of themselves." 934 F.3d at 1098. For even accepting that statement at face value, it does nothing to advance

Snap's argument.  It is by now clear that the Parents'
negligent design claim does not turn on the content of
Landen's particular snap.  Thus, if Snapchat's Speed Filter
and award system were not content for purposes of the CDA,
then the Parents' negligence or negligent design claim would
rest on no CDA "content" whatsoever, and Snap would still
receive no immunity.  After all, CDA immunity is available
only to the extent a plaintiff's claim implicates third-party
content.  *See* 47 U.S.C. § 230(c)(1).

\*\*\*

In short, Snap "is being sued for the predictable
consequences of" designing Snapchat in such a way that it
allegedly encourages dangerous behavior.  *Roommates*,
521 F.3d at 1170.  The CDA does not shield Snap from
liability for such claims.  *See Internet Brands*, 824 F.3d
at 853 ("Congress has not provided an all purpose get-out-
of-jail-free card for businesses that publish user content on
the internet, though any claims might have a marginal
chilling effect on internet publishing businesses.").

## IV.

Snap has also urged us to affirm the district court's
decision on the alternative ground that the Parents have
failed to plead adequately in their amended complaint the
causation element of their negligent design claim.  Though
we may affirm on any ground supported by law, we decline
to exercise that discretion here for three reasons.  *Upper
Skagit Indian Tribe v. Lundgren*, 138 S. Ct. 1649, 1654
(2018).

First, the district court dismissed the Parents' amended
complaint based "entirely on the CDA[,] and we refrain from
deciding an issue that the district court has not had the

18                    LEMMON V. SNAP

opportunity to evaluate." *Roommates*, 521 F.3d at 1175 n.40.  Second, the district court stated when it dismissed the Parents' amended complaint that it would ordinarily have granted leave to amend, but it declined to do so based on its belief that the Parents could not surmount the issue of CDA immunity.  It thus appears the district court would have granted further leave to amend if the sole defect in the Parents' amended complaint was a mere failure to plead legal causation.  Third, the district court has yet to decide whether there exists a conflict between Wisconsin and California law on the issue of legal causation.  Nor has it decided, in the event there is such a conflict, which state's law governs that claim.  *See generally Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 559 (9th Cir. 2020) (laying out the relevant analytic framework), *cert. denied sub nom. Cooper v. TEPCO*, No. 20-730, 2021 WL 1163742 (U.S. Mar. 29, 2021).

## V.

For these reasons, we **REVERSE** the district court's dismissal of the Parents' amended complaint on the ground of immunity under 47 U.S.C. § 230(c)(1) and **REMAND** this matter for further proceedings consistent with this opinion.