1  ROSEMARIE T. RING (State Bar No. 220769)
   rose.ring@mto.com
2  JONATHAN H. BLAVIN (State Bar No. 230269)
   jonathan.blavin@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
4  San Francisco, California 94105-4000
   Telephone: (415) 512-4000
5  Facsimile: (415) 512-4077

6  JOHN B. MAJOR (State Bar No. 306416)
   john.major@mto.com
7  ANNE K. CONLEY (State Bar No. 307952)
   anne.conley@mto.com
8  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
9  Los Angeles, California 90071-3426
   Telephone: (213) 683-9100
10 Facsimile: (213) 687-3702

11 Attorneys for SNAP INC.

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15 | CARLY LEMMON AND MICHAEL MORBY, as surviving parents of Hunter Morby (deceased); MICHAEL MORBY, as administrator of the estate of Hunter Morby (deceased); SAMANTHA AND MARLO BROWN, as surviving parents of Landen Brown (deceased); and MARLO BROWN, as the administrator of the estate of Landen Brown,

                  Plaintiffs,

        vs.

SNAP INC.,

                  Defendant. | Case No. 2:19-cv-04504-MWF-KS

**DEFENDANT SNAP INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Judge: Hon. Michael W. Fitzgerald
Date:  August 2, 2021
Time:  10:00 a.m.
Ctrm:  5A |

As with many personal injury cases, this case involves tragic facts and unfortunate consequences. However, the Court must resolve the case by applying settled principles of law on allocation of legal liability. Under those principles, Defendant Snap Inc. ("Snap") may not be held liable as a matter of law for the actions of Plaintiffs' decedents, Mr. Morby and Mr. Brown, and Mr. Davis, the driver of the vehicle in which they were passengers. Plaintiffs' First Amended Complaint ("FAC") alleges that they were driving at dangerously high speeds to capture an over 120 MPH snap using Snapchat's real-time speed filter ("Filter"), ignoring the express warnings not to use the Filter while driving. (FAC ¶¶ 63–72; ECF No. 33, Exs. A–C.)

This Court already has rejected Plaintiffs' theory of causation as insufficient in its first order of dismissal (ECF No. 44 at 1, 13–14), explaining that Plaintiffs had failed to allege that Snapchat "actually encouraged speeding," and that the FAC's allegations about "unknown, variable and changing" "rewards" were "too vague and speculative" to plead causation (*id*. at 14). This is consistent with all of the authority considering similar claims. *See, e.g.*, *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 153–55 (2018); *Meador v. Apple, Inc.*, 911 F.3d 260, 265–67 (5th Cir. 2018). Indeed, another suit against Snap premised on the same tenuous theory recently held that Snap was not responsible for a driver's decision to speed excessively, purportedly motivated by the desire to achieve a high-speed snap through the Filter, because Snap cannot be held liable for "the intentional (not accidental) misuse of the product in a tortious way." *Maynard v. Snapchat, Inc.*, 357 Ga. App. 496, 500 (2020).

The Ninth Circuit's decision has returned the causation and other state-law tort issues to this Court to decide. The Court should dismiss the FAC with prejudice because Plaintiffs have failed to state a claim against Snap and have neither requested nor provided any basis for a further attempt at amending their complaint.

## I. THE TORT LAW ISSUES ARE RESERVED FOR REMAND

The Ninth Circuit's review in this case was limited to only the Communications Decency Act ("CDA") question: whether Plaintiffs' allegations treated Snap as a

"publisher or speaker" of third-party content under the CDA. (ECF No. 67 at 4.) The opinion held that the CDA did not apply and remanded for further proceedings on the remaining tort law issues, for this Court to decide in the first instance. (*Id.* at 17–18.)

This also is what occurred in the near-identical *Maynard* case brought by Plaintiffs' counsel in Georgia. After the trial court's dismissal on CDA grounds was reversed, the trial court dismissed for failure to plead duty and causation, and the Court of Appeals has now affirmed that dismissal. 357 Ga. App. at 496 & n.1. Several other courts similarly have dismissed claims on the merits following an appellate decision that the CDA did not apply.[1] This Court should do the same.

## II.   WISCONSIN NEGLIGENCE LAW APPLIES

The Court must first determine the applicable law. As the Court previously held, there is no dispute over whether the law of California, where Plaintiffs have brought suit, or of Wisconsin, where the accident occurred, should apply to causation, "because the two state laws are substantially same." (ECF No. 44 at 9.) However, as Snap established in prior briefing, the two states' laws are materially different with respect to contributory negligence: Unlike California, Wisconsin bars recovery as a matter of law where a plaintiff's negligence is greater than any negligence by the defendant. *E.g.*, *Peters v. Menard, Inc.*, 224 Wis.2d 174, 193 (1999).

This material difference weighs in favor of applying Wisconsin law here. "Time and again, California choice-of-law cases recognize that a state generally holds the predominant lawmaking interest when the majority of the conduct at issue occurs within the borders of that state." *Meraz v. Ford Motor Co.*, 2014 WL 12558123, at *7 (C.D. Cal. June 13, 2014). Wisconsin has a compelling interest in having its laws apply in this case where Plaintiffs are Wisconsin residents and all of the underlying

---

[1] *E.g.*, *Doe v. Internet Brands, Inc.*, 2016 U.S. Dist. LEXIS 192144, at *5, 14–15 (C.D. Cal. Nov. 14, 2016) (dismissing with prejudice on state law grounds following reversal on CDA); *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219, 1223 (9th Cir. 2012) (first Ninth Circuit opinion "limited to CDA immunity and didn't reach whether the activities, in fact, violated the FHA" and reversing and "remand[ing] for entry of judgment for defendant" on the merits).

conduct occurred in Wisconsin, particularly given that Wisconsin's contributory negligence bar "furthers a necessary state policy of encouraging traffic violators" to comply with the law. *Brunette v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 107 Wis.2d 361, 365 (Ct. App. 1982); (*see also* ECF No. 50 at 6–7; ECF No. 57 at 2–6).

### III. PLAINTIFFS FAIL TO PLEAD A NEGLIGENCE CLAIM

"[N]o court in the country has yet held" that an app or device developer "should be liable for a user's torts." *Meador*, 911 F.3d at 265. As a federal court sitting in diversity, this Court should not be the first. Indeed, as the Ninth Circuit has made clear, "[f]ederal courts should 'hesitate prematurely to extend the law ... in the absence of an indication from the [state] courts or the [state] legislature that such an extension would be desirable.'" *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154–55 (9th Cir. 2011) (original brackets); *see also Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011) ("plaintiffs choosing 'the federal forum ... [are] not entitled to trailblazing initiatives under [state law]'" (original brackets)). Snap demonstrated in its prior briefing that Plaintiffs' negligence claim fails as a matter of law because (A) Snap did not cause the accident; (B) Plaintiffs were more negligent than Snap; and (C) public policy bars liability.

#### A. Snap Is Not the Cause of Plaintiffs' Accident

This Court previously held that "Plaintiffs have not sufficiently alleged a causal connection" between the Filter and Plaintiffs' accident. (ECF No. 44 at 14.) As the Court concluded, Plaintiffs "have not alleged sufficient facts to establish that Defendant *actually encouraged speeding*," and the allegation that Snap "encouraged the users to speed by providing certain 'rewards, in unknown, variable and changing ways'" was "too vague and speculative" to state a claim. (*Id.* (emphasis added).) As established in Snap's briefing, Plaintiffs have not remedied these failings in their FAC, nor can they as a matter of law. (ECF No. 50 at 7–13; ECF No. 57 at 6–15.)

First, the substance of Plaintiffs' FAC is barely different from the first Complaint the Court dismissed. Indeed, Plaintiffs' allegations about "unknown,

3

variable" rewards are *exactly* the same as what the Court already rejected. (*Compare* Compl. ¶ 13, *with* FAC ¶ 27.) And despite the Ninth Circuit providing an opening for Plaintiffs to seek leave to amend to "plead legal causation" (ECF No. 67 at 18), Plaintiffs have not sought to do so. That is because Plaintiffs' sole theory of causation is that Snap somehow implicitly encouraged speeding by providing a neutral speedometer tool, even though Plaintiffs acknowledge that "Snap *does not actually reward* its teenage and young-adult users any prizes or rewards or trophies for recording a 100-MPH-Snap." (FAC ¶ 31 (emphasis added).) Indeed, Snap warns users *not* to use the Filter while driving. (FAC ¶ 79; ECF No. 33, Exs. A–C.)

Nor does anything in the Ninth Circuit's decision render Plaintiffs' allegations viable. Although the Ninth Circuit held that Plaintiffs' theory regarding the Filter and "reward system" did not treat Snap as a "publisher or speaker" under the CDA (ECF No. 67 at 15–16), it expressly declined to address whether those allegations were sufficient to establish causation (*id.* at 17–18). The Ninth Circuit also acknowledged that Plaintiffs' claim was not premised on any *actual* rewards, but rather, on the theory that some users mistakenly "suspect" or "believe" that Snapchat rewards speeding. (*Id.* at 7 (noting allegation that "[m]any of Snapchat's users suspect, if not actually 'believe,' that Snapchat will reward them for 'recording a 100-MPH or faster [s]nap' using the Speed Filter").) As *Maynard* noted, Plaintiffs do not "point … to any specific reward system or status ranking predicated on misusing it while driving or generating higher speeds," as none exists. 357 Ga. App. at 500.

This Court correctly held that such allegations are insufficient as a matter of law to establish causation under an "encouragement" theory. (ECF No. 44 at 14.) Plaintiffs have cited no case that has permitted a theory premised on users' subjective and incorrect beliefs as to a reward system.[2] If the mere allegation that users believe

---

[2] Plaintiffs have relied on *Weirum v. RKO General, Inc.*, where the court held the defendant radio station violated its duty by designing a radio contest that "generate[d] a competitive pursuit on public streets, accelerated by repeated importuning by radio to be the very first to arrive at a particular destination" and win a prize, 539 P.2d 36,

they "might" be rewarded were enough to establish causation, there would be no logical end. Any product that rewards users in some instances could be held liable for any behavior imaginable, even where, as here, no rewards are provided.

Courts consistently have rejected similar claims predicated on a driver's subjective desires or compulsions to misuse an app while driving. In *Modisette*, plaintiffs injured by a third party's use of the FaceTime app while driving alleged that Apple encouraged reckless driving with its app and the absence of a lock-out feature to prevent its use while driving, particularly given the "compulsive/addictive" nature of the app. 30 Cal. App. 5th at 146–47 & n.9, 151. The Court of Appeal acknowledged misuse was foreseeable, as Apple itself applied for a lock-out patent given the danger, but held that the plaintiffs' "injuries were not a result of Apple's conduct" because the *driver* "caused the [plaintiffs'] injuries" with his misuse. *Id.* at 140, 154. "[T]he gap between Apple's design of the iPhone and the [plaintiffs'] injuries is too great for the tort system to hold Apple responsible." *Id.* at 155.

Similarly, in *Maynard*, the trial court dismissed near-identical claims regarding the Filter for failure to allege causation and duty, 2019 WL 6216230, at *3–6 (Ga. Super. Ct. Nov. 8, 2019), and the Court of Appeals affirmed. Although the court rested its affirmance on duty, its reasoning demonstrates why causation is lacking here: The court cited *Modisette* and other authorities Snap has cited here, and emphasized "the injury *was caused by [the driver's] conduct of misusing* the Speed Filter while driving at an excessive rate of speed" and "[t]hus, any liability on the part of Snapchat is predicated *on [the driver's] conduct*." *Maynard*, 357 Ga. App. at 499, 501-02 (emphasis added). In *Meador*, the Fifth Circuit similarly rejected the theory that a "neurobiological response induced by the [iPhone] is a substantial factor" and "a cause in fact of the injuries" resulting from a car accident. 911 F.3d at 265, 267.

Finally, even if Plaintiffs' theory had any legal basis, Plaintiffs do not allege

---

40–41 (Cal. 1975); the court did not consider causation. As this Court previously noted in distinguishing *Weirum* (ECF No. 44 at 14), unlike there, Plaintiffs "have not alleged sufficient facts to establish that Defendant actually encouraged speeding."

facts to support such a theory. Plaintiffs never allege that Brown, Morby, or Davis *themselves* believed that Snapchat provided "rewards" for speeding or were motivated by such a belief. (FAC ¶¶ 63–73.) Rather, the FAC only alleges that they were speeding to "share the 100-MPH-Snap." (FAC ¶¶ 11–13.) Plaintiffs' "reward" theory is thus wholly divorced from their allegations. *E.g.*, *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, 2007 WL 2070263, at *6 (N.D. Cal. July 17, 2007) (dismissing claim where plaintiff "failed to allege" that he "actually believed" misrepresentation theory).

A speedometer tool that warns *against* using it while driving does not cause reckless speeding through some kind of implicit encouragement any more than a car's speedometer[3] would. No court has stretched proximate causation so far.

### B. Plaintiffs Were More Negligent than Snap as a Matter of Law

Plaintiffs' claim also is barred because Plaintiffs were more negligent than Snap as a matter of Wisconsin law. *E.g.*, *Johnson v. Grzadzielewski*, 159 Wis.2d 601, 608-09 (Ct. App. 1990); (ECF No. 50 at 13–15; ECF No. 57 at 15–17). When a "plaintiff's negligence is so clear and the quantum so great, and where it appears that the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, it is not only within the power of the court *but it is the duty of the court to so hold.*" *Johnson*, 159 Wis.2d at 608 (emphasis added). Dismissal on the pleadings is appropriate under Wisconsin law where, as here, "the complaint shows upon its face such want of ordinary care for his own safety on plaintiff's part as requires holding, as a matter of law, that his contributory negligence must defeat any claim of right to recover." *Worden v. Chi. & N.W. Ry. Co.*, 193 N.W. 356, 356 (Wis. 1923).

In *Johnson*, the plaintiff similarly was 18 years old but still "had a duty to exercise ordinary care for his own safety," which he failed to do when he tampered

---

[3] Indeed, as *Maynard* noted, courts have rejected attempts to hold car manufacturers liable despite their *explicitly* advertising the ability to recklessly speed in a vehicle. 357 Ga. App. at 501; *see, e.g.*, *Halbrook v. Honda Motor Co.*, 224 Mich. App. 437, 446 (1997) ("advertisement which encouraged [plaintiff] to speed" not "proximate cause of the accident"); *Ely v. General Motors Corp.*, 927 S.W.2d 774, 776, 782 (Tex. Ct. App. 1996) (rejecting liability where manufacturer allegedly "encourag[ed] reckless driving" through advertising car's ability to speed "quickly pas[t] 100 mph").

with an elevator's safety measures to make it descend faster. 159 Wis.2d at 606, 608. Consistent with bedrock Wisconsin law, the court held that the plaintiff could not recover as a matter of law where he "was more negligent than any defendant." *Id.* at 608-09. Otherwise, the court would be "sanctioning claims where an injured party intentionally engaged in the misuse of a product just to seek a thrill." *Id*. at 610.

So too here. Brown and Morby allegedly motivated the driver, Davis, to accelerate to more than 120 MPH for a snap. (FAC ¶¶ 6–10, 65–70.) They failed to exercise ordinary care for their own safety by engaging in excessive, illegal speeding, and their responsibility for their subsequent accident exceeds any that could be ascribed to Snap for offering a neutral speedometer filter on Snapchat with multiple warnings against use while driving. (ECF No. 33, Exs. A–C.)

### C. Public Policy Bars Negligence Liability Against Snap

Plaintiffs' claim also is barred by public policy considerations under either California or Wisconsin law, which generally apply the same considerations. *Butler v. Advanced Drainage Sys., Inc.*, 294 Wis.2d 397, 412-13 (2006); *Brown v. USA Taekwondo*, 483 P.3d 159, 162–64, 174 n.3 (Cal. 2021). Public policy may bar claims at the pleadings stage. *Id*. Snap's prior briefing established that public policy should bar liability here because (1) Plaintiffs' injury is too remote from Snap's alleged negligence; (2) liability would be wholly disproportionate to Snap's alleged culpability; and (3) there is no sensible or just stopping point for liability under Plaintiffs' theory. (ECF No. 50 at 15–19; ECF No. 57 at 17–19.) The Court of Appeals in *Maynard* recently reinforced these arguments, holding that the "public policy" of Georgia and other states, including California (referencing *Modisette*), have "focused" in "this area on the conduct of drivers." 357 Ga. App. at 500-01. *Modisette* held imposing liability on developers for drivers' misuse of their apps could have "potentially sweeping implications," and that the FaceTime app was "too remotely connected with Plaintiffs' injuries to constitute their legal cause." 30 Cal. App. 5th at 152, 154. The Court should hold similarly, and dismiss the FAC with prejudice.

1  DATED:  June 15, 2021                MUNGER, TOLLES & OLSON LLP

2
                                         By:  /s/ Jonathan H. Blavin
3                                              JONATHAN H. BLAVIN
                                               ROSEMARIE T. RING
4                                              JOHN B. MAJOR
                                               ANNE K. CONLEY
5

6                                        Attorneys for Snap Inc.