UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** **CV 19-4504-MWF (KSx)**          **Date:** **March 31, 2022**
Title:     Carly Lemmon, et al. v. Snap, Inc.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                     Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
          None Present                      None Present

**Proceedings (In Chambers):**   ORDER DENYING MOTION TO DISMISS FIRST
                                 AMENDED COMPLAINT [50]

        Before the Court is Defendant Snap Inc. ("Snap")'s Motion to Dismiss the First
Amended Complaint (the "Motion"), filed on December 16, 2019.  (Docket No. 50).
On January 13, 2020, Plaintiffs Carly Lemmon, Michael Morby, Samantha Brown, and
Marlo Brown filed an Opposition.  (Docket No. 56).  On January 27, 2020, Defendant
filed a Reply.  (Docket No. 57).

        On June 15, 2021, following the reversal from the Ninth Circuit, Defendant filed
a supplemental brief in support of the Motion (the "Sup. Brief").  (Docket No. 75).  On
July 6, 2021, Plaintiffs filed a supplemental brief in opposition (the "Opp. Supp.
Brief").  (Docket No. 76).

        The Court has read and considered the papers filed in connection with the
Motion and held a telephonic hearing on August 2, 2021, pursuant to General Order
21-08 arising from the COVID-19 pandemic.

        For the reasons discussed below, the Motion is **DENIED**.  Plaintiffs have
adequately alleged that the design of the Speed Filter itself encouraged Plaintiffs to
engage in reckless driving.

        The Request for Judicial Notice is again **GRANTED** as to the warnings and
**DENIED** *as moot* as to the articles.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**                **Date:  March 31, 2022**

Title:      Carly Lemmon, et al. v. Snap, Inc.

## I.    BACKGROUND

Because the facts of this action are well known to the parties, the Court does not repeat them here.  The Court incorporates by reference the factual background set forth in the Court's Order Granting the Motion to Dismiss the First Amended Complaint dated February 25, 2020 ("the 2020 Order") as if fully set forth herein.  (Docket No. 61).

On May 4, 2021, the Ninth Circuit reversed this Court's 2020 Order and remanded for further proceedings (the "Ninth Circuit Opinion").  (Docket No. 67).  Specifically, the Ninth Circuit reversed this Court's ruling that Plaintiffs' claim is barred by the Communications Decency Act and remanded for this Court to determine if Plaintiffs have sufficiently pled a negligence claim.  (Ninth Circuit Opinion at 18).

## II.   LEGAL STANDARD

In ruling on a motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 19-4504-MWF (KSx)** | **Date:  March 31, 2022** |
| Title:      Carly Lemmon, et al. v. Snap, Inc. | |

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

### A.   Choice of Law

"In diversity jurisdiction cases, such as this one, [courts] apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015) (internal quotation marks and citation omitted). Because Plaintiffs brought the action in the Central District of California, California's choice-of-law governs.

California applies the governmental interest approach. *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 87, 105 Cal.Rptr. 3d 378 (2010). "In brief outline, the governmental interest approach generally involves three steps." *Id.* "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Id.* "Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Id.* Third,

> if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state [citation] and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

---

**CIVIL MINUTES—GENERAL**                                                      3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**                    **Date:  March 31, 2022**
Title:      Carly Lemmon, et al. v. Snap, Inc.

*Id.* (internal quotation marks and citation omitted).

"[E]ven in cases involving foreign elements," courts in California "should be expected, as a matter of course, to apply . . .  the law of the forum." *Hurtado v. Superior Ct.*, 11 Cal.3d 574, 581, 114 Cal.Rptr. 106 (1974).  Therefore, if a party contends that some other law should apply to an issue, that party has the "burden to show that the [other] law . . .  rather than California law, should apply." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 539 (C.D Cal. 2011).

"A separate conflicts of laws inquiry must be made with respect to each issue." *Smith v. Cimmet*, 199 Cal.App.4th 1381, 1396, 132 Cal.Rptr.3d 276 (2011); *see also Beech Aircraft Corp. v. Superior Court*, 61 Cal.App.3d 501, 519, 132 Cal.Rptr. 541 (1976) ("The choice of law question must, therefore, be examined individually as to each issue."); *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) (same).

On October 30, 2019, the Court granted Defendant's Motion to Dismiss Complaint with leave to amend (the "2019 Order").  (Docket No. 44).  Both parties agreed that California law and Wisconsin law are substantially the same for the two elements of negligence at issue:  duty and causation.  (*Id.* at 9).  The Court therefore declined to determine which state's substantive law applies for the negligence claim. (*Id.*).

Defendant now argues that, although the laws of California and Wisconsin do not materially differ with respect to public policy or the elements of negligence, they do differ with respect to the application of contributory negligence.  (Supp. Brief at 2). Specifically, Defendant points out that, unlike California, Wisconsin bars recovery as a matter of law where a plaintiff's negligence is greater than any negligence by the defendant.  (*Id.*) (citing *Peters v. Menard, Inc.*, 224 Wis.2d 174, 193 (1999)).

"Time and again, California choice-of-law cases recognize that a state generally holds the predominant lawmaking interest when the majority of the conduct at issue occurs within the borders of that state." *Meraz v. Ford Motor Co.*, 2014 WL 12558123, at *7 (C.D. Cal. June 13, 2014); *see also Mazza v. Am. Honda Motor Co.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

666 F.3d 581, 591–93 (9th Cir. 2012) (observing that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders").

"California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.'"  *Mazza*, 666 F.3d at 593 (quoting *Hernandez v. Burger,* 102 Cal.App.3d 795, 802, 162 Cal.Rptr. 564 (1980)).  California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred.  *Id.*  "Conversely, California's interest in applying its law to residents of foreign states is attenuated."  *Id.*

Defendant argues that Wisconsin law should apply here because (1) the majority of the conduct at issue occurred within the borders of Wisconsin; (2) Plaintiffs are Wisconsin residents; and (3) Wisconsin has a compelling interest in having its damages laws apply here, given that Wisconsin's contributory negligence law furthers a necessary state policy of encouraging traffic violators to comply with the law.  (*See* Supp. Brief at 1–2).

Plaintiffs argue that California law should apply here because (1) Defendant is a California corporation, and (2) Defendant's tortious conduct took place in California, where it designed the Snapchat filter that displays and records the users current speed (the "Speed Filter").  (Opp. Supp. Brief at 3).

With respect to the "majority of conduct at issue" factor, both sides have raised valid points.  On the one hand, the accident occurred in Wisconsin.  On the other hand, the design of the Speed Filter took place in California.  Therefore, this factor is neutral.

Turning to the "place of the wrong" factor, the Court determines that Wisconsin has the stronger interest because "the last event necessary to make the actor liable" took place in Wisconsin, where the accident giving rise to liability occurred.  *See Mazza*, 666 F.3d at 593.

Furthermore, Wisconsin has a specific compelling interest in applying its own comparative fault rules to discourage its residents from reckless driving.  *See Brunette v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 107 Wis.2d 361, 365 (1982) ("By denying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 19-4504-MWF (KSx)** | **Date:  March 31, 2022** |
| Title:       Carly Lemmon, et al. v. Snap, Inc. | |

recovery to [the plaintiff], the court furthers a necessary state policy of encouraging traffic violators" to comply with the law, as a plaintiff "should be penalized, not rewarded, for his lawless conduct").  In contrast, California has no specific compelling interest in applying its comparative fault rules here.  At the hearing, Plaintiffs argued that California has an interest in "regulating social media companies" within its borders.  However, Plaintiff cited to no case law for this proposition.

Plaintiffs point to California district court decisions holding that, where none of the defendants are residents of the foreign state with "a conflicting law to limit damages," the foreign state has "'absolutely no interest in having its damages rules applied to them.'"  (Opp. Supp. Brief at 3) (quoting *Munguia v. Bekins Van Lines*, LLC, CV 11-01134, 2012 WL 5198480, at *10 (E.D. Cal. Oct. 19, 2012), *adopted by* 2012 WL 5511749 (E.D. Cal. Nov. 14, 2012); *see id.* at *7 (finding that "California courts are reluctant to impose foreign laws that restrict a plaintiff's ability to recover damages" unless the defendants are residents of "the foreign state"); *Hurtado*, 11 Cal.3d at 581 (holding that "Mexico has no interest in applying its limitation of damages" because the plaintiffs, not the defendants, were Mexican residents).

In *Munguia*, California plaintiffs were involved in a car accident in Nevada, but none of the parties resided in Nevada.  2012 WL 5198480, at *9.  The court rejected the Illinois defendants' request for application of Nevada's comparative fault statute, determining that California's interest "in allowing pure comparative fault damages" outweighs Nevada's interest "in limiting comparative fault damages," where none of the defendants or plaintiffs were residents of Nevada.  *Id.* at *9.  As the court in *Munguia* explained:

> While Nevada has an interest in limiting the recovery of damages for accidents occurring on its roadways, Nevada's interest in this action is limited because ***Defendants are not residents of Nevada***, nor have they shown any connection or nexus with Nevada, other than the fact that Nevada is the place of the accident.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

*Id.* at 11 (emphasis added).

*Munguia* is distinguishable from this action because *Munguia* involved
California plaintiffs.  *See id.* at *5–6.  The *Munguia* court noted that Nevada's interest
in "protect[ing] its resident defendants against excessive or oppressive economic
liability" did not apply because no defendant resided in Nevada.  *Id.*  However, the
Court's ultimate decision to apply California law was driven by the fact that the action
involved California plaintiffs and the fact that California "has an interest in seeing that
its residents are compensated for their injuries and that its laws apply as to Plaintiffs'
recovery of damages."  *Id.*

Therefore, even accepting that Wisconsin does not have an interest in protecting
any ***defendants*** in this case, *Munguia* does not suggest that California law
automatically applies because, unlike in *Munguia*, this action does not involve
California plaintiffs.  Plaintiffs here are residents of Wisconsin, which, as discussed
above, has a specific compelling interest in applying its contributory negligence rules
to regulate the conduct of persons on its roadways, including Plaintiffs.  *See Brunette*,
107 Wis.2d at 365.

In the second case relied upon by Plaintiffs, *Hurtado*, Mexican plaintiffs sued a
California defendant for wrongful death arising from an accident that occurred in
California.  *See* 11 Cal.3d at 580.   The California Supreme Court held that Mexico has
no interest in applying its limitation of damages because "Mexico has no ***defendant***
residents to protect and has no interest in denying full recovery to its residents injured
by non-Mexican defendants."  *Id.* at 581 (emphasis added).  The court determined that
because "the foreign state (or country) has no interest whatsoever in having its own
law applied, California as the forum should apply California law."  *Id.*

*Hurtado* is distinguishable from this action because it involved a foreign state
with ***no interest*** whatsoever in having its own law applied.  In contrast, Wisconsin
does have a legitimate interest in having its own law applied here.  Although
Wisconsin, like the foreign country in *Hurtado*, does not have an interest in applying
its laws to protect a resident ***defendant***, Wisconsin does have a compelling interest
here in applying its laws to regulate the conduct of ***Plaintiffs*** here.

CIVIL MINUTES—GENERAL                                             7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**              **Date:  March 31, 2022**

Title:      Carly Lemmon, et al. v. Snap, Inc.

Having determined that the cases cited by Plaintiffs are distinguishable, the Court concludes that the *Mazza* line of cases controls here.  *See* 666 F.3d at 593. Guided by *Mazza* and its progeny, the Court determines that Wisconsin law applies because (1) the last act giving rise to liability occurred in Wisconsin, and (2) Wisconsin has a specific compelling interest in applying Wisconsin law to regulate the conduct of persons on its roadways.  *Id.*; *see also Brunette*, 107 Wis.2d at 365.

As a final matter, the Court notes that California law applies to the remaining issues relating to negligence and public policy because Defendant has not identified any material difference between California law and Wisconsin law with respect to these issues.  *See Smith*, 199 Cal.App.4th at 1396 ("A separate conflicts of laws inquiry must be made with respect to each issue").  Indeed, Defendant expressly acknowledged at the hearing that no conflicts of law exist with respect to these issues.

## B.      Sufficiency of Plaintiffs' Negligence Claim

"A plaintiff in any negligence suit must demonstrate a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury."  *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 143, 241 Cal.Rptr.3d 209 (2018).

The Court previously determined that that Plaintiffs have sufficiently alleged a duty but not causation:

> [A]lthough Plaintiffs can allege liability based on the encouragement theory, they have not alleged sufficient facts to establish that Defendant actually encouraged speeding.  *See Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 47, 539 P.2d 36 (1975) (upholding a finding of negligence against a radio station because its broadcast of a giveaway contest "generate[d] a competitive pursuit on public streets, [which was] accelerated by repeated importuning by radio to be the very first to arrive at a particular destination.").  Although Plaintiffs hint that Defendant have encouraged the users to speed by providing certain "rewards, in unknown, variable and changing ways," such an allegation is too vague and speculative.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)**          **Date:  March 31, 2022**
Title:      Carly Lemmon, et al. v. Snap, Inc.

(2019 Order at 14).

The Court declines to revisit its prior ruling on duty because the FAC does not
omit the allegations that the Court previously relied on in determining that duty was
sufficiently pled.  The Court therefore focuses its analysis on causation.

"Traditionally, the law has asked whether defendant's conduct was the
'proximate' cause of injury." *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal.App.4th
1830, 1847, 20 Cal.Rptr.2d 913 (1993).  "[A] cause in fact is something that is a
substantial factor in bringing about the injury." *Lineaweaver v. Plant Insulation Co.*,
31 Cal.App.4th 1409, 1415, 37 Cal.Rptr.2d 902 (1995).  But "the word 'substantial'
should not be weighted too heavily" because "[t]he substantial factor standard" was
"formulated to aid plaintiffs as a broader rule of causality." *Id.*

"Ordinarily, proximate cause is a question of fact which cannot be decided as a
matter of law from the allegations of a complaint . . . Nevertheless, where the facts are
such that the only reasonable conclusion is an absence of causation, the question is one
of law, not of fact." *State Dept. of State Hospitals v. Superior Court*, 61 Cal.4th 339,
353, 188 Cal.Rptr.3d 309 (2015) (internal quotation marks omitted).

Defendant argues that the allegations in the FAC remain deficient with respect to
proximate cause because the allegations about Plaintiffs being encouraged by
"unknown, variable" rewards are identical to the allegations that the Court already
rejected.  (Supp. Brief at 4).

The Court agrees with Defendant that the allegations supporting Plaintiffs'
encouragement theory are essentially the same as they were in the Complaint.  (*Id.*).
However, the Court notes that Plaintiffs made one notable amendment:  Plaintiffs now
allege that the Speed Filter was used within minutes of the accident.  But even aside
from that significant amendment, the Court is no longer convinced that these
allegations are insufficient to support causation.

The Ninth Circuit Opinion articulated a flaw in this Court's reasoning with
respect to the Communications Decency Act ("CDA") issue.  (Ninth Circuit Opinion at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**                    **Date:  March 31, 2022**
Title:       Carly Lemmon, et al. v. Snap, Inc.

4).  Specifically, the Ninth Circuit explained that Defendant does not enjoy immunity
under 47 U.S.C. § 230(c)(1) because Plaintiffs' claim does not treat Defendant as a
"publisher or speaker" or rely on "information provided by another information content
provider."  *Id.*  The Ninth Circuit emphasized that Plaintiffs are not seeking to hold
Defendant liable as a "publisher or speaker of third-party content," as this Court had
previously assumed, but rather, as a products manufacturer:

> Here, the Parents seek to hold Snap liable for its allegedly "unreasonable
> and negligent" design decisions regarding Snapchat.  They allege that Snap
> created:  (1) Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive
> system within Snapchat that encouraged its users to pursue certain
> unknown achievements and rewards.  The Speed Filter and the incentive
> system then supposedly worked in tandem to entice young Snapchat users
> to drive at speeds exceeding 100 MPH.
>
> The Parents thus allege a cause of action for negligent design — a common
> products liability tort.
>
> . . .
>
> It is thus apparent that the Parents' amended complaint does not seek to
> hold Snap liable for its conduct as a publisher or speaker.  Their negligent
> design lawsuit treats Snap as a products manufacturer, accusing it of
> negligently designing a product (Snapchat) with a defect (the interplay
> between Snapchat's reward system and the Speed Filter).  Thus, the duty
> that Snap allegedly violated "springs from" its distinct capacity as a
> product designer.  *Barnes*, 570 F.3d at 1107.

(*Id.* at 10–12).

This shift from treating Defendant as a publisher or speaker to treating
Defendant as a product manufacturer changes the way that the Court interprets the
allegations in the FAC.  The Court previously considered whether Defendant was a
publisher of content and whether the speedometer is content neutral in deciding

_____

CIVIL MINUTES—GENERAL                                             10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

whether the Speed Filter encouraged speeding.  However, neither of these factors appears to be directly relevant to analyzing a claim for negligent design.  *See, e.g., Chavez v. Glock, Inc.*, 207 Cal.App.4th 1283, 1303, 144 Cal.Rptr.3d 326 (2012) ("A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective"); *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 479, 110 Cal.Rptr. 370 (2001) ("the test of negligent design involves a balancing of the likelihood of harm to be expected from a [product] with a given design and the gravity of harm if it happens against the burden of the precaution which would be effective to avoid the harm").

Guided by the Ninth Circuit's focus on the ***design*** of the Snapchat app rather than whether it is a content neutral tool, the Court revisits the allegations in the FAC as follows:

The FAC alleges that the design of the Snapchat app rewards users by awarding trophies for using the Snapchat app in particular ways that are unknown to the users until they actually obtain such trophies.  (FAC ¶ 27).  The FAC also alleges that the Speed Filter allows users to record the speed at which they are traveling and display that speed over a photo or video of themselves that they can share on social media.  (*Id.* ¶ 25).  Finally, the FAC alleges that Plaintiffs used the Speed Filter within minutes of the accident.  (*Id.* ¶ 70).

The Court is satisfied that these three allegations, accepted as true, are sufficient to allege causation premised on the theory that the Speed Filter's design encouraged Plaintiffs to drive at dangerous speeds.  If Snapchat users are seeking to obtain an unknown trophy associated with using the Speed Filter, it is plausible that they would seek this trophy by increasing their speed — the only metric recorded by the Speed Filter.

Even if there were no reward system whatsoever, the basic design of the Speed Filter itself appears to encourage reckless driving.  There is realistically no purpose for the Speed Filter other than to encourage users to travel at high speeds and record themselves doing so.  Defendant's argument that users will use the Speed Filter "safely while walking, jogging, or riding a train, boat, or Ferris wheel" (Motion at 3) is highly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)              Date:  March 31, 2022
Title:       Carly Lemmon, et al. v. Snap, Inc.

implausible – let's say it's the arguments not the allegations that run afoul of the
*Twombly* and *Iqbal* argument.  It is common sense that adding a speed-sharing feature
to a social media application used predominantly by minors and young adults would
encourage such users to record themselves while driving at high speeds.

Given that Plaintiffs plausibly allege facts supporting their theory that the
inherent design of the Speed Filter encouraged Plaintiffs to speed, the question
becomes whether this theory is precluded as a matter of law.  *See State Dept. of State
Hosps.*, 61 Cal.4th at 353 ("Ordinarily, proximate cause is a question of fact which
cannot be decided as a matter of law," but "where the facts are such that the only
reasonable conclusion is an absence of causation, the question is one of law, not of
fact").

Defendant's argument that Plaintiffs' "encouragement" theory of causation fails
as a matter of law relies primarily on *Maynard v. Snapchat, Inc.*, 357 Ga.App. 496,
S.E.2d 128 (2020), *cert. granted* July 7, 2021, and *Maynard v. McGee*, No. 16SV-89,
2019 WL 6216230, at *1 (Ga. Super. Nov. 08, 2019).

In *Maynard*, a driver allegedly crashed into another vehicle while attempting to
use the Speed Filter to take a Snap displaying a speed over 100 miles per hour.  2019
WL 6216230, at *1.  The injured party claimed that the Speed Filter encouraged the
driver to drive at dangerous speeds.  *Id.*  The superior court dismissed plaintiffs' claim
"for three independent reasons:  first, Snap owed Plaintiffs no duty; second, Plaintiffs
cannot establish proximate causation as a matter of law; and third, McGee's alleged
negligent and criminal driving breaks the causal chain as to Snap."  *Id.* at *2.

With respect to whether Defendant owed Plaintiffs a duty, the superior court
noted that manufacturers have no duty to prevent reckless or negligent driving under
Georgia law.  *Id.*  Therefore, the superior court reasoned, "Snap had no duty to alter the
design of its mobile application to prevent McGee from driving recklessly or
negligently."  *Id.*  The superior court reached this conclusion by determining that the
Speed Filter is a content neutral tool:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  CV 19-4504-MWF (KSx)**             **Date:  March 31, 2022**
Title:      Carly Lemmon, et al. v. Snap, Inc.

> The functionality of the speed filter is not in dispute:  it is a neutral tool capable of many lawful uses.  For example, Snapchat users can use the filter to record the speed they are traveling when they are riding a train, or a ferry, or an airplane, or are passengers in an automobile.  Moreover, the filter works the same regardless of whether the user is traveling 0 mph, 10 mph, 100 mph, or 500 mph.  The filter does not tell users to go faster or to go slower.  There is no allegation that Snap tells users to speed and use the feature.  Nor is there any allegation that the Snapchat application rewards users for using the feature at higher speeds . . .  Snapchat's speed filter cannot, as a matter of law, be considered to "encourage" reckless, negligent, or criminal driving.

*Id.* at * 3.

The superior court also noted that the action is analogous to distracted driving and negligent advertising cases, where courts routinely find that no duty is owed to plaintiffs:

> Drivers make the unfortunate choice to drive recklessly for any number of subjective reasons.  Some drivers, such as those in *Scheme* and *Ely*, choose to speed because ads tell them their cars are capable of going fast. Others, such as those in *Modisette* and *Meador*, choose to drive recklessly because they don't want to stop using their phones to communicate, even while driving.  But this does not mean the car manufacturer, the ad agency, or the device maker "encouraged" the driver to speed in some way that flips tort law on its head.

*Id.* at *5.

With respect to causation, the superior court held that the connection between the Speed Filter and the accident was too attenuated to satisfy proximate cause and, under Georgia law, Plaintiff's "alleged negligent and criminal acts were not reasonably foreseeable" because "a reckless driver's improper acts break the causal chain."  *Id.* *8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

The Court of Appeals of Georgia affirmed the superior court's decision on the basis of duty without addressing causation.  *Maynard*, 357 Ga.App. at 502 ("Although the facts of this case are tragic and compelling, they should not create a duty where the law has not already recognized one").

The lower court decision in *Maynard* is not persuasive here for three reasons: (1) *Maynard* focused primarily on whether the defendant owed a duty to the plaintiffs — an issue this Court has already decided; (2) *Maynard* treated the defendant as a publisher or speaker rather than a product manufacturer; (3) *Maynard* unconvincingly determined that the connection between use of the Speed Filter and the fatal accident was too attenuated to support proximate cause.

With respect to the second point, the Court disagrees with the superior court's approach because it focused on whether the Speed Filter contained an express incentive to speed and ignored the incentives ***inherent in the Speed Filter's design***. The superior court apparently was persuaded that, without an express incentive to drive recklessly, individuals would use the Speed Filter safely as a passenger on a ferry, train, or airplane.  In doing so, the *Maynard* court essentially treated Snap as a publisher or speaker, rather than a product manufacturer — the exact approach that the Ninth Circuit has warned against here.  (Ninth Circuit Opinion at 10–12 ("the Parents' amended complaint does not seek to hold Snap liable for its conduct as a publisher or speaker").  Indeed, the *Maynard* court treated the plaintiffs' claim as a negligent advertising claim rather than a negligent design claim, relying explicitly on *Ely v. General Motors Corp.*, which held that an auto manufacturer was not liable for encouraging reckless driving by ***advertising*** that a car could go up to 150 miles per hour.  927 S.W. 2d 774, 782 (Tx.Ct.App. 1996).

Guided by the Ninth Circuit Opinion, the Court declines to analyze Plaintiffs' claim here as a negligent advertising claim.  Because the *Maynard* court treated Snap as a publisher or speaker and glossed over the issues with the design of the Speed Filter itself, the Court does not find *Maynard*'s reasoning on duty to be persuasive here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  CV 19-4504-MWF (KSx)** | **Date:  March 31, 2022** |
| Title:      Carly Lemmon, et al. v. Snap, Inc. | |

With respect to the third point relating to causation, the Court disagrees with the superior court's determination that the connection between the use of the Speed Filter and the fatal accident is too attenuated to support proximate cause.  *Maynard* relied on *Modisette* for the proposition that a ***distracting*** mobile application cannot cause a driver to engage in reckless behavior as a matter of law.  *Maynard*, 2019 WL 6216230, at *1 (citing *Modisette*, 30 Cal.App. 5th 136) ("[T]he tenuous connection between Apple's conduct and the Modisettes' injuries bars a finding of proximate causation").

After this Order had been drafted, the Georgia Supreme Court issued its opinion in *Maynard*.  *See* --- S.E.2d ----, 2022 WL 779733 (Ga. Mar. 15, 2022).  The Georgia Supreme Court reversed the decision of the Court of Appeals, finding that

> a manufacturer has a duty under our decisional law to use reasonable care in selecting from alternative designs to reduce reasonably foreseeable risks of harm posed by its products.  When a particular risk of harm from a product is not reasonably foreseeable, a manufacturer owes no design duty to reduce that risk.  How a product was being used (e.g., intentionally, negligently, properly, improperly, or not at all) and who was using it (the plaintiff or a third party) when an injury occurred are relevant considerations in determining whether a manufacturer could reasonably foresee a particular risk of harm from its product.  Nevertheless, our decisional law does not recognize a blanket exception to a manufacturer's design duty in all cases of intentional or tortious third party use.

*Id.* at *1.

The Georgia Supreme Court held that "the Maynards adequately alleged that Snap could reasonably foresee the particular risk of harm from the Speed Filter at issue here," as the Maynards alleged that

> Snap knew that other drivers were using the Speed Filter while speeding at 100 miles per hour or more as part of 'a game,' purposefully designed its products to encourage such behavior, knew of at least one other instance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:        Carly Lemmon, et al. v. Snap, Inc.

in which a driver who was using Snapchat while speeding caused a car
crash, and warned users not to use the product while driving.

*Id.* at *1, *6.

The opinion does not address the question of proximate causation, which was
remanded for consideration by the Georgia Court of Appeals. *See id.* at *13.  The
*Maynard* decision therefore supports the conclusion of the 2019 Order that duty is
adequately pled, and as it provides no insight into the issue of causation, does not
affect the Court's conclusion on that issue.

In *Modisette*, plaintiffs injured by a third party's use of the FaceTime application
(the "FaceTime app") while driving alleged that Apple, Inc. ("Apple") caused the third
party's reckless driving by failing to include a "lock-out" feature to prevent use of the
FaceTime app while driving.  30 Cal.App.5th at 146–47 & n.9, 151.  The *Modisette*
court noted that public policy considerations weigh against imposing a duty to prevent
reckless driving on cell-phone manufacturers that have merely creating a distracting
product that could be used while driving:

> The Modisettes urge us to distinguish smartphones like the iPhone from
> other products that motorists may use while driving based upon the "body
> of studies and data that demonstrat[e] the compulsive/addictive nature of
> smartphone use."
>
> . . .
>
> Essentially, the Modisettes argue that cell-phone manufacturers owe a duty
> to all individuals injured by drivers who were distracted by using
> the phones while driving. . . .  [W]e are not persuaded that California law
> imposes a duty on the manufacturer of a cell phone to design it in such a
> manner that a user is incapable of using it while driving.  Given the
> complex public policy considerations involved in such a calculus, and the
> potentially sweeping implications of finding a duty by Apple here, we

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

conclude that policy considerations dictate finding as a matter of law an exception to the general duty of care.

*Id.* at 151–52.

The Court of Appeal further determined that Apple was not the proximate cause of the accident because Apple merely created the condition that made the accident possible:

> Although Apple's manufacture of the iPhone 6 Plus without the lockout technology was a necessary antecedent of the Modisettes' injuries (as was the police activity that slowed traffic on the interstate that day), those injuries were not a result of Apple's conduct.  Rather, Wilhelm caused the Modisettes' injuries when he crashed into their car while he willingly diverted his attention from the highway.
>
> . . .
>
> Apple's failure to configure the iPhone to automatically disable did nothing more than create the condition that made Plaintiffs' injuries possible.  Because the circumstances here are not 'such that reasonable jurors would identify [the iPhone or Apple's conduct] as being actually responsible for the ultimate harm' to Plaintiffs, the iPhone and Apple's conduct are too remotely connected with Plaintiffs' injuries to constitute their legal cause.

*Id.* at 154 (citations and internal quotation marks omitted).

The court acknowledged that the use of the FaceTime app while driving was foreseeable but determined that "the gap between Apple's design of the iPhone and the Modisettes' injuries is too great for the tort system to hold Apple responsible."  *Id.* at 155.

*Modisette* is distinguishable for two reasons:

CIVIL MINUTES—GENERAL                                17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:      Carly Lemmon, et al. v. Snap, Inc.

*First*, this is not a distracted driving case.  (*See* FAC ¶ 2) ("The claims in this action are not about distracted-driving").  The allegation here is that the design of the Speed Filter itself encouraged speeding — not that it was simply distracting the driver of the vehicle as in *Modisette*.  Indeed, the driver of the vehicle here, Jason Davis, was not even the user of the Speed Filter.  (*Id.* ¶¶ 62–68).  The *Modisette* court's public policy concern about the "potentially sweeping implications" of imposing a duty on manufacturers of distracting products is simply not applicable here.  30 Cal.App.5th at 151–52.

*Second*, there is no "gap" between the design of the Speed Filter and the Plaintiffs' accident.  The FAC alleges that Landen Brown, sitting in the front passenger seat, captured a Snap of the boys' speed at 123 miles per hour "minutes before" the fatal accident.  (FAC ¶¶ 62–68).  One of the only realistic uses of the Speed Filter is for users to record themselves traveling at high speeds.  It is ***extremely*** foreseeable that minors and young adults would use the Speed Filter to record themselves driving at excessive speeds, and even more so if there are potential reward "trophies" for so doing.  The FaceTime app at issue in *Modisette* served many useful purposes and its only real danger with respect to driving was that it was addictive and therefore distracting.  In contrast, the Speed Filter has no real purpose other than recording excessive speeding, and the danger it presents is directly related to that core purpose.

The causal connection between the Speed Filter and the speeding accident is strong given that the accident occurred while the Plaintiffs were using the Speed Filter for the exact purpose for which it appears to have been designed:  to record the user traveling at excessive speeds.

Accordingly, the Court is satisfied that Plaintiffs have sufficiently alleged causation.

C.      **Contributory Negligence**

Defendant argues that Plaintiffs' claim is barred as a matter of contributory negligence under Wisconsin law because Plaintiffs were more negligent than Defendant.  (Supp. Brief at 6).  Defendant argues that the Court should decide this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 19-4504-MWF (KSx)                    **Date:** **March 31, 2022**
Title:       Carly Lemmon, et al. v. Snap, Inc.

issue as a matter of law, citing to *Johnson v. Grzadzielewski*, 159 Wis.2d 601, 608 (1990).

In *Johnson*, the plaintiff was seriously injured when he tried to climb out of an elevator car that stopped between two floors while he and two friends were joy riding the elevator in a practice known as "expressing." *Id.* at 605. To "express" an elevator, a person

> puts fingers between the inner doors as they close and then manually pushes and holds open the inner doors. Another person then pushes a lever that is located in the top and center of the open doorway. That causes the elevator to descend very quickly and without stopping at any floors. The elevator stops when the lever is released. The passengers exit the elevator by manually opening the outer elevator doors with a release lever on the inside of the outer doors.

*Id.* at 606.

When the elevator became stuck, rather than letting the inner doors close and then riding the elevator normally or buzzing for help, the plaintiff tried to climb up through the space between the elevator car and the walls of the elevator shaft to reach the release lever that opened the second floor outer doors. *See id.* The plaintiff apparently hit the top of the inner door and triggered the lever which started the elevator moving, causing plaintiff to become lodged in the space between the elevator car and the second floor landing sill and resulting in serious injuries. *See id.*

On summary judgment, the trial court concluded that the plaintiff's tort claims were barred as a matter of law because plaintiff was negligent and there was no evidence to support a finding of negligence on the part of any defendant. *See id.* at 605. The Court of Appeals affirmed the trial court, explaining that the plaintiff's negligence was so great that it was the trial court's duty to bar the claim as a matter of law:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 19-4504-MWF (KSx)**                    **Date:  March 31, 2022**
Title:        Carly Lemmon, et al. v. Snap, Inc.

> Where the evidence of the plaintiff's negligence is so clear and the
> quantum so great, and where it appears that the negligence of the plaintiff
> is as a matter of law equal to or greater than that of the defendant, it is not
> only within the power of the court but it is the duty of the court to so hold
> . . . Since Johnson failed to exercise ordinary care, both in "expressing" the
> elevator and in climbing out of it, he was at least fifty-one percent causally
> negligent, and is therefore barred from recovery as a matter of law.

*Id.* at 608–09.

    *Johnson* is easily distinguishable from this action because *Johnson* was decided
on a motion for summary judgment, whereas Defendant here brings a Rule 12(b)(6)
motion.  Defendant argues that dismissal as a matter of law is nonetheless appropriate
at this stage because "[t]here is no meaningful dispute about Plaintiffs' or Snap's
actions with respect to the accident," and "the undisputed facts demonstrate that
Plaintiffs were more negligent than Snap."  (Reply at 16).

    The Court disagrees that dismissal of Plaintiffs' negligence claim on the basis of
contributory negligence is appropriate on a Rule 12(b)(6) motion.  The only Wisconsin
case cited by Defendant in which a court dismissed a complaint at the pleading stage
on the basis of contributory negligence is *Worden v. Chicago & N.W. Ry. Co.* — which
was decided nearly one hundred years ago and eighty-six years before *Twombly/Iqbal*.
180 Wis. 551, 193 N.W. 356 (1923) (reversing and remanding to the trial court to
sustain a demurrer where the plaintiff drove his car into a standing freight train
obstructing a highway at 3:00 a.m.).  This Court does not read this antiquated case as
setting forth a rule of substantive Wisconsin law that establishes contributory
negligence here.  *Worden* predates essentially all of the modern law on proximate
cause, including *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928).

    Even if the Court were to treat this as a summary judgment motion, the Court
would not be inclined to bar Plaintiffs claims on the basis of contributory negligence.
Accepting Plaintiffs' plausible allegations relating to the Speed Filter as true, the Court
determines that the design of the Speed Filter itself is evidence of Defendant's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  CV 19-4504-MWF (KSx)                    Date:  March 31, 2022
Title:       Carly Lemmon, et al. v. Snap, Inc.

negligent conduct.  The Court is not convinced that Plaintiff's negligence outweighs Defendant's negligence here.

Accordingly, the Motion is **DENIED** with respect to the issue of contributory negligence.

### D.      Public Policy

Defendant argues that public policy should bar Plaintiffs' claim here because (1) Plaintiffs' injury is too remote from Defendant's alleged negligence; (2) liability would be wholly disproportionate to Defendant's alleged culpability; and (3) there is no sensible or just stopping point for liability under Plaintiffs' theory.  (Supp. Brief at 7).

As a preliminary matter, the Court notes that, aside from *Modisette*, all of the cases cited by Defendant are Wisconsin cases, which are not controlling given the Court's determination that California law applies here with respect to public policy.

Even if the Court were to apply Wisconsin law here, the Court is not persuaded by Defendant's public policy arguments.  The Court is not convinced that barring the claims on public policy grounds is appropriate at this juncture.  *See Alvarado v. Sersch*, 662 N.W.2d 350, 355 (Wis. 2003) ("In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability").

With respect to the first point, the Court has already determined that the causal connection between the design of the Speed Filter and Plaintiffs' injury is strong enough to survive a motion to dismiss.  This is also a basis to reject Defendant's third point:  there is no real concern that allowing this claim to move forward would open the floodgates for distracted drivers to bring negligence claims against software companies that make addictive mobile applications.  As discussed above, this is ***not*** a distracted driving case — this case is about a mobile application feature that was seemingly designed for solely for users to record themselves traveling at high speed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** **CV 19-4504-MWF (KSx)** | **Date:  March 31, 2022** |
| Title:       Carly Lemmon, et al. v. Snap, Inc. | |

With respect to the second point, Plaintiffs have plausibly shown that the design of the Speed Filter itself is ample evidence of Defendant's culpability.  The Court is not convinced that Defendant's culpability is outweighed by Plaintiffs' culpability here.

Accordingly, the Motion is **DENIED** with respect to Defendant's public policy arguments.

## IV.    <u>CONCLUSION</u>

For the reasons discussed above, the Motion is **DENIED**.  Defendant shall file an Answer to the FAC on or before **April 18**, **2022**.

Defendant's Request for Leave to File Notice of Supplemental Authority (Docket No. 83) is **DENIED** ***as moot***.

IT IS SO ORDERED.